# CUYAHOGA COUNTY COURT OF COMMON PLEAS

DATE: 4/06/2023        **APPEARANCE DOCKET**        PAGE: 1
TIME: 11:27   AM            CMSR5143

*1:22CV2303*
*Judge Oliver*

| | |
|---|---|
| Case No: CV-22-971748 | DIANE GASTON, ET AL. |
| | VS |
| Filing Date: 11/23/2022 | CUYAHOGA COMMUNITY COLLEGE, ET AL. |

Filing Cd:1501    MISCELLANEOUS - OTHER
Judge:NANCY A FUERST
Prior Judge:
Magistrate:
Panel Chair:

Status:I
Jury Req:Y
Class:
Prayer Amt:

**FILED**

APR 12 2023

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

[   ] Arbitration

[   ] Mediation

[   ] Settlement

[ X ] Notes

[   ] Appealed

Disposition:
NEWLY FILED
DISP. TRANSCT

Date:
11/28/2022
12/27/2022

Next Action:
Date/Time:

---------File Location ---------
Name: CLERKS OFFICE 1ST FLOOR
Date: 04/06/2023

---

| | | | | | |
|---|---|---|---|---|---|
| P | 2 | LANIER, LINDA | 0069233 | CHANDRA/SUBODH/ 1265 W 6TH ST SUITE 400 CLEVELAND, OH 44113-0000 | (216) 578-1700 |
| | | 652 CASTLE BOULEVARD AKRON, OH 44313 | | | |
| | | Service: | | | |
| P | 1 | GASTON, DIANE | 0044070 | SCREEN/DONALD/P 1265 W 6TH STREET STE 400 CLEVELAND, OH 44113-0000 | (216) 578-1700 |
| | | 15 WHITE STREET BEREA, OH 44017 | 0069233 | CHANDRA/SUBODH/ 1265 W 6TH ST SUITE 400 CLEVELAND, OH 44113-0000 | (216) 578-1700 |
| | | Service: | | | |
| D | 1 | CUYAHOGA COMMUNITY COLLEGE | 0062040 | FREEMAN/BARRY/Y 1375 E. 9TH STREET, 10TH FLOOR CLEVELAND, OH 44114-0000 | (216) 623-0150 |
| | | 700 CARNEGIE AVENUE CLEVELAND, OH 44115 | | | |
| | | Service: | | | |
| D | 2 | JOHNSON, ALEX | 0062040 | FREEMAN/BARRY/Y 1375 E. 9TH STREET, 10TH FLOOR CLEVELAND, OH 44114-0000 | (216) 623-0150 |
| | | 27050 CEDAR ROAD APARTMENT 418 BEACHWOOD, OH 44112 | | | |
| | | Service: | | | |
| D | 3 | MCCORY, DENISE | 0062040 | FREEMAN/BARRY/Y 1375 E. 9TH STREET, 10TH FLOOR CLEVELAND, OH 44114-0000 | (216) 623-0150 |
| | | 3646 WINCHELL ROAD SHAKER HEIGHTS, OH 44122 | | | |
| | | Service: | | | |
| D | 4 | WEBB, TERRY | 0062040 | FREEMAN/BARRY/Y 1375 E. 9TH STREET, 10TH FLOOR CLEVELAND, OH 44114-0000 | (216) 623-0150 |
| | | 14616 REDDINGTON AVENUE CLEVELAND, OH 44137 | | | |

CUYAHOGA COUNTY COURT OF COMMON PLEAS

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| DATE: | 4/06/2023 | | APPEARANCE DOCKET | | | | |
| TIME: | 11:27 AM | | | | | | |
| CASE: | CV-22-971748 | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | Service: | | | | |
| D | 5 | CLARKE, COURTNEY | | 0062040 | FREEMAN/BARRY/Y | |
| | | | | | 1375 E. 9TH STREET, 10TH FLOOR | (216) 623-0150 |
| | | 9791 FORESTVIEW DRIVE | | | CLEVELAND, OH 44114-0000 | |
| | | CLEVELAND, OH 44121 | | | | |
| | | | | | | |
| | | Service: | | | | |
| D | 6 | PARKS, AMY | | 0062040 | FREEMAN/BARRY/Y | |
| | | | | | 1375 E. 9TH STREET, 10TH FLOOR | (216) 623-0150 |
| | | 31493 BISHOPS GATE CIRCLE | | | CLEVELAND, OH 44114-0000 | |
| | | WESTLAKE, OH 44145 | | | | |
| | | | | | | |
| | | Service: | | | | |
| D | 7 | KUNTZ, DAVID | | 0062040 | FREEMAN/BARRY/Y | |
| | | | | | 1375 E. 9TH STREET, 10TH FLOOR | (216) 623-0150 |
| | | 11258 COVENTRY COURT | | | CLEVELAND, OH 44114-0000 | |
| | | NORTH ROYALTON, OH 44133 | | | | |
| | | | | | | |
| | | Service: | | | | |
| D | 8 | BRAZILE, SHARI D. | | 0062040 | FREEMAN/BARRY/Y | |
| | | | | | 1375 E. 9TH STREET, 10TH FLOOR | (216) 623-0150 |
| | | 3462 EDISON ROAD | | | CLEVELAND, OH 44114-0000 | |
| | | CLEVELAND HEIGHTS, OH 44121 | | | | |
| | | | | | | |
| | | Service: | | | | |

| Type | - Docket -<br>Code | Party | Date | Description | Cost<br>Amount |
|---|---|---|---|---|---|
| SF | INIT | | 11/23/2022 | CASE FILED: COMPLAINT | |
| SF | CSPF | P 1 | 11/28/2022 | COURT SPECIAL PROJECTS FUND | 50.00 |
| SF | LA | P 1 | 11/28/2022 | LEGAL AID | 26.00 |
| SF | LR | P 1 | 11/28/2022 | LEGAL RESEARCH | 3.00 |
| SF | CF | P 1 | 11/28/2022 | CLERK'S FEE | 25.00 |
| SF | RECT | P 1 | 11/28/2022 | DEPOSIT AMOUNT PAID SUBODH CHANDRA | 250.00 |
| SF | 245 | | 11/28/2022 | JUDGE NANCY A FUERST ASSIGNED (RANDOM) | |
| SF | LN | P 1 | 11/28/2022 | LEGAL NEWS | 10.00 |
| SF | CM | P 1 | 11/28/2022 | COMPUTER FEE | 20.00 |
| SR | NOTI | D 4 | 11/28/2022 | WAIVER OF SER. OF SUM. REQUEST(49171824) SENT BY PLAINTIFF.<br>TO:<br>TERRY WEBB<br>14616 REDDINGTON AVENUE<br>CLEVELAND, OH 44137 | |
| SR | NOTI | D 5 | 11/28/2022 | WAIVER OF SER. OF SUM. REQUEST(49171825) SENT BY PLAINTIFF.<br>TO:<br>COURTNEY CLARKE<br>9791 FORESTVIEW DRIVE<br>CLEVELAND, OH 44121 | |
| SR | COPY | | 11/28/2022 | SUMMONS E-FILE COPY COST | 1.00 |
| SR | COPY | | 11/28/2022 | SUMMONS E-FILE COPY COST | 1.00 |
| SR | COPY | | 11/28/2022 | SUMMONS E-FILE COPY COST | 1.00 |

Case: 1:22-cv-02303-SO Doc #: 11 Filed: 04/12/23 2 of 188 PageID #: 186

CUYAHOGA COUNTY COURT OF COMMON PLEAS

DATE: 4/06/2023
TIME: 11:27 AM
CASE: CV-22-971748

APPEARANCE DOCKET

PAGE: 3
CMSR5143

| SR | NOTI | D 1 | 11/28/2022 | WAIVER OF SER. OF SUM. REQUEST(49171821) SENT BY PLAINTIFF. TO: CUYAHOGA COMMUNITY COLLEGE 700 CARNEGIE AVENUE CLEVELAND, OH 44115 | |
|----|------|-----|------------|---|---|
| SR | NOTI | D 2 | 11/28/2022 | WAIVER OF SER. OF SUM. REQUEST(49171822) SENT BY PLAINTIFF. TO: ALEX JOHNSON 27050 CEDAR ROAD APARTMENT 418 BEACHWOOD, OH 44112 | |
| SR | NOTI | D 3 | 11/28/2022 | WAIVER OF SER. OF SUM. REQUEST(49171823) SENT BY PLAINTIFF. TO: DENISE MCCORY 3646 WINCHELL ROAD SHAKER HEIGHTS, OH 44122 | |
| SR | COPY | | 11/28/2022 | SUMMONS E-FILE COPY COST | 1.00 |
| SR | COPY | | 11/28/2022 | SUMMONS E-FILE COPY COST | 1.00 |
| SR | COPY | | 11/28/2022 | SUMMONS E-FILE COPY COST | 1.00 |
| SR | COPY | | 11/28/2022 | SUMMONS E-FILE COPY COST | 1.00 |
| SR | COPY | | 11/28/2022 | SUMMONS E-FILE COPY COST | 1.00 |
| SR | NOTI | D 8 | 11/28/2022 | WAIVER OF SER. OF SUM. REQUEST(49171828) SENT BY PLAINTIFF. TO: SHARI D. BRAZILE 3462 EDISON ROAD CLEVELAND HEIGHTS, OH 44121 | |
| SR | NOTI | D 7 | 11/28/2022 | WAIVER OF SER. OF SUM. REQUEST(49171827) SENT BY PLAINTIFF. TO: DAVID KUNTZ 11258 COVENTRY COURT NORTH ROYALTON, OH 44133 | |
| SR | NOTI | D 6 | 11/28/2022 | WAIVER OF SER. OF SUM. REQUEST(49171826) SENT BY PLAINTIFF. TO: AMY PARKS 31493 BISHOPS GATE CIRCLE WESTLAKE, OH 44145 | |
| GP | GEN | | 11/28/2022 | EXHIBITS 1 AND 3 TO THE COMPLANT (VIDEO RECORDINGS THAT ARE BEING FILED MANUALLY) WITH ONE FLASH DRIVE ATTACHED. | |
| SR | WSIG | D 1 | 12/19/2022 | WAIVER OF SERVICE OF SUMMONS RETURNED SIGNED ON 12/19/2022 RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT CUYAHOGA COMMUNITY COLLEGE | |
| SR | WSIG | D 1 | 12/19/2022 | WAIVER OF SERVICE OF SUMMONS RETURNED SIGNED ON 12/19/2022 RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR | |

DATE: 4/06/2023
TIME: 11:27 AM
CASE: CV-22-971748

APPEARANCE DOCKET

| | | | | | |
|---|---|---|---|---|---|
| | | | | DEFENDANT ALEX JOHNSON | |
| SR | WSIG | D 3 | 12/19/2022 | WAIVER OF SERVICE OF SUMMONS RETURNED SIGNED ON 12/19/2022 RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT TERRY WEBB | |
| SR | WSIG | D 4 | 12/19/2022 | WAIVER OF SERVICE OF SUMMONS RETURNED SIGNED ON 12/19/2022 RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT SHARI D. BRAZILE | |
| SR | WSIG | D 6 | 12/19/2022 | WAIVER OF SERVICE OF SUMMONS RETURNED SIGNED ON 12/19/2022 RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT DENISE MCCORY | |
| SR | WSIG | D 7 | 12/19/2022 | WAIVER OF SERVICE OF SUMMONS RETURNED SIGNED ON 12/19/2022 RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT DAVID KUNTZ | |
| SR | WSIG | D 8 | 12/19/2022 | WAIVER OF SERVICE OF SUMMONS RETURNED SIGNED ON 12/19/2022 RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT COURTNEY CLARKE | |
| SR | WSIG | D 1 | 12/19/2022 | WAIVER OF SERVICE OF SUMMONS RETURNED SIGNED ON 12/19/2022 RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT AMY PARKS | |
| NT | REMO | D | 12/22/2022 | NOTICE OF REMOVAL FILED NOTICE TO STATE COURT OF FILING NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1441 AND 1446 | |
| JE | JE | | 12/27/2022 | NOTICE OF REMOVAL TO U.S. DISTRICT COURT FILED 12/22/2022, U.S. DISTRICT COURT CASE NO. 1:22-CV-2303. CASE TRANSFERRED TO U.S. DISTRICT COURT. FINAL. COURT COST ASSESSED TO THE PLAINTIFF(S). PURSUANT TO CIV.R. 58(B), THE CLERK OF COURTS IS DIRECTED TO SERVE THIS JUDGMENT IN A MANNER PRESCRIBED BY CIV.R. 5(B). THE CLERK MUST INDICATE ON THE DOCKET THE NAMES AND ADDRESSES OF ALL PARTIES, THE METHOD OF SERVICE, AND THE COSTS ASSOCIATED WITH THIS SERVICE. NOTICE ISSUED | 12.00 |
| SR | JEAO | P 1 | 12/27/2022 | JUDGMENT ENTRY(49402935) SENT BY EMAIL. TO: DONALD P SCREEN DON.SCREEN@CHANDRALAW.COM | |
| SR | JEAO | D 8 | 12/27/2022 | JUDGMENT ENTRY(49402938) SENT BY EMAIL. TO: BARRY Y FREEMAN BFREEMAN@RALAW.COM | |
| SR | JEAO | P 2 | 12/27/2022 | JUDGMENT ENTRY(49402940) SENT BY EMAIL. TO: SUBODH CHANDRA SUBODH.CHANDRA@CHANDRALAW.COM | |
| SR | JEAO | P 2 | 12/27/2022 | JUDGMENT ENTRY(49402941) SENT BY EMAIL. TO: SUBODH CHANDRA JAMIE.SCREEN@CHANDRALAW.COM | |
| SR | JEAO | P 1 | 12/27/2022 | JUDGMENT ENTRY(49402937) SENT BY EMAIL. TO: DONALD P SCREEN JAMIE.SCREEN@CHANDRALAW.COM | |

U10.3

DATE: 4/06/2023
TIME: 11:27      AM
CASE: CV-22-971748

**APPEARANCE  DOCKET**

PAGE: 5
CMSR5143

| | | | | | | |
|---|---|---|---|---|---|---|
| CS | RFND | P | 1 | 1/27/2023 | REFUND BALANCE OF CASE COST DEPOSIT TO CHANDRA LAW FIRM, LLC | 96.00 |



135990828

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

1:22 CV 2303
Judge Oliver

FILED

APR 1 2 2023

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

DIANE GASTON, ET AL.
    Plaintiff

Case No: CV-22-971748

Judge: NANCY A FUERST

CUYAHOGA COMMUNITY COLLEGE, ET AL.
    Defendant

## JOURNAL ENTRY

93 DISP. TRANSCT - FINAL

NOTICE OF REMOVAL TO U.S. DISTRICT COURT FILED 12/22/2022, U.S. DISTRICT COURT CASE NO. 1:22-CV-2303.
CASE TRANSFERRED TO U.S. DISTRICT COURT.  FINAL.
COURT COST ASSESSED TO THE PLAINTIFF(S).
PURSUANT TO CIV.R. 58(B), THE CLERK OF COURTS IS DIRECTED TO SERVE THIS JUDGMENT IN A MANNER
PRESCRIBED BY CIV.R. 5(B).  THE CLERK MUST INDICATE ON THE DOCKET THE NAMES AND ADDRESSES OF ALL
PARTIES, THE METHOD OF SERVICE, AND THE COSTS ASSOCIATED WITH THIS SERVICE.

*Nafuerst*

_____          _____
Judge Signature                                      12/27/2022

The State of Ohio   }          I, The Clerk of the Court
           SS.   Of Common Pleas within
Cuyahoga County }          And for said County

Hereby certify that the above and foregoing is truly
Taken and copied from the original Transfer
case
Now on file in my office
Witness my hand and seal of said Court this 7th
Day of April_____ A.D. 20 23
      CUYAHOGA COUNTY CLERK OF COURTS
By maureen price_____ , Deputy



- 93
12/27/2022



135990828

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

DIANE GASTON, ET AL.
    Plaintiff

Case No: CV-22-971748

Judge: NANCY A FUERST

CUYAHOGA COMMUNITY COLLEGE, ET AL.
    Defendant

## **JOURNAL ENTRY**

93 DISP. TRANSCT - FINAL

NOTICE OF REMOVAL TO U.S. DISTRICT COURT FILED 12/22/2022, U.S. DISTRICT COURT CASE NO. 1:22-CV-2303.
CASE TRANSFERRED TO U.S. DISTRICT COURT.  FINAL.
COURT COST ASSESSED TO THE PLAINTIFF(S).
PURSUANT TO CIV.R. 58(B), THE CLERK OF COURTS IS DIRECTED TO SERVE THIS JUDGMENT IN A MANNER
PRESCRIBED BY CIV.R. 5(B).  THE CLERK MUST INDICATE ON THE DOCKET THE NAMES AND ADDRESSES OF ALL
PARTIES, THE METHOD OF SERVICE, AND THE COSTS ASSOCIATED WITH THIS SERVICE.

*Nafuerst*

Judge Signature               12/27/2022

- 93
12/27/2022



### NAILAH K. BYRD
### CUYAHOGA COUNTY CLERK OF COURTS
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

#### NOTICE OF REMOVAL
December 22, 2022 11:40

By: BARRY Y. FREEMAN 0062040

Confirmation Nbr. 2733002

DIANE GASTON, ET AL.                                CV 22 971748

     vs.

CUYAHOGA COMMUNITY COLLEGE, ET AL.      Judge:  NANCY A. FUERST

Pages Filed:  82

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

|  |  |
|---|---|
| DIANE GASTON, *et al.*, | CASE NO.: CV-22-971748 |
| Plaintiffs, | JUDGE NANCY A. FUERST |
| vs. | **NOTICE TO STATE COURT OF FILING NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1441 AND 1446** |
| CUYAHOGA COMMUNITY COLLEGE *et al.*, |  |
| Defendants. |  |

Defendants Cuyahoga Community College, Alex Johnson, Denise McCory, Terry Webb, Courtney Clarke, Amy Parks, David Kuntz, and Shari D. Brazile (collectively "Defendants"), hereby give notice that, on this 22nd day of December 2022, they have timely removed this civil action to the United States District Court for the Northern District of Ohio in accordance with 28 U.S.C. §§1441 and 1446. A true and accurate copy of Defendants' Notice of Removal filed on this day in the United States District Court for the Northern District of Ohio is attached hereto as Exhibit 1. Pursuant to 28 U.S.C. § 1446(d), the above-referenced state court shall proceed no further in this matter unless and until this case is remanded.

Respectfully submitted,


/s/ Barry Y. Freeman
Barry Y. Freeman (0062040)
bfreeman@ralaw.com
Roetzel & Andress, LPA
1375 East Ninth Street
One Cleveland Center, 10th Floor
Cleveland, OH 44114
Telephone: 216.623.0150
Facsimile: 216.623.0134

Stephanie Y. Olivera Mittica (0095651)
smittica@ralaw.com
Roetzel & Andress, LPA
222 South Main Street
Akron, OH 44308
Telephone: 330.376.2700
Facsimile: 330.376.4577

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of December, 2022, a true and correct copy of the foregoing Notice of Removal was served via e-mail upon the following counsel of record for the Plaintiff:

Subodh Chandra
Donald P. Screen
Melissa S. Obodzinski
The Chandra Law Firm LLC
The Chandra Law Building
1265 W. 6th St., Suite 400
Cleveland, OH 44113
Subodh.chandra@chandralaw.com
Don.screen@chandralaw.com
Melissa.obodzinski@chandralaw.com
*Attorneys for Plaintiffs*

/s/ Stephanie Y. Olivera Mittica
One of the Attorneys for Defendants

EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| DIANE GASTON, *et al.*, | CASE NO.    1:22-CV-2303 |
| Plaintiffs, | JUDGE |
| vs. | **NOTICE OF REMOVAL** |
| CUYAHOGA  COMMUNITY  COLLEGE *et al.*, | |
| Defendants. | |

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1441(a) and 1446, Defendants Cuyahoga Community College, Alex Johnson, Denise McCory, Terry Webb, Courtney Clarke, Amy Parks, David Kuntz and Shari D. Brazile (collectively "Defendants"), by and through their undersigned counsel, and with all of their consents, hereby remove to the United States District Court for the Northern District of Ohio the civil action presently pending in the Court of Common Pleas of Cuyahoga County, Ohio, identified as <u>Diane Gaston, et al. v. Cuyahoga Community College, et al., Case No.: CV-22-971748</u>, without waiving any rights to which Defendants may be entitled.

As grounds for this removal, Defendants state as follows:

1.      The Complaint in the above action was filed in the Court of Common Pleas of Cuyahoga County, Ohio, on November 23, 2022. Pursuant to Ohio Rule of Civil Procedure 4.7, Defendants timely waived service of process on December 19, 2023.

2.      In accordance with 28 U.S.C. §1446(a), a copy of all process, pleadings, and orders served upon Defendants (including Defendants' waivers of service of process) are

attached hereto as Exhibit A. Specifically, Exhibit A consists of a copy of the Complaint along with copies of Defendants' executed waivers of service.

3.     This Notice of Removal was timely filed within the thirty (30) days "after the receipt by the defendants, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief" in accordance with 28 U.S.C. § 1446(b).

4.     Removal of this action is proper under 28 U.S.C. §§ 1331, 1367, and 1441(a) because Plaintiffs have alleged federal claims arising under 42 U.S.C. § 1983 (First and Fourteenth Amendments) and Title VI and Title VII of the Civil Rights Act of 1964. Thus, this Court has original jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331. Furthermore, pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' state law claims because they are so related to the federal claims that they form part of the same case or controversy.

5.     Venue is properly placed in the United States District Court for the Northern District of Ohio, Eastern Division, because it is the district court for the district and division within which the state action is pending (the Court of Common Pleas of Cuyahoga County, Ohio) in accordance with 28 U.S.C. § 1446(a). Moreover, venue is proper under 28 U.S.C. § 1391 because the cause of action arose in the Northern District of Ohio.

6.     In accordance with 28 U.S.C. § 1446(d), the undersigned counsel hereby certifies that, concurrent with the electronic filing of this Notice of Removal, Defendants have served a true and correct copy of this Notice of Removal upon Plaintiffs through their counsel, Subodh Chandra, subodh.chandra@chandralaw.com, Donald P. Screen, don.screen@chandralaw.com and Melissa S. Obodzinski, melissa.obodzinski@chandralaw.com.

7.    Moreover, in accordance with 28 U.S.C. § 1446(d), Defendants have filed a copy of this Notice of Removal with the Clerk of the Court of Common Pleas of Cuyahoga County. A true and correct copy of the Defendants' Notice to State Court of Filing Notice of Removal, which is being filed contemporaneously in the Court of Common Pleas for Cuyahoga County, is attached hereto as Exhibit B.

WHEREFORE, pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants respectfully remove this civil action from the Court of Common Pleas of Cuyahoga County to the United States District Court for the Northern District of Ohio, Eastern Division.

Respectfully submitted,


*/s/ Barry Y. Freeman*
Barry Y. Freeman (0062040)
bfreeman@ralaw.com
Roetzel & Andress, LPA
1375 East Ninth Street
One Cleveland Center, 10th Floor
Cleveland, OH 44114
Telephone: 216.623.0150
Facsimile: 216.623.0134

Stephanie Y. Olivera Mittica (0095651)
smittica@ralaw.com
Roetzel & Andress, LPA
222 South Main Street
Akron, OH 44308
Telephone: 330.376.2700
Facsimile: 330.376.4577

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of December, 2022, a true and correct copy of the

foregoing Notice of Removal was served via e-mail upon the following counsel of record for the

Plaintiff:

Subodh Chandra
Donald P. Screen
Melissa S. Obodzinski
The Chandra Law Firm LLC
The Chandra Law Building
1265 W. 6th St., Suite 400
Cleveland, OH 44113
Subodh.chandra@chandralaw.com
Don.screen@chandralaw.com
Melissa.obodzinski@chandralaw.com
*Attorneys for Plaintiffs*

*/s/ Barry Y. Freeman*
One of the Attorneys for Defendants

Case: 1:22-cv-02303  Doc #: 1-1  Filed: 12/22/22  1 of 3.  PageID #: 5

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Diane Gaston and Linda Lanier

### DEFENDANTS

Cuyahoga Community College, Alex Johnson, Denise McCory, Terry Webb, Courtney Clarke, Amy Parks, David Kuntz and Shari D. Brazile

(b) County of Residence of First Listed Plaintiff   Cuyahoga
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Cuyahoga
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Subodh Chandra, Donald P. Screen and Melissa S. Obodzinski, The Chandra Law Firm LLC, 1265 W. 6th St., Suite 400, Cleveland, OH 44113, 216.578.1700

Attorneys *(If Known)*
Barry Y. Freeman and Stephanie Y. Olivera Mittica, Roetzel & Andress, 1375 East Ninth Street, One Cleveland Center, 10th Floor, Cleveland, OH 44114, 216.623.0150

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Product Liability | |     28 USC 157 |     3729(a)) |
| ☐ 140 Negotiable Instrument |     Liability   ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
|     & Enforcement of Judgment |     Slander   Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted |     Liability   ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
|     Student Loans | ☐ 340 Marine   Injury Product | |     New Drug Application | ☐ 470 Racketeer Influenced and |
|     (Excludes Veterans) | ☐ 345 Marine Product   Liability | | ☐ 840 Trademark |     Corrupt Organizations |
| ☐ 153 Recovery of Overpayment |     Liability   **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
|     of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards |     Act of 2016 |     (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending |     Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract |     Product Liability   ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** |     Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   Property Damage |     Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise |     Injury   ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury -   Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) |     Exchange |
| |     Medical Malpractice |     Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee |     Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment   ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff |     Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/   Sentence | |     or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability |     Accommodations   ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 535 Death Penalty | **IMMIGRATION** |     26 USC 7609 |     Act/Review or Appeal of |
| |     Employment   **Other:** | ☐ 462 Naturalization Application | |     Agency Decision |
| | ☐ 446 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| |     Other   ☐ 550 Civil Rights |     Actions | |     State Statutes |
| | ☐ 448 Education   ☐ 555 Prison Condition | | | |
| |     ☐ 560 Civil Detainee - | | | |
| |     Conditions of | | | |
| |     Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983 (First and Fourteenth Amendments) and Title VI and Title VII of The Civil Rights Act of 1964

Brief description of cause:
Employees of Defendant Cuyahoga Community College suing for discrimination/retaliation under federal and state law

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE      DOCKET NUMBER

DATE
December 22, 2022

SIGNATURE OF ATTORNEY OF RECORD
/s/ Barry Y. Freeman

Electronically Filed 12/22/2022 11:40 / NOTICE / CV 22 971748 / Confirmation Nbr. 2733002 / CLSLP

**FOR OFFICE USE ONLY**

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

**I.**   Civil Categories: (Please check one category only ).

1.   ☑   General Civil
2.   ☐   Administrative Review/Social Security
3.   ☐   Habeas Corpus Death Penalty

*If under Title 28, §2255, name the SENTENCING JUDGE: _____

CASE NUMBER: _____

**II.**   **RELATED OR REFILED CASES** See LR 3.1 which provides in pertinent part: "If an action is filed or removed to this Court and assigned to a District Judge after which it is discontinued, dismissed or remanded to a State court, and subsequently refiled, it shall be assigned to the same Judge who received the initial case assignment without regardfor the place of holding court in which the case was refiled.  Counsel or a party without counsel shall be responsible for bringing such cases to the attention of the Court by responding to the questions included on the Civil Cover Sheet."

This action:   ☐ is **RELATED** to another **PENDING** civil case   ☐ is a **REFILED** case   ☐ was **PREVIOUSLY REMANDED**

**If applicable, please indicate on page 1 in section VIII, the name of the Judge and case number.**

**III.**   In accordance with Local Civil Rule  3.8, actions involving counties in the Eastern Division shall be filed at any of  the divisional offices therein.  Actions involving counties in the Western Division shall be filed at the Toledo office. For the purpose of determining the proper division, and for statistical reasons, the following information is requested.

ANSWER ONE PARAGRAPH ONLY. ANSWER PARAGRAPHS 1 THRU 3 IN ORDER.  UPON FINDING WHICH PARAGRAPH APPLIES TO YOUR CASE, ANSWER IT AND STOP.

(1)   **Resident defendant**. If the defendant resides in a county within this district, please set forth the name of such county
**COUNTY:** Cuyahoga
Corporation  **For the purpose of answering the above, a corporation is deemed to be a resident of that county in which it has its principal place of business in that district.**

(2)   **Non-Resident defendant**. If no defendant is a resident of a county in this district, please set forth the county wherein the cause of action arose or the event complained of occurred.
**COUNTY:**

(3)   **Other Cases**. If no defendant is a resident of this district, or if the defendant is a corporation not having a principle place of business within the district, and the cause of action arose or the event complained of occurred outside this district, please set forth the county of the plaintiff's residence.
**COUNTY:**

**IV.**   The Counties in the Northern District of Ohio are divided into divisions as shown below.  After the county is determined in Section  III, please check the appropriate division.

**EASTERN DIVISION**

☐   **AKRON**   (Counties: Carroll, Holmes, Portage, Stark, Summit, Tuscarawas and Wayne)
☑   **CLEVELAND**   (Counties: Ashland, Ashtabula, Crawford, Cuyahoga, Geauga, Lake, Lorain, Medina and Richland)
☐   **YOUNGSTOWN**   (Counties: Columbiana, Mahoning and Trumbull)

**WESTERN DIVISION**

☐   **TOLEDO**   (Counties: Allen, Auglaize, Defiance, Erie, Fulton, Hancock, Hardin, Henry, Huron, Lucas, Marion, Mercer, Ottawa, Paulding, Putnam, Sandusky, Seneca VanWert, Williams, Wood and Wyandot)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
  United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
  United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
  Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
  Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
  Original Proceedings. (1) Cases which originate in the United States district courts.
  Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
  Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
  Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
  Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
  Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
  Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
  **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
  Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
  Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

**Court of Common Pleas**

**New Case Electronically Filed: COMPLAINT**
November 23, 2022 21:08

By: SUBODH CHANDRA 0069233

Confirmation Nbr. 2710660

DIANE GASTON, ET AL.                          CV 22 971748

vs.

CUYAHOGA COMMUNITY COLLEGE, ET AL.            **Judge:** NANCY A. FUERST

Pages Filed:  52

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **Diane Gaston**<br>15 White St.<br>Berea, OH 44017<br><br>        and<br><br>**Linda Lanier**<br>652 Castle Blvd.<br>Akron, OH 44313<br><br>                Plaintiffs,<br>        vs.<br><br>Cuyahoga Community College<br>700 Carnegie Ave.<br>Cleveland, OH 44115<br><br>Alex Johnson<br>27050 Cedar Road, Apt. 418<br>Beachwood, OH 44112<br><br>Denise McCory<br>3646 Winchell Road<br>Shaker Heights, OH 44122<br><br>Terry Webb<br>14616 Reddington Avenue<br>Cleveland, OH 44137<br><br>Courtney Clarke<br>9791 Forestview Drive<br>Cleveland, OH 44121<br><br>Amy Parks<br>31493 Bishops Gate Circle<br>Westlake, OH 44145<br><br>David Kuntz<br>11258 Coventry Court<br>North Royalton, OH 44133<br><br>        and | Case No.<br><br>Judge |

| Shari D. Brazile 3462 Edison Road Cleveland Heights, OH 44121 Defendants. | |

## COMPLAINT WITH JURY DEMAND

### NATURE OF ACTION

1.      This is a civil-rights action brought under federal and state anti-discrimination-and-retaliation laws including 42 U.S.C. § 1983 (First and Fourteenth Amendments); Title VI and Title VII of the Civil Rights Act of 1964 (retaliation in higher education and employment respectively), Ohio Rev. Code § 4112, *et seq.*, (Ohio employment retaliation); and civil liability for criminal acts and civil intimidation under Ohio law.

2.      When Plaintiffs Diane Gaston and Linda Lanier, tenured faculty members of Cuyahoga Community College ("Tri-C"), opposed and spoke out against unethical and discriminatory practices they discovered at the College, Defendant Alex Johnson (aided by and working in concert with Defendants Denise McCory, Terry Webb, Courtney Clarke, Shari Brazile, Amy Parks, and David Kuntz) spearheaded a vindictive and retaliatory conspiracy to tarnish their professional reputations and degrade their working conditions. The practices Professors Gaston and Lanier opposed were matters of public concern that included the public College's racially discriminatory course-scheduling decisions.

### PARTIES

3.      Plaintiff Professor Diane Gaston is a faculty member of Defendant Cuyahoga Community College and resides in Cuyahoga County, Ohio.

4.      Plaintiff Professor Linda Lanier is a faculty member of Defendant Cuyahoga Community College and resides in Summit County, Ohio.

5.      Defendant Cuyahoga Community College ("Tri-C" or the "College") is a public, governmental higher-educational institution with four campuses throughout Cuyahoga County, Ohio. The College currently employs Professor Gaston, Professor Lanier, Defendant McCory, Defendant Webb, Defendant Clarke, Defendant Parks, Defendant Kuntz, and Defendant Brazile, formerly employed Defendant Johnson, and is vicariously liable for acts and omissions taken under its customs, policies, or practices. Tri-C is also responsible for training and supervising its employees in carrying out their duties in a lawful manner.

6.      Defendant Alex Johnson was at all relevant times Tri-C's president and acted under color of state law. He resides in Cuyahoga County. He is sued in his personal capacity.

7.      Defendant Denise McCory was at all relevant times the president of Tri-C's Metropolitan ("Metro") campus and acted under state law. She resides in Cuyahoga County. She is sued in her official and personal capacity.

8.      Defendant Terry Webb was at all relevant times Tri-C's assistant dean of counseling and psychological services. Her resides in Cuyahoga County. He is sued in his official and personal capacity.

9.      Defendant Courtney Clarke was at all relevant times Tri-C's the associate dean of social sciences. She resides in Cuyahoga County. She is sued in her official and personal capacity.

10.     Defendant Amy Parks was at all relevant times Tri-C's dean of academic affairs. She resides in Cuyahoga County. She is sued in her official and personal capacity.

11.     Defendant David Kuntz was at all relevant times Tri-C's executive vice president of administration and finance. He resides in Cuyahoga County. He is sued in his official and personal capacity.

12.     Defendant Shari Brazile was at all relevant times Tri-C's manager of employee relations. She resides in Cuyahoga County. She is sued in her official and personal capacity.

## JURISDICTION AND VENUE

13.     This Court has personal jurisdiction over Defendants, who all conduct business and reside in Cuyahoga County, Ohio.

14.     Venue is proper because all parties reside, work, or conduct business in Cuyahoga County, and the events giving rise to Plaintiffs' claims took place within this District.

## FACTUAL BACKGROUND

### Professors Gaston and Lanier are distinguished, tenured faculty members of Cuyahoga Community College with spotless records.

15.     Professor Gaston has been employed by Tri-C since August 2001. She is tenured and currently serves as an associate professor of philosophy, humanities, and religious studies at Tri-C's Western campus.

16.     Professor Lanier has been employed by Tri-C since January 2011. She is tenured and currently serves as an assistant professor of counseling, psychological and access services at the College's Metro campus. In that role, she provides personal, academic, and career counseling to current and prospective students.

17.     Professors Gaston and Lanier have also served on many special committees for the College and have participated in extra-curricular programs that benefit students and the community. In 2016, Professor Lanier founded the Black Diamonds Women's Initiative ("Black Diamonds"), a program that promotes the success and well-being of African-American women by offering events and resources focused on educational opportunities, career development, health and wellness, and financial empowerment. Professors Gaston and Lanier served as co-chairs of Black Diamonds at all relevant times.

18.     Neither Professor Gaston's nor Professor Lanier's ordinary or *ad hoc* duties include reporting to the media, the College, or its administration on racial discrimination, or on retaliation for opposing racial discrimination.

19.     Neither Professor Gaston nor Lanier can recall ever having received a negative personnel evaluation.

20.     Throughout their tenure with Tri-C, Professor Gaston and Lanier have been formally recognized for the quality of their work and commitment to student success. For example, Professor Gaston has received the League for John & Suanne Rouche Innovation in Community College Excellence Award and the Ralph M. Besse Excellence in Teaching Award. She was also recognized by Tri-C's Division of Academic Affairs for her role in developing a specialized course for first-year students. In March 2020, Professor Lanier was featured in the "Tri-C Times" for her achievement in cultivating student success and supporting African-American women.

21.     Before May 2021 (when they were disciplined for engaged in legally protected activity) neither Professor Gaston nor Professor Lanier had been subject to disciplinary action.

22.     But things quickly changed course when they identified College course-scheduling policies that disproportionately affected minority students at Tri-C's Metro campus, and sounded the alarm with the administration and the media.

### Professors Gaston and Lanier send several emails reporting concerns about racially discriminatory course-scheduling practices to Tri-C administrators.

23.     In February 2020, Tri-C, like other colleges, was forced to replace traditional in-person classes with remote instruction to limit the spread of COVID-19. It wasn't until 2021 that Tri-C resumed offering in-person classes on its campuses.

24.     In January 2021, Tri–C publicly posted its course schedule for the upcoming fall semester, with registration scheduled to open on March 22, 2021.

25.     In the fall 2021 schedule, there were significant disparities in the in-person classes offered at Tri-C's Metro campus compared with the College's suburban campuses. Specifically,

- There were fewer introductory-level classes offered in-person at the Metro campus than at suburban campuses (meaning that new Metro campus students had fewer opportunities to take in-person courses); and

- There were no philosophy or religious studies classes offered in-person at the Metro campus.

26.     Tri-C's Metro campus is located in downtown Cleveland and has a higher concentration of African-American students than the College's suburban campuses.

27.     Professors Gaston and Lanier were concerned about the impact the proposed schedule would have on Metro campus's African-American students, because they statistically don't perform well in online courses. They were especially concerned about the impact the lack of in-person course options would have inner city African-American students, many of whom may not have the resources needed to succeed in a virtual learning environment (e.g., a reliable computer and broadband internet) or travel to suburban campuses for in-person instruction.

28.     Cleveland Metropolitan School District ("CMSD") officials shared these concerns. In January 2021, Defendants Parks and Webb, and Professor Lanier, met with administrators from a CMSD school to discuss student enrollment. During this meeting, they discussed how poorly CMSD students had performed in online courses, and their belief that this had led to decreased enrollment numbers in the spring 2021 semester.

29.     Even after this meeting, Tri-C did not revise its proposed schedule.

30.     Beginning in February 2021, as explained below, Professors Gaston and Lanier repeatedly reported to every level of Tri-Cs administration their concern that the schedule was racially discriminatory.

31.     On February 25, 2021, Professor Gaston contacted Defendant McCory and Provost Karen Miller as well as other Tri-C faculty and administrators to alert them and "voice [her] strong opposition" to the decision to remove philosophy and religious studies courses on Metro's campus. She asked, "How is it in the best interest of Metro students to eliminate all [in-person] options and the popular and needed [introductory philosophy course]?"

32.     On March 1, 2021, Professor Lanier contacted Defendants McCory, Parks, and Webb, as well as other Tri-C faculty and administrators to highlight the disparity in the in-person course offerings between the Metro and suburban campuses and the impact that would have on African-American students. She explained that, according to research and best practices, the schedule was "counter-productive for a path to success for the typical Metro student" and pointed out that the East and West campus schedules (which included more in-person, night, and weekend offerings) were more tailored to student achievement.

33.     These reports were effectively dismissed:

- In her response to Professor Lanier's email, Provost Miller blamed the decision to remove Metro campus's in-person philosophy and religious-studies courses on low enrollment numbers and a lack of staffing, citing deference to the opinions of her "counterparts." Professor Lanier rebutted these explanations, noting that the courses had not been eliminated from other campuses and that she and other faculty in her department had offered to assist with staffing. The provost agreed that they "need[ed] to focus on course and modality diversity" but otherwise failed to address Professor Lanier's specific concerns about the impact of the lack of access to in-person instruction on Metro-campus students.

- Defendant Parks acknowledged Professor Lanier's "thoughts on this important topic" but failed to address her concerns about the disparity between the in-person courses

offered at the Metro campus compared with the suburban campuses, and the impact it would have on African-American students. Defendant Parks instead offered a vague series of the considerations that had gone into the course-scheduling decisions (e.g., the new development of remote courses, a decline in overall enrollment, and a need to balance the offerings across campuses) and assured Professor Lanier that Tri-C was including in-person offerings "for students who have that preference." Defendant Parks made it clear that Professor Lanier should not raise the issue again, stating "[Defendant Webb] and I are also in regular contact about the schedule, so he can keep me informed about areas of concern as they arise."

- Upon information and belief, Defendant McCory (as the Metro campus's vice president) participated in, and had influence over, these course-scheduling decisions. Despite having been copied on these emails, she responded to neither professor's reports.

34. In a March 4, 2021 email to several administrators including Defendants McCory, Webb, Parks, and Johnson, Professor Lanier reiterated her concerns about the schedule, and the administration's lack of response to her reports. In this email, Professor Lanier even acknowledged the possibility that she would face retaliation for making this report. She wrote:

- "The equity concerns in my email are not new and have been voiced consistently by my colleagues, CMSD personnel, and other community members, yet ignored."

- "To dismiss my concerns, and systematically ignore the unfair and detrimental practices impacting students of color is gravely concerning to me. While others may not speak out regarding this issue for fear of retaliation via professional isolation, I will continue to voice my concerns to you and the community who are aware of how Metro scheduling policies are negatively impacting achievement for students of color."

- "The continued unequal and inequitable scheduling at Metro is structural and that is the concern I presented to you and my colleagues[;] our students deserve a fair chance."

35.    On March 9, 2021, Professor Lanier met with Defendant McCory, Defendant Parks, and the Metro-campus deans where she again voiced her concerns regarding the negative impact the lack of in-person course offerings on the Metro campus would have on students of color. During that meeting, everyone expressed agreement that Professor Lanier's concerns were valid. Defendant Parks blamed the lack of in-person course offerings on the faculty, alleging that nobody was willing to teach those courses. This explanation was illogical because the deans control the schedule and faculty can only elect to teach courses that Tri-C offers.

36.    Having received no assurance that their concerns would be addressed, Professors Gaston and Lanier elevated their expressions on these issues of public concern about discrimination well above their immediate supervisor by co-authoring an email to Tri-C's president Defendant Johnson on March 17, 2021. In that email, they offered a detailed basis for their belief that the schedule was discriminatory, explained that this was a matter of public concern, and urged him to take action. They wrote:

- "We are reaching out to you in a desperate attempt to address an emergent situation at the Metropolitan Campus. We have both individually contacted administrators before taking this extraordinary step. Our concern is the removal of essentially all on-ground courses at the Metropolitan campus for fall 2021."

- "Since[] data shows that face-to-face instruction is the most effective and preferred method of learning, it is inexplicable that Metro campus, which serves the greatest population of Black students, is removing the option to take on-ground classes. The fact that East, West, and Westshore campuses are offering considerable numbers of on-ground courses[] reflects their understanding of student-centered learning. What is

concerning is this exclusion of on-ground scheduling is detrimental to the most underserved population. Metro[-]campus students are the most under[-]resourced, and least desiring of online offerings."

- "Because of the obvious inequity and disparity related to Metro scheduling we are appealing to you to intervene. As the President of the college with tremendous influence in the community, we are hoping you will quiet the concerns voiced by local stakeholders, such as CMSD [Cleveland Municipal School District], the Urban League, and others."

**Professors Gaston and Lanier experience disparate treatment and report it to their supervisors. Again, their concerns are effectively dismissed.**

37.    In addition to, and in conjunction with, her reports regarding Tri-C's racially disparate schedule, Professor Lanier raised concerns that she was being treated differently than her department colleagues on the basis of her race, gender, and advocacy for African-American students.

38.    In a March 12, 2021, department meeting, Defendant Webb reported that Metro students were "doing very well" in remote courses, supposedly evidenced by the fact that they had enrolled in them (when they had no other choice). This broad and unsupported generalization was an obvious attempt to discredit Professor Lanier and disparage her efforts to expose Tri-C's discriminatory course-scheduling practices in front of her colleagues.

39.    After that meeting, Professor Lanier contacted Defendant Webb to express her concern that the "tone and tenor" of Defendant Webb's comments at this meeting, along with other recent decisions and actions, constituted a pattern of "disparate treatment" against her, dating back to Fall 2020. She reported that:

- On March 4, 2021, Defendant Webb sent her an email regarding faculty contracts for summer 2021. Normally, this type of information would have been sent either to both Professor Lanier and her department co-chair (who jointly serve as the administration's point of contact for the department) or to everyone in her department. The fact that Defendant Webb took the unprecedented step of sending this email to Professor Lanier individually suggested that she was being intentionally omitted from group communications to the department, and that her ability to accept a summer contract may be "in question."

- Defendant Webb had denied the opportunity to incorporate time to work on Black Diamonds into Professor Lanier's schedule, even though she had always been allowed to do so before.

- Her department's scheduling managers had assigned her to a less-favorable appointment schedule than the other counselors. Specifically, she was assigned to take more scheduled appointments than other counselors, and not given any time slots for walk-in appointments or e-advising, which are more flexible and less demanding than scheduled appointments. This burdensome schedule made it difficult for her to respond to emails from students and colleagues during the day.

- Defendant Webb denied her request to schedule, one day per week, her lunch break at the end of the day (even though a white-male colleague was allowed to take lunch at the end of the day on every day of the week).

- Defendant Webb denied her request to teach a class at MetroHealth Hospital, and instead handed the course to a less-qualified, non-tenured professor. Defendant Webb did this in violation of a provision in Tri-C's collective-bargaining agreement with the

American Association of University Professors that granted tenured faculty the right of first refusal to teach courses in their discipline.

- The managers in charge of scheduling were giving her an unfairly high workload compared to the other counselors, including significantly more in-person, scheduled appointments.

40.    Later that month, Professor Lanier met with Defendant Webb and the supervisor above him to discuss in more detail this unfair treatment against her. During the meeting, Defendant Webb attempted to defend his actions by distancing himself from the decision-making. He said that Professor Lanier was assigned a less-flexible schedule because she was the "most requested" counselor, and that he "was told" that the Black Diamonds Initiative is not a college event (and therefore she was not afforded time to plan or organize the upcoming Black Diamonds conference). He offered no explanation for other concerns Professor Lanier raised; nor did he indicate that he would address them with the administration.

41.    Professor Gaston also experienced and reported unfair treatment regarding her workload and compensation, which arose shortly after she had reported concerns about Tri-C's Fall 2021 schedule.

42.    Upon information and belief, in March 2021, Defendant Clarke (Professor Gaston's immediate supervisor) directed or allowed one of Professor Gaston's white colleagues to take credit and receive compensation for work Professor Gaston had done by removing Professor Gaston's name and replacing it with her own.

43.    Professor Gaston was thus denied just compensation for her labor in addition to the indignity of having her work unfairly attributed to a white colleague.

44.    On March 25, 2021, Defendant Clarke asked Professor Gaston to complete additional work related to the project for which Professor Gaston had been denied credit and compensation in favor

of her white colleague. Professor Gaston expressed concern, because she had been denied credit and compensation for the work she had already done. In response to Professor Gaston's concerns, Defendant Clarke promised to ensure that Professor Gaston "receive[d] credit and compensation for completing the work" but did not otherwise address the disparate treatment Professor Gaston reported.

45.     Defendant Clarke's assurances proved hollow when, on May 4, 2021, she emailed Professor Gaston to inform her that she would only be offered unpaid "service credits" in exchange for her work on the project. Faculty members are contractually required to earn a certain number of service credits by doing extracurricular work for the school and/or community, independent of the required credits for their regular duties. Because Professor Gaston had already completed her requisite service credits for the year, this effectively meant she was being asked to do this work for no compensation or personal benefit.

46.     Despite the uptick in disparate treatment against them, and valid concerns that they would experience further acts of retaliation as a result of challenging the treatment, Professors Gaston and Lanier persisted in their efforts to advocate for the Metro campus's African-American students by speaking out about Tri-C's discriminatory Fall 2021 schedule.

**Professors Gaston and Lanier voice concerns to a local news station about the inequity of the fall course offerings at the College's Metro campus.**

47.     On May 21, 2021, Professors Gaston and Lanier were interviewed by Michelle Nix of WOIO Channel 19 News, a Cleveland-area news outlet. The investigation was part of the station's "Next 400" series, which examines structural racism, and the challenges faced by and achievements of African-Americans. This particular news segment, "Is a return to higher education after Covid putting up barriers for minority students?" focused on the challenges.

48.     During this interview, Professors Gaston and Lanier voiced their concern for the lack of access African-American students had to in-person courses on Tri-C's Metro campus. A video

recording of the report is attached and incorporated as **Exhibit 1**, and a full transcript is attached and incorporated as **Exhibit 2**. Professor Gaston's and Professor Lanier's statements included:

- Lanier: "The students at Metro, do not, by our own data, do well in a virtual, online environment. Online courses are the highest courses—the highest failure rate . . . We know who is going to be hurt the most. First of all, students of color, students who lack technology, it's poor students. Our eastern campus began in January offering more on-ground campus, which is up in [the Richmond/Highland Hills] area. And I thought that was a good step. I thought we would be following them."

- Gaston: "Our motto is 'Tri–C is where futures begin.' It doesn't line up with that motto if certain students do not have the same opportunities, the same access."

49.     Neither Professor Gaston nor Professor Lanier stated that they were speaking on behalf of Tri-C. They were not. They are not administrators. Nor did any administrator ask them to speak on the College's behalf. Nor had either ever spoken on the College's behalf to any media, ever. They were speaking as private citizens.

50.     The concerns they raised related to the impact of COVID-19 on educational issues that directly affect the African-American population in Cleveland, Ohio, and specifically how Tri-C's practice of offering fewer in-person courses at the Metro campus harmed minority students. These are matters of public concern.

51.     Their report in no way hindered Tri-C's operations or legitimate goals or mission. In fact, their speech was intended to improve those operations and that mission.

**Defendant Johnson uses a public townhall meeting to chastise Professors Gaston and Lanier for their participation in the Channel 19 report.**

52.     On or about May 21, 2021, Tri–C invited all students, faculty, staff, and administrators to attend a May 24, 2021 virtual "townhall" meeting. The College sent an unusually high volume of

emails announcing this townhall. This meeting was also open to the public and promoted on Tri-C's website.

53.     During that special virtual townhall meeting, three days after the news report aired, Defendant Johnson, then Tri-C's president, publicly chastised Professors Gaston and Lanier for their speech in the Channel 19 interview. This was the first salvo in what would become a barrage of retaliation against them. A video recording Defendant Johnson's townhall is attached as **Exhibit 3**.

54.     Just over four minutes into his remarks, Defendant Johnson excoriated Professors Gaston and Lanier for voicing on the Channel 19 "Next 400" interviews what he characterized as "disturbing and unsubstantiated ... perspectives."

55.     Upon information and belief, Defendant Johnson referred to Professors Gaston and Lanier by name. Regardless, whose interviews he was talking about quickly became apparent to those watching.

56.     Despite some audio issues, enough of Defendant Johnson's tirade remained audible for listeners. His remarks included:

- Allegations that Professor Gaston's and Professor Lanier's statements were false (despite emails among members of the Integrated Communications Office and various administrators that same day indicating that they could not verify that the professors' statements were inaccurate).

- An apology for the fact Professors Gaston and Lanier had participated in the interview, and a solemn vow to "rectify" it.

- Statements seemingly intended to chill and impose a prior restraint on the speech of everyone attending the townhall (which included not only faculty and staff but also students, alumni, donors, and members of the press):

o "[W]e just cannot allow these types of things to take place at an institution where we continue to regard ourselves ... as committed to students in the community in the way we have, and the progress that we've made over the last decade was, is phenomenal. And I would compare that ... progress across the board, in terms of students and other ... institutions as well."

o "I must remind all of you that when you hear from the press, that that [*sic*] is to be reported to Integrated Communications, for a lot of reasons ... that will serve you well, so ... in the future it is our expectation ... for all of you."

o "And then of course our admonishment to all of you that if you're contacted by media, um, first make sure that you are ... involved with [the Integrated Communications Office]."

57.     Professors Gaston and Lanier are unaware of any prior instance where Tri-C's president publicly admonished a faculty member for any reason, let alone for advocating for African-American students.

### Following Defendant Johnson's rebuke, Professors Gaston and Lanier immediately endure additional retaliation.

58.     Upon information and belief, Defendant Johnson directed Defendants McCory and Brazile to initiate disciplinary action against Professors Gaston and Lanier, swiftly making good on his promise "rectify" the problem of Professors Gaston and Lanier's media interviews.

59.     On May 24, 2022, Professor Lanier received an email from Defendant McCory (who had copied Professor Lanier's direct supervisors and union representative) with an invitation to attend a virtual meeting two days later. There was no text in the body of the email, but the subject line read, "Re: Channel 19 Interview."

60.     Professor Lanier asked Defendant McCory to explain the meeting's purpose and content, but Defendant McCory did not respond.

61.     The union representative informed Professor Lanier that he didn't know the specific issues would be discussed, but understood that "they" (meaning the administration) believed she had "violated the Employee Code of Conduct." He also pointed out the unusual nature of this cryptic meeting notice, stating that "[u]sually when there is an investigation, a letter is sent to the faculty member outlining the issue."

62.     Professor Lanier immediately contacted an attorney, who agreed to represented her in the matter. Her attorney contacted Defendant McCory the following day to request a written explanation of the purpose and postponement of the meeting until Professor Lanier had a chance to prepare a response. Defendant McCory electronically "cancelled" the meeting, but did not otherwise respond to Professor Lanier or her attorney.

63.     Defendant Johnson's direct admonishment made it clear that Professors Gaston and Lanier had been effectively blacklisted. This invited, if not directed, Tri–C faculty and administration to participate in further acts of retaliation.

64.     In the days following the virtual townhall, Professors Gaston and Lanier were immediately subject to adverse actions, as described below.

65.     Shortly after the townhall, Professor Lanier received a call from two colleagues encouraging her to step down from her position in as the co-chair of the counseling department. They told her that Defendant Johnson's public admonishment had compromised her ability to lead the efforts of the department, and that by stepping down she could save herself the embarrassment of facing an inevitable vote of non-confidence. Professor Lanier thus was forced to "resign" under compulsion in a clear act of retaliation for her participation in the Channel 19 interview. In the dynamics of employment at the College, this was a foreseeable consequence of Defendant Johnson's public castigation.

66.    The day after the townhall, Defendant Clarke directed Professor Gaston to update the
curriculum for three courses—a burdensome task that no administrator had ever assigned to a
faculty member, and that had traditionally been undertaken on a voluntary basis. Because Professor
Gaston had never even taught the courses she was assigned to work on, and Tri-C had not
established guidelines accounting for changes to the state's requirements, this process was especially
time-consuming and difficult to complete. To assign three courses under those circumstances was
cruel—and Defendant Clarke demanded it by a functionally impossible deadline.

67.    Adding insult to injury, Defendant Clarke forced Professor Gaston to forfeit the courses she
had planned to teach that summer so she could complete this task. Professor Gaston received the
same rate of pay for the semester as she would have for teaching those courses, even though she had
to work a significantly greater number of hours.

**Professors Gaston and Lanier are formally disciplined for their speech to Channel 19.**

68.    On June 16, 2021, Defendant Brazile issued Professors Gaston and Lanier each a "Notice of
Pre-Disciplinary Hearing" setting forth the policies they allegedly violated by participating in the
Channel 19 interview and the date of a hearing at which they would be forced to defend themselves.

69.    Professors Gaston and Lanier were each charged with supposedly violating:

- The employee code of conduct, which states, "Employees must exhibit a high degree of
  personal integrity at all time [*sic*]. This requires sincere respect for the rights of others,
  and refraining from any behavior that might be harmful to oneself, other members of
  the College community, or the college. Employees must also refrain from behavior that
  would cast the College in an unfavorable light in view of the communities served by the
  College."

- The College's public-affairs-and-information policy, which states, "The Office of Public
  Affairs and information shall be responsible for communicating to the public through all

available media to ensure that the community has a positive image of the College, and

that positions and statements of the College are presented accurately and consistently."

- The collective-bargaining agreement between Tri-C and the American Association of

  University Professors, which states, "Because the public may judge the profession and

  the College by his utterances, a faulty member should at all times strive to be accurate,

  exercise appropriate restraint and show respect of the opinions of others. It is of special

  importance that in making such utterances, a faculty member indicates that he is not a

  spokesman for the college."

70. These charges were baseless, violated Professors Gaston and Lanier's well-established First
Amendment free-speech rights as public employees, and were retaliatory.

71. Upon information and belief, Tri-C had never disciplined anyone other than Professors
Gaston and Lanier for violating the policies referenced in these notices.

72. During their decades of service for the College, Professors Gaston and Lanier had
previously participated as private citizens in media interviews, none of which had resulted in
disciplinary action being taken against them. Neither professor had been asked to speak on behalf of
the College to the media.

73. Upon information and belief, two other Tri-C professors also spoke with Channel 19 in
connection with this story, but their interviews did not appear in the final four-minute video. None
of them were disciplined for their participation.

74. The allegation regarding Professor Gaston's and Professor Lanier's failure to speak with the
"Office of Public Affairs" before their private-citizen interview was based on a non-existent policy.

- Neither Professor Gaston nor Professor Lanier had ever been told that they needed

  permission before speaking with the media, nor made aware of this "policy." Nor would

  such an overbroad policy be constitutional, because each had and has a well-established

right to speak as private citizens on matters of public concern, even concerning matters they learned about through their Tri-C employment.[1]

- During an arbitration hearing on April 26, 2022, Tri-C's vice president of the Integrated Communications Department conceded that the policy cited in the notice doesn't say that employees are required to come to her department before speaking with the media, and that doing so is more of a general "practice."

- Upon information and belief, at no point during the disciplinary process and subsequent appeals was the College able to produce a copy of any policy that actually requires employees to receive permission from any department before speaking with the media. Nor, as stated above, would such an overbroad policy be constitutional.

75.     Professors Gaston and Lanier were charged with representing Tri-C during the interview in violation of the collective-bargaining agreement, despite neither having told the reporter they were speaking on the College's behalf. Nor did the Channel 19 report claim or suggest so. No reasonable viewer would have thought that these *critics* of the government were *speaking for* the government.

- Professor Gaston was invited to speak as a Tri-C alumna, and specifically told the interviewer to contact the vice president of Tri-C's Integrated Communications Department for the College's position on the issues.

- Professor Lanier similarly directed the reporter to speak to Defendant McCory regarding the College's policies and plans for course scheduling. The interviewer emailed Defendant McCory on May 14, 2021 requesting the *administration's position* on the issue of the fall and spring 2021 schedules.

---

[1] *See Lane v. Franks*, 537 U.S. 228, 235–36 (2014)

76.     The College used these baseless allegations as part of its scheme to punish Professors Gaston and Lanier (and send a chilling message to other faculty) by tarnishing their previously spotless employment records and forcing them to expend significant time and money defending themselves.

77.     Tri-C brought these charges in violation of its progressive-discipline policy, which requires verbal counseling and a written reprimand before bringing an action for suspension or probation.

78.     Professor Gaston's and Professor Lanier's pre-disciplinary hearings were held on or about June 23, 2021.

79.     Defendant McCory took the lead in these meetings. She explained the bogus charges, placing Professors Gaston and Lanier in the position of having to "defend" themselves.

80.     During these hearings, Defendant McCory contested neither the truth nor accuracy of Professor Gaston's and Professor Lanier's statements to Channel 19. Instead, Defendant McCory argued that discipline was warranted because of the context in which the professors' speech was made. The College took the position that the professors' statements, in the context of an investigative report that focuses on systemic racism, implied that the fall 2021 course schedule was intentionally designed to disadvantage African-American students and therefore "placed the college in an unfavorable light." In short, Professors Gaston and Lanier were being subjected to discipline for having dared criticized the government.

81.     On August 6, 2021, Professors Gaston and Lanier were officially found to have violated Tri-C's policies, and were ordered to serve an unpaid three-day suspension.

82.   This discipline was imposed, even though:

- There was no evidence that the professors' comments were unsubstantiated, inaccurate, or misleading (although they would have had a right to their opinions and to be mistaken).

- Neither was advised that faculty members must speak with the Integrated Communications Department (nor any Tri-C department) before speaking with the media.

- There is no policy or union contract provision that requires faculty to waive their free-speech rights. If anything, principles of academic freedom protect free speech.

83.   Tri-C has issued countless statements in support of diversion, equity, and inclusion, and claims to be a champion of equity. Professors Gaston and Lanier believed in that mission and appealed to the administration repeatedly to stand behind the reputation it had cultivated. When their pleas were ignored, they spoke publicly to the media as concerned citizens on this matter of public concern. They were punished for their speech—not because it was false, but because it was not in line with the image Tri-C as a government institution (and Defendant Johnson, in particular, as a government official) sought to portray to the public.

84.   Upon information and belief, no faculty or staff member had ever been charged with any violations of these policies for having made a public media appearance (including past appearances where faculty members were extremely critical of the administration).

85.   On August 9, 2021, Professors Gaston and Lanier filed an administrative grievance, challenging the decision.

**As Professors Gaston and Lanier continue to defend themselves against the disciplinary order, the retaliation crusade against them continues unabated.**

86.    Following the townhall, Defendant Johnson continued spread vitriol as part of his personal vendetta against Professors Gaston and Lanier, effectively ensuring that they remained ostracized and subject to direct hostility and retaliation.

87.    Upon information and belief, Defendant Johnson held a meeting in or about June 2021 with several male African-American faculty and staff members, including Defendant Webb during which he made disparaging remarks about African-American women, and Professor Lanier in particular. One of the attendees, was concerned about these inappropriate comments and thus reported it to Defendant Webb and alerted Professor Lanier.

88.    When Professors Gaston and Lanier returned for the fall 2021 semester Defendant Johnson's expressed animus against them had turned them into *persona non grata.* They received fewer emails from colleagues than they had in the past, and the emails they sent went unanswered. On campus, colleagues would pretend not to see them or quickly change direction to avoid passing them in the hall. All had apparently gotten the message: "Do not engage with Professor Gaston or Professor Lanier."

89.    Professor Gaston's and Lanier's were also removed from email listservs, cutting off access to necessary communications, and intentionally "blind copied" on the emails so they would not be included on group responses.

90.     As a direct result of this widespread ostracization, Professors Gaston and Lanier were denied

professional opportunities and special assignments, and constructively removed from assignments

that professors had previously led or been involved in. For example:

- Professor Gaston had been part of a committee that produced a textbook for first-year

    students, and had been heavily involved in developing all four editions (including solely

    developing the accompanying course webpage that is still used by many Tri-C

    instructors). She had even been recognized by the College for her achievements in

    connection with this work, as noted above. In or around 2021 the committee began

    working on revisions to the textbook, but Professor Gaston was excluded from this

    process because nobody informed her they were doing so.

- In April 2021, Professor Lanier began working with Shaw High School to establish an

    educational program for parents and children. But after Defendant Johnson's townhall

    Professor Lanier suddenly no longer received emails from the members of the

    committee that had formed to implement the program, and thus was excluded from

    working on a project that she had initially proposed.

- Professor Lanier was similarly excluded from working on other committees of which she

    had previously been a part, including the Success Council, the Transfer Counsel, and the

    High Tech Academy committee.

91.     Professors Gaston and Lanier were also persistently subject to unfair treatment and forced

to accept unfavorable working conditions because of Defendant Johnson's public admonishment.

92.     Further retaliatory actions against Professor Gaston included, but were not limited to:

a.  Defendant Clarke's failure to process or acknowledge her requests for time off.

b.  Defendant Clarke's failure to acknowledge extracurricular service credits Professor

    Gaston had earned. Because these credits are required as part of Professor Gaston's

contract, an apparent failure to complete them within the required time could result in disciplinary action.

c. Delayed processing of reimbursements. Upon information and belief, this was a coordinated effort between Defendants Clarke, McCory, and Kuntz.

d. Increased oversight and scrutiny over her work (such as Defendant Clarke repeatedly forcing Professor Gaston to defend her implementation of Tri-C's attendance policy).

e. Interference with her work. Throughout 2021–22 various administrators had granted themselves access to the website Professor Gaston uses to communicate with students and share course materials, which allowed them to view, make changes to, and even delete critical information Professor Gaston needed to do her job. This was done without Professor Gaston's permission, and without giving her any notice or explanation for this unusual practice.

f. Advancing bogus grade disputes brought by students. When students complain about their grades, which is not uncommon, it is up to the professor's supervisor to investigate the complaint and assess its merit. When the supervisor "advances" the dispute, the professor must defend their decision in a formal hearing before a panel of their colleagues. In Professor Gaston's first 20 years of service at Tri-C, she had only had one grade dispute advanced in this way. In 2021, Defendant Clarke advanced three meritless grade disputes brought against Professor Gaston. Among these baseless disputes was a student's argument that he should have received an A in the course (despite having skipped an exam!) because he supposedly misunderstood the grading scale provided in the course syllabus. Although each of these disputes were ultimately resolved in Professor Gaston's favor (finding that her decision was justified), this required Professor

Gaston to expend significant time and energy defending herself and subjected her to the humiliation of being questioned by colleagues who had shunned her.

g. Failing to acknowledge her earned sabbatical. Traditionally, whenever a professor is awarded a sabbatical, it is acknowledged during a Board of Trustees meeting, and included in a list of awardees that is sent by email to the faculty senate. Upon information and belief, Defendant Johnson directed administrators not to acknowledge any earned sabbaticals during the Board of Trustees meeting and remove Professor Gaston's name from the email to the faculty senate. Professor Gaston thus was denied the public celebration, including a party and congratulatory emails from colleagues, that normally accompanies this traditional academic honor.

h. Denying her the opportunity transfer her to the Metro campus (despite several administrators' earlier assurances that she would be placed there once the position was vacant). It was well-known that Professor Gaston, as a graduate of Tri-C's Metro campus, desired to someday return to the campus in her faculty position. In late spring 2021, the sole full-time faculty member in the philosophy, humanities, and religious-studies department on Tri-C's Metro campus announced her retirement. Professor Gaston, one of five full-time faculty in that department on West's campus and the most senior faculty member in the department overall, had been assured that she would be allowed to transfer once the Metro-campus position was open. Among those who had given oral approval for her transfer were Defendants Clark and McCory. In fact, Professor Lanier didn't even need approval to transfer, and would have been able to do so once the position was "posted" in their system. But the position was never posted, and instead has been left unfilled to prevent Professor Gaston from moving to the position everyone knew she wanted.

93.    Retaliatory actions against Professor Lanier included, but were not limited to:

- Denying her the opportunity to take on special assignments. After Defendant Johnson's townhall, Professor Lanier was no longer included on emails inviting faculty to join committees or participate in special projects. Upon information and belief, this was an intentional, coordinated effort by Defendants McCory and Webb to isolate Professor Lanier. This type of committee work is important because, even when the positions are independently not paid (such as grant-funded stipends), they improve the professor's status within the campus community.

- Isolating her from new employees. Defendant Webb denied her the opportunity to train new part-time counselors when, based on her seniority and experience, she should have been the one training them. Instead, a part-time counselor was assigned to train the new employees. Defendant Webb also declined to so much as introduce the new employees to Professor Lanier.

- Removing from her position as the Tri-C basketball team's counseling liaison. Upon information and belief Defendant Webb removed Professor Lanier from this position, and later ensured that none of the female basketball players were scheduled with different counselors for their appointments. This was particularly damaging because of her success and relationships with them.

- Defendant Webb continuing to allow the department managers to assign her a less-favorable schedule compared to her colleagues.

- Defendant Webb forcing her to work and meet with students in isolated rooms (including male students, and students who were "mentally unstable");

- Defendant Webb failing to respond to work-related questions, such as the need for her to have access to necessary software and a working laptop, making it difficult to do her job;

- Defendants McCory and Webb failing to respond to her requests for clarification about the requirements of a summer contract, forcing her to turn down the opportunity to work during the summer 2021 semester;

- Defendants Brazile and McCory failing to timely respond to her FMLA request when her husband needed triple-bypass surgery, forcing her to contact the union directly.

- Defendant Kuntz authorizing the three-day suspension to be deducted from her pay twice and interfering with her attempts to resolve the issue with the finance department.

94.     In a series of acts designed to retaliate against both Professor Gaston and Professor Lanier, Tri-C administrators (at Defendant Johnson's direction) interfered with the Black Diamonds Conference they co-chaired. The event that was scheduled to take place on October 15, 2021. Just weeks before the event was scheduled, the College rescinded approval to hold the event on-campus, citing challenges with COVID-19 and staffing, even though similarly sized events were held without issue around that time. Upon information and belief, Defendant Johnson and Defendant McCory directed the relevant administrators to do so.

95.     The College also failed to timely pay conference vendors and the keynote speaker (including blaming this failure on Professor Lanier by falsely accusing her of improperly signing a contract without consulting the College's legal department). Upon information and belief, Defendant Kuntz directed staff to delay processing these payments.

**The disciplinary decisions against Professors Gaston and Lanier are ultimately reversed, after Defendants subjected the professors to a grueling year of appeals processes.**

96.     Professors Gaston and Lanier spent more than a year defending themselves against Tri-C's baseless disciplinary actions through a series of administrative grievance hearings, which required them to expend significant time and resources (including legal fees and costs).

97.     Despite the overwhelming evidence that Professors Gaston and Lanier violated no policies, Tri-C refused to reverse the order. Professors Gaston and Lanier were thus to forced undergo every step of the grievance proceeding because Tri-C refused to skip to the final arbitration process, despite its clear intention to uphold the decision regardless of what evidence was presented.

98.     In one of the many denials of Professor Gaston's and Professor Lanier's grievances, Defendant Kuntz stated his belief the corrective action taken against Professors Gaston and Lanier *was not severe enough*. Defendant Kuntz, as the vice president for the finance department, should not have even been involved in the grievance process, which traditionally was left to the campus deans and the provost. Upon information and belief, provost Defendant Miller refused to participate in this retaliatory action and Defendants Johnson and McCory directed Defendant Kuntz to step into this role.

99.     During arbitration, Tri-C took the position that the discipline issued against Professors Gaston and Lanier was "a measured response" to their misconduct and that it was "really part of a corrective action principles so that it is clear to Professor Gaston and Professor Lanier that they handled this inappropriately and shouldn't have done that."

100.    On June 2, 2022—the day Defendant Johnson was scheduled to testify and be cross-examined in an arbitration hearing—Tri-C suddenly granted the professors' grievances. The College agreed to remove the discipline from their personnel files and award them back pay for their three-day suspensions.

101.    The arbitrator nevertheless opined that Tri-C had admitted it made a mistake by disciplining Professors Gaston and Lanier, noting that the evidence presented in the arbitration process demonstrated that Tri-C "did not have just cause" to issue discipline against them.

102.    Although their employment records were ultimately cleared, the year spent defending themselves through the prolonged appeals process caused Professors Gaston and Lanier significant financial and personal hardship.

103.    Professor Gaston was scheduled to complete her doctorate degree from Ashland University in 2021. But she was effectively forced to withdraw as a direct result of the extreme emotional distress, time commitments, and legal costs associated with the drawn-out grievance and arbitration process. Because she is not able to rejoin the cohort to complete her degree, she has effectively lost two years of tuition expenses she had paid. Additionally, because she did not obtain her doctorate degree as expected, she is not able to reach the maximum compensation in her final years of employment, which drastically diminishes her retirement package.

104.    Defendant Johnson retired from Tri-C effective June 30, 2022, but Professors Gaston and Lanier still experience the effects of his hostility and retaliation, which irrevocably damaged their professional reputations and working conditions at Tri-C.

105.    In academia, reputation is critical. Professors Gaston and Lanier are respected and decorated professors, but Defendant Johnson's campaign of retaliation stripped them of earned recognition and special assignments, and led to a significant deterioration in their working relationships and status at the College.

106.    Both Professor Gaston and Professor Lanier have also experienced significant damage to their mental and physical health because of the retaliation against them.

107.    Professor Lanier has experienced severe anxiety and fatigue. She also began to experience gastrointestinal issues and was prescribed medication for acid reflux and ulcers.

108.    Professor Gaston lost weight so rapidly from the stress that her physician recommended she begin mental-health counseling.

109.    Professors Gaston and Lanier received their respective right-to-sue letters from the EEOC on August 26, 2022.

## CLAIM 1
### FIRST AMENDMENT RETALIATION UNDER 42 U.S.C. § 1983 BY PLAINTIFFS DIANE GASTON AND LINDA LANIER AGAINST DEFENDANT CUYAHOGA COMMUNITY COLLEGE, JOHNSON, MCCORY, WEBB, CLARKE, PARKS, KUNTZ, AND BRAZILE

110.    Plaintiffs incorporate all previous allegations.

111.    Professors Gaston and Lanier were public employees who engaged in First Amendment–protected free-speech activity by out as private citizens on matters of public concern. They did so by raising concerns with the College's senior administration and communicating to the public through the media about what they believed to be the College's racially discriminatory course-scheduling practices. Their speech was not part of their ordinary or *ad hoc* job duties as Tri-C faculty members.

112.    Allegations about racial discrimination involve a classic matter of public concern,[2] as do allegations of violations of law,[3] such as retaliation for opposing such discrimination.

113.    Reporting to the media on racial discrimination and on unlawful retaliation for opposing such discrimination was not part of Professor Gaston's or Professor Lanier's ordinary or *ad hoc* job duties. They were speaking as private citizens in bringing this activity to light.

114.    In speaking out, Professors Gaston and Lanier engaged in constitutionally protected conduct or activity under the First and Fourteenth Amendments.

---

[2] *See, e.g., Whitney v. City of Milan*, 677 F.3d 292, 298 (6th Cir. 2012) ("Allegations of racial discrimination by a public entity 'inherently' involve a matter of public concern.") (quoting *Miller v. City of Canton*, 319 F. App'x 411, 416 (6th Cir. 2009)).

[3] *See, e.g., Banks*, 330 F.3d at 896 ("Defendants' failure to follow state law is a 'concern to the community.'"); *Mahronic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986) ("Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law.").

115.    Defendants Johnson, McCory, Webb, Clarke, Parks, Kuntz, and Brazile knew Professors Gaston and Lanier had engaged in protected conduct or activity.

116.    These Defendants took adverse actions against Professors Gaston and Lanier—including all the retaliatory acts described above—that would deter a person of ordinary firmness from continuing to engage in that conduct. These included, but were not limited to:

   a.   Cutting off workplace communication with them (making it more difficult for them to perform their duties);

   b.   Disparaging them to co-workers and making it clear that they were *persona non grata* with Defendant Johnson (resulting in co-workers ignoring them and making it more difficult to perform their duties);

   c.   Ignoring their emails reporting retaliation;

   d.   Ignoring their requests for family and medical leave;

   e.   Subjecting them to unfavorable working conditions and denying them opportunities for professional development;

   f.   Lodging false and baseless accusations against them;

   g.   Forcing them to repeatedly defend themselves against the false and baseless allegations in pre-deprivation hearings, grievances, and arbitration; and

   h.   Using the false and baseless allegations as a basis for unwarranted disciplinary action including an unpaid suspension.

117.    Professor Gaston's and Professor Lanier's First Amendment–protected speech was a substantial or motivating factor[4] in the adverse actions they suffered at the hands of Defendants Johnson, McCory, Webb, Clarke, Parks, Kuntz, and Brazile.

---

[4] *See, e.g., Laster v. City of Kalamazoo*, 746 F.3d 714, 733 (6th Cir. 2014).

118.     Defendants lack any countervailing interest that outweighs Professor Gaston's and Professor Lanier's interest in speaking out on the above-mentioned matters.

119.     The contours of Professor Gaston's and Professor Lanier's right to speak on matters of public concern as private citizens was sufficiently clearly established at the time they exercised it to apprise a reasonable public employee that retaliating against them for exercising those rights was unlawful.

120.     These Defendants were at all relevant times sufficiently empowered College officials that their acts constitute the customs, policies, and practices of the College.

121.     As a direct and proximate result of this unlawful campaign of retaliation that the College endorsed and adopted as its own unwritten policy, Professor Gaston and Professor Lanier have suffered and will continue to suffer economic and non-economic damages for which Defendants College, Johnson, McCory, Webb, Clarke, Parks, Kuntz, and Brazile are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

122.     These Defendants' acts were malicious, in bad faith, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 2
### RETALIATION UNDER CIVIL RIGHTS ACT, TITLE VI, 42 U.S.C. § 2000D BY PLANTIFFS DIANE GASTON AND LINDA LANIER AGAINST DEFENDANT CUYAHOGA COMMUNITY COLLEGE

123.     Plaintiffs incorporate all previous allegations.

124.     Under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), it is unlawful for any program or activity receiving federal financial assistance to intentionally discriminate against a

person on the basis of race, color, or national origin.[5]

125.    42 U.S.C. § 2000d-4a(2)(A) defines "program and activity" to include all of the operations of "a college, university, or other postsecondary institution, or a public system of higher education."

126.    It is also unlawful for a program or activity to retaliate against an individual because she opposed a discriminatory practice she reasonably believed was prohibited under Title VI.[6]

127.    Whoever violates the above-described legal obligation is subject to a civil action for damages, injunctive relief, or any other appropriate relief.[7]

128.    As detailed in Claim 2, Professors Gaston and Lanier made both oral and written complaints to Tri-C administrators and the media regarding the College's racially discriminatory course-scheduling practices.

129.    Professors Gaston and Lanier had a reasonable, good faith belief that Tri-C intentionally discriminated against students on the basis of their race (by removing many in-person course offerings from the campus with the most concentrated population of African-American students) and complained about this unlawful practice.

130.    Professors Gaston and Lanier engaged in protected activity under Title VI by opposing discrimination (racially discriminatory course-scheduling practices) both internally and publicly.

---

[5] 42 U.S.C. § 2000e-3(a); *Alexander v. Choate*, 459 U.S. 287, 293 (1985) (holding that Title VI prohibits intentional discrimination).

[6] 42 U.S.C. § 2000d-1; 34 C.F.R. § 100.7(e)("No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by [Title VI of the Civil Rights] Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this part.");

[7] 29 U.S.C. § 794(a(2) ("The remedies procedures, and rights set forth in [T]itle VI of the Civil Rights Act of 1964 … shall be available to any person aggrieved by an act or failure to act by any recipient of Federal assistance …"); *Alexander v. Sandoval*, 532 U.S. 275, 275, 279 (2001) (holding that private individuals may sue to enforce Sec. 601 of Title VI to obtain injunctive relief and damages). *See also Peters v. Jenney*, 327 F.3d 307, 319 (4th Cir. 2003) (holding that the retaliation provisions of 34 C.F.R. § 100.7(e) are enforceable via an implied private right of action).

131.    The College was aware that Professors Gaston and Lanier had engaged in protected activities.

132.    The College intentionally and maliciously discriminated (retaliated) against Professors Gaston and Lanier after they opposed an unlawful discriminatory practice, i.e., Tri-C's racially discriminatory course-scheduling practices.

133.    The College took adverse actions against Professors Gaston and Lanier—including all the retaliatory acts in detailed above and below—that would deter a person of ordinary firmness from continuing to engage in that conduct. These included, for example, suspending them without pay and subjecting them to a grueling, year-long disciplinary process based on false allegations.

134.    As a direct and proximate result of this unlawful conduct, Professors Gaston and Lanier have suffered and will continue to suffer economic and non-economic damages for which the College, is liable including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

135.    Defendants Johnson, McCory, Webb, Clarke, Parks, Kuntz, and Brazile's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 3
### RETALIATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000E-3(A), BY PLAINTIFFS DIANE GASTON AND LINDA LANIER AGAINST DEFENDANT CUYAHOGA COMMUNITY COLLEGE

136.    Plaintiffs incorporate all previous allegations.

137.    Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), it is an unlawful employment practice for an employer to discriminate (i.e., retaliate) against its employees because they opposed an unlawful discriminatory practice or because they made a charge or participated in any manner in an EEOC proceeding.

138.   Under 42 U.S.C. § 1981a and 42 U.S.C. § 2000e *et seq.*, whoever violates the above-described legal obligation is subject to a civil action for damages, injunctive relief, or any other appropriate relief.

139.   Professor Gaston had a reasonable, good-faith belief that the College had discriminated against her because of her race and complained about this unlawful practice.

140.   Professor Lanier had a reasonable, good-faith belief that the College had discriminated against her because of her race and/or sex and complained about this unlawful practice.

141.   Professors Gaston and Lanier had a reasonable, good-faith belief that they were being retaliated against for their opposition to this unlawful discrimination against them.

142.   Professor Gaston engaged in protected activity under Title VII by opposing race discrimination internally and by filing a charge of discrimination with the EEOC reporting that she had been subject to different terms and conditions of employment because of her race.

143.   Professor Lanier engaged in protected activity under Title VII by opposing race and sex discrimination internally and by filing a charge of discrimination with the EEOC reporting she they had been subject to different terms and conditions of employment because of her race and sex.

144.   Professors Gaston and Lanier engaged in protected activity under Title VII by opposing discrimination (retaliation for opposing race and sex discrimination) internally and by filing a charge of discrimination with the EEOC regarding the retaliation they faced for opposing discrimination.

145.   The College was aware that Professors Gaston and Lanier had engaged in protected activities.

146.   The College intentionally and maliciously discriminated against Professors Gaston and Lanier after they opposed an unlawful discriminatory practice, i.e., race and sex discrimination, by subjecting them to different terms and conditions of employment than similarly situated white and/or male colleagues.

147.    Defendants College, Johnson, McCory, Webb, Clarke, Parks, Kuntz, and Brazile took many
retaliatory actions against Professors Gaston and Lanier, as detailed in the factual narrative and the
preceding claim. These included, but were not limited to:

   a.   Cutting off communication with them (making it more difficult for them to perform
        their duties);

   b.   Disparaging them to co-workers and making it clear that they were *persona non grata* with
        Defendant Johnson (resulting in co-workers ignoring them and making it more difficult
        to perform their duties);

   c.   Ignoring their emails reporting retaliation;

   d.   Ignoring their requests for family and medical leave;

   e.   Subjecting them to unfavorable working conditions and denying them opportunities for
        professional development;

   f.   Lodging false and baseless accusations against them;

   g.   Forcing them to repeatedly defend themselves against the false and baseless allegations
        in pre-deprivation hearings, grievances, and arbitration; and

   h.   Using the false and baseless allegations as a basis for unwarranted disciplinary action
        including an unpaid suspension.

148.    The retaliation changed the terms and conditions of Professor Gaston's and Professor
Lanier's employment and subjected them to adverse employment actions.

149.    The retaliation Professors Gaston and Lanier suffered would dissuade a reasonable worker
from opposing discrimination.

150.    Tri-C is vicariously liable for its agents' acts toward Professors Gaston and Lanier.

151.    As a direct and proximate result of this unlawful conduct, Professors Gaston and Lanier
have suffered and will continue to suffer economic and non-economic damages for which the

College is liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

## CLAIM 4
### RETALIATION BY PLAINTIFFS DIANE GASTON AND LINDA LANIER OHIO REV. CODE § 4112.02(I) AGAINST CUYAHOGA COMMUNITY COLLEGE, JOHNSON, MCCORY, WEBB, CLARKE, PARKS, KUNTZ, AND BRAZILE

152. Plaintiffs incorporate all previous allegations.

153. Under Ohio law, including Ohio Rev. Code § 4112.02(I), it is an unlawful employment practice for any person to discriminate in any manner (i.e., retaliate) against any other person because that person has opposed an unlawful discriminatory practice.

154. Ohio Rev. Code § 4112.01(A) defines "person" to include "individuals," "legal representatives," "agent[s]," "the state and all political subdivisions," "authorities," "agencies," "boards."

155. As detailed in the factual narrative and preceding claims, Professors Gaston and Lanier engaged in protected activity and suffered retaliation as a result.

156. Tri-C is vicariously liable for its agents' acts.

157. Defendant Johnson (who had supervisory authority, including the ultimate determination on their suspension, demotion, reduction in pay) is jointly and severally liable for damages Professors Gaston and Lanier suffered because of his campaign of retaliation.

158. As a direct and proximate result of Defendants' unlawful retaliatory conduct, Professors Gaston and Lanier have suffered and will continue to suffer economic and non-economic damages for which Defendants College, Johnson, McCory, Webb, Clarke, Parks, Kuntz, and Brazile are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

159. The individual Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

## CLAIM 5
### AIDING AND ABETTING DISCRIMINATION UNDER OHIO REV. CODE §§ 4112.02(J) AND 4112.99 BY DIANE GASTON AND LINDA LANIER AGAINST THE COLLEGE, JOHNSON, MCCORY, WEBB, CLARKE, PARKS, KUNTZ, AND BRAZILE

160.    Plaintiffs incorporate all previous allegations.

161.    Under Ohio law, including Ohio Rev. Code § 4112.02(J), it is an unlawful employment practice for any person to aid, abet, incite, compel, or coerce the doing of any act declared an unlawful discriminatory practice under Ohio Rev. Code § 4112.02.

162.    Under Ohio law, including Ohio Rev. Code § 4112.99, whoever violates the above-described legal obligation is subject to civil action for damages, injunctive relief, or any other appropriate relief.

163.    Under Ohio law including Ohio Rev. Code § 4112.02(I), it is an unlawful employment practice to discriminate in any manner (i.e., retaliate) against any person because he opposed an unlawful discriminatory practice.

164.    To aid or abet in discrimination, a person need only knowingly do something he ought not to do, or omit to do something he ought to do, that "assists or tends in some way to affect the doing of the thing which the law forbids."[8]

165.    Defendants College, McCory, Webb, Clarke, Parks, Kuntz, and Brazile aided Defendant Johnson in an unlawful discriminatory practice, i.e., retaliating against Professors Gaston and Lanier, as described in the factual narrative and claims above.

166.    Defendant Johnson similarly aided the others in retaliating against Professors Gaston and Lanier.

---

[8] *State v. Stepp,* 117 Ohio App.3d, 569, 690 N.E.2d 1342 (4th Dist.1997) (quoting *Smith v. State,* 41 Ohio App. 64, 67-68, 179 N.E. 696 (9th Dist. Dec. 9, 1931)), cited in *Luke v. City of Cleveland,* No. 1:02CV1225, 2005 U.S. Dist. LEXIS 49630 (N.D. Ohio Aug. 22, 2005); *see also Woodworth v. Time Warner Cable, Inc.,* N.D. Ohio No. 1:15-CV-1685, 2015 U.S. Dist. LEXIS 148832 (N.D. Ohio Nov. 2, 2015) (citations omitted).

167.    As a direct and proximate result of this unlawful conduct, Professors Gaston and Lanier

have suffered and will continue to suffer economic and non-economic damages for which

Defendants College, Johnson, McCory, Webb, Clarke, Parks, Kuntz, and Brazile are liable, including,

but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms,

privileges, and conditions of employment.

168.    Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to

punish and deter them and others from engaging in this type of unlawful conduct.

169.

### CLAIM 6
### (ALTERNATIVE CLAIM)
### CIVIL LIABILTY FOR CRIMINAL ACTS (RETALIATION BECAUSE PUBLIC SERVANTS DISCHARGED THEIR DUTIES) UNDER OHIO REV. CODE §§ 2307.60 AND 2921.05 BY PLAINTIFFS DIANE GASTON AND LINDA LANIER AGAINST JOHNSON, McCORY, WEBB, CLARKE, PARKS, KUNTZ, AND BRAZILE

170.    Plaintiffs incorporate all previous allegations.

171.    Under Ohio Rev. Code § 2921.05, no person, purposely and by unlawful threat of harm to

any person or property, shall retaliate against a public servant because the public servant discharged

her duties. The provision carries a criminal penalty.

172.    Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act

may recover full damages in a civil action.

173.    To the extent that the Court determines that, in reporting to Tri-C administrators on the

racially discriminatory course-scheduling practices, that Professor Gaston and/or Professor Lanier

were in fact discharging their duties and not speaking in their capacity as citizens, then Defendants

Johnson, McCory, Webb, Clarke, Parks, Kuntz, and Brazile retaliated against Professors Gaston and

Lanier for discharging their duties.

174.    This retaliation involved both threatening and eventually imposing economic harm on

Professors Gaston and Lanier for complaining about discriminatory policies they discovered in the

course and scope of their duties. The retaliatory acts are set forth in the factual narrative above and in Claim 2.

175. As a direct and proximate result of this unlawful conduct, Professors Gaston and Lanier have suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

**CLAIM 7**
**CIVIL LIABILITY FOR CRIMINAL ACTS (TAMPERING WITH EVIDENCE) UNDER OHIO
REV. CODE §§ 2307.60 AND 2913.42(A)(1) AND (A)(2) BY PLAINTIFFS DIANE GASTON
AND LINDA LANIER AGAINST DEFENDANTS JOHNSON AND BRAZILE**

176. Plaintiffs incorporate all previous allegations.

177. Under Ohio Rev. Code § 2913.42(A)(1), "No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall… [f]alsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record;. Under § 2913.42(A)(2), no such person may "Utter any writing or record, knowing it to have been tampered with as provided in division (A)(1) of this section."

178. Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action. Violations of Ohio Rev. Code § 2913.42 are criminal acts.

179. Defendant Johnson's statements during the May 24, 2021 virtual townhall falsified writings, computer software, data, and records. Such false statements included, but are not limited to:

- "I must remind all of you that when you hear from the press, that that [*sic*] is to be reported to Integrated Communications…"

180. Defendant Johnson also uttered this record.

181. Defendant Johnson knew that there was no such policy. And he had no privilege to do so, and he acted with purpose to defraud or knowing that he was facilitating a fraud.

182.    The June 16, 2021 Pre-Disciplinary Due Process Meeting Notifications issued to Professors

Gaston and Lanier also falsified writings and records. The false statements contained in these

writings include, but are not limited to:

- Allegations that Professors Gaston and Lanier violated the "public affairs and

  information policy."

- Allegations that Professors Gaston and Lanier violated the collective-bargaining

  agreement between Tri-C and the American Association of University Professors.

183.    The August 6, 2021 Suspension Letters issued to Professors Gaston and Lanier were

falsified. The false statements contained in these writings include, but are not limited to:

- "[Professor Gaston's] actions, behavior[] and conduct violated College Policy and the

  labor agreement."

- "[Professor Lanier's] actions, behavior[] and conduct violated College Policy and the

  labor agreement."

184.    Defendant Brazile also falsified these writings and records.

185.    As a direct and proximate result of this unlawful conduct, Professors Gaston and Lanier

have suffered and will continue to suffer economic and non-economic damages for which

Defendant Johnson and Defendant Brazile are liable, including, but not limited to, pain and

suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of

employment.

186.    Defendant Johnson and Brazile's acts were willful, egregious, malicious, and worthy of

substantial sanction to punish and deter them and others from engaging in this type of unlawful

conduct.

## CLAIM 8
### CIVIL LIABILITY FOR CRIMINAL ACTS (TELECOMMUNICATIONS FRAUD) UNDER OHIO REV. CODE §§ 2307.60 AND 2913.05(A) BY PLAINTIFFS DIANE GASTON AND LINDA LANIER AGAINST DEFENDANT JOHNSON

187. Plaintiffs incorporate all previous allegations.

188. Under Ohio Rev. Code § 2913.05(A), "No person, having devised a scheme to defraud, shall knowingly disseminate, transmit, or cause to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, telecommunications service, or voice over internet protocol service any writing, data, sign, signal, picture, sound, or image with purpose to execute or otherwise further the scheme to defraud."

189. Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action. Violations of Ohio Rev. Code § 2913.05 are criminal acts.

190. Defendant Johnson, having devised a scheme to defraud, knowingly disseminated, transmitted, and caused to be disseminated by means of a wire, radio, satellite, telecommunication, telecommunications device, telecommunications service, and voice over internet protocol service data, sign, signal, picture, sound, and image with purpose to execute and otherwise further the scheme to defraud false statements including, but are not limited to:

- "I must remind all of you that when you hear from the press, that that [sic] is to be reported to Integrated Communications..."

191. Defendant Johnson knew that there was no such policy.

192. As a direct and proximate result of this unlawful conduct, Professors Gaston and Lanier have suffered and will continue to suffer economic and non-economic damages for which Defendants Johnson and Brazile are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

193. Defendants Johnson and Brazile's, acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 9
### INTIMIDATION USING A FALSE OR FRAUDULENT WRITING UNDER OHIO REV. CODE §§ 2921.03(A) AND (C) AND CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE § 2307.60 BY PLAINTIFFS DIANE GASTON AND LINDA LANIER AGAINST DEFENDANTS JOHNSON AND BRAZILE

194. Plaintiffs incorporate all previous allegations.

195. Under Ohio Rev. Code § 2921.03(A), no person, knowingly and by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a public servant in the discharge of the person's duty. The provision carries a criminal penalty.

196. Ohio Rev. Code § 2921.03(C) provides for a civil cause of action for damages, including attorney fees and costs, for violations of Ohio Rev. Code § 2921.03(A).

197. Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action. Violations of Ohio Rev. Code § 2921.03(A) are criminal acts, indeed felonious, under § 2921.03(B).

198. Defendant Johnson's statements during the May 24, 2021 virtual townhall were materially false and fraudulent writings. Such statements included, but are not limited to:

- "I must remind all of you that when you hear from the press, that that [sic] is to be reported to Integrated Communications…"

199. Defendant Johnson recorded and used these materially false and fraudulent writings with malicious purpose, in bad faith, and in a wanton and reckless manner, to attempt to hinder public servants, including but not limited to all Tri-C faculty and staff members who watched the townhall, in carrying out their job duties, by subjecting them to unwarranted discipline as public employees.

200. The June 16, 2021 Pre-Disciplinary Due Process Meeting Notifications issued to Professors Gaston and Lanier were also materially false and fraudulent writings. The false statements contained in these writings include, but are not limited to:

- Allegations that Professors Gaston and Lanier violated the "public affairs and information policy."

- Allegations that Professors Gaston and Lanier violated the collective-bargaining agreement between Tri-C and the American Association of University Professors.

201. Defendant Brazile drafted and/or used these materially false and fraudulent writings with malicious purpose, in bad faith, and in a wanton and reckless manner, to attempt to hinder Professors Gaston and Lanier in carrying out their job duties, by subjecting them to unwarranted discipline as public employees.

202. Defendant Brazile also used the Pre-Disciplinary Due Process Meeting Notifications to influence Tri-C administrators to approve and uphold unwarranted and retaliatory discipline against Professors Gaston and Lanier.

203. The August 6, 2021 Suspension Letters issued to Professors Gaston and Lanier were materially false and fraudulent writings. The false statements contained in these writings include, but are not limited to:

- "[Professor Gaston's] actions, behavior[] and conduct violated College Policy and the labor agreement."

- "[Professor Lanier's] actions, behavior[] and conduct violated College Policy and the labor agreement."

204. Defendant Brazile drafted and/or used these materially false and fraudulent writings with malicious purpose in bad faith, or in a wanton and reckless manner, to attempt to hinder Professors

Gaston and Lanier in carrying out their job duties, by subjecting them to unwarranted discipline as public employees.

205.     As a direct and proximate result of this unlawful conduct, Professors Gaston and Lanier have suffered and will continue to suffer economic and non-economic damages for which Defendants Johnson and Brazile are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

206.     Defendant Johnson and Brazile's, acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 10
### CIVIL LIABILTY FOR CRIMINAL ACTS (INTERFERING WITH CIVIL AND STATUTORY RIGHTS) UNDER OHIO REV. CODE §§ 2307.60 AND 2921.45 BY PLAINTIFFS DIANE GASTON AND LINDA LANIER AGAINST DEFENDANTS JOHNSON, MCCORY, WEBB, CLARKE, PARKS, KUNTZ, AND BRAZILE

207.     Plaintiff incorporates all previous allegations.

208.     Under Ohio Rev. Code § 2921.45, no public servant, under color of his office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right. This provision carries a criminal penalty.

209.     Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action.

210.     Defendants Johnson, McCory, Webb, Clarke, Parks, Kuntz, and Brazile are public servants. Under color of their office, employment, or authority, each knowingly deprived Professors Gaston and Lanier of their constitutional and statutory rights as detailed above, including their right to be free from retaliation for opposing discrimination and their constitutional right to freedom of speech.

211.     As a direct and proximate result of this unlawful conduct, Professors Gaston and Lanier have suffered and will continue to suffer economic and non-economic damages for which

Defendants Johnson, McCory, Webb, Clarke, Parks, Kuntz, and Brazile are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

212.    These Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### PRAYER FOR RELIEF

For the reasons stated above, Plaintiffs respectfully requests the following relief from the Court:

1.  Declare that Defendants' acts and conduct constitute violations of federal and state law and the United States Constitution;

2.  Enjoin Defendants from further retaliating against Plaintiffs Gaston and Lanier and from further implementing any previous acts of retaliation;

3.  Enter judgment in Plaintiffs' favor on all claims for relief;

4.  Award Plaintiffs full compensatory damages, economic and non-economic, including, but not limited to, damages for pain and suffering, mental anguish, emotional distress, humiliation, and inconvenience that they have suffered and are reasonably certain to suffer in the future;

5.  Award Plaintiffs punitive damages as appropriate for all intentional and malicious violations of federal and state law and constitutional rights;

6.  Award pre-judgment and post-judgment interest at the highest lawful rate;

7.  Award Plaintiffs their reasonable attorney fees (including expert fees) and all other costs of this suit;

8.  Award all other relief in law or equity to which Plaintiffs are entitled and that the Court deems equitable just, or proper.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues within this complaint.

Dated November 23, 2022   Respectfully submitted,

*/s/ Subodh Chandra*
Subodh Chandra (OH 0069233)
Donald P. Screen (OH 0044070)
Melissa S. Obodzinski (OH 0102556)
THE CHANDRA LAW FIRM LLC
The Chandra Law Building
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
216.578.1700 Phone
216.578.1800 Fax
Subodh.Chandra@ChandraLaw.com
Don.Screen@ChandraLaw.com
Melissa.Obodzinski@ChandraLaw.com

*Attorneys for Plaintiffs Diane Gaston and Linda Lanier*

Exhibit 1 is a video recording of the May 21, 2021 WOIO Channel 19 News "Next 400"

report and is being filed manually.

Channel 19 News Transcript

May 21st, 2021

Interviewer: The Covid-19 pandemic closed the book on in-person classes for nearly a year, changing the way students learn from a seat in the classroom to remote learning online. Deandre Wilson is a Tri-C graduate who moved on to a four-year college, but felt stalled by virtual courses put in place due to the coronavirus.

Student:     It just didn't feel the same. It wasn't something I was used to so that's when I just made the decision, like, maybe I should take a break.

Lanier:      The students at Metro, do not, by our own data, do well in a virtual, online environment. Online classes are the highest courses—the highest failure rate.

Interviewer: So, could online courses, combined with access to fewer course offerings for Tri-C's Metro students, make the comeback to the classroom a challenge? Dr. Denise McCorey, President of the Metro Campus, tells me all campuses have been treated the same, with limited on-campus services and limited classes. But, it's how to return to campus after a global health crisis that is still being worked out. The administration charged with figuring out how to enforce guidelines without knowing who is vaccinated and who is not.

McCorey:     Because we don't know people's status, as far as vaccination is concerned, we are going to have to assume that everybody is not vaccinated, everyone is un-vaccinated, and we're gonna have to make sure that we stay conservative in our approach to keep everybody safe.

Interviewer: The other issue, in-person classes offered at this time are still not at full capacity. But the President of the Metro campus says they do plan to offer more courses once they top out.

McCorey:     I was just looking at the data for our fall semester. None of our fully on-ground classes in the general studies area, none of those are full yet. So, we haven't seen the demand yet. But it's still relatively early.

Interviewer: While some suburban campuses have transitioned back to the classroom, in part, Metro students are still getting their education, in large part, remotely. Linda Lanier is an associate professor of counseling at Tri-C and feels that's a clear disadvantage.

Lanier:      We know who is going to be hurt the most. First of all, students of color, students who lack technology, it's poor students. Our eastern campus

EXHIBIT 2

1

|  | began in the January session of offering more on-ground campus, which is up in Highland—um, Richmond, Highland Hills area. And I thought that was a good step. I thought we would be following them. |
|---|---|
| Interviewer: | But she says that didn't happen. The largely minority Metro campus with about 4,000 students had approximately 70% of them taking classes in-person before the pandemic. Now concerns they may be forced to travel to another campus to get access to courses. Diane Gaston is an associate professor who says programs like social work or human services are no longer offered at Metro, a popular field for minority students. |
| Gaston: | Our motto is "Tri-C is where futures begin." It doesn't line up with that motto if certain students don't have the same opportunities, the same access. |
| McCorey: | My priority is to—to get students back. |
| Interviewer: | But could fewer course offerings, coupled with continued online learning, force minority students, already historically disadvantaged, to put college on hold and detour their path to progress? Former student Deandre says he's a proud graduate of Tri-C, but wants the playing field to be level, whether you are at Metro or in the suburbs. |
| Student: | School is a challenge in itself. |
| Interviewer: | For The Next 400, Michelle Nicks, 19News. |

Electronically Filed 12/23/2022 21:00 / NOTICE / CV 22 970419 / Confirmation Nbr. 2718060 / CLSLP

2

Exhibit 3 is a video recording of Tri-C's May 24, 2021 virtual townhall and is being filed

manually.

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **DIANE GASTON, ET AL.** <br><br> *Plaintiffs,* <br><br> v. <br><br> **CUYAHOGA COMMUNITY COLLEGE, ET AL.** <br><br> *Defendants.* | Case No. CV-22-971748 <br><br> Judge Nancy A. Fuerst |

**RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT ALEX JOHNSON**

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: 12/19/2022

_____
(Signature of the attorney or unrepresented party)

*Arcola Whatley*
_____
(Printed name)

700 Carnigie Avenue
Cleveland, OH 44115
(Address)

arcola.whatley@tri-c.edu
(E mail address)

216·987·4883
(Telephone number)

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **DIANE GASTON, ET AL.** <br><br> *Plaintiffs,* <br><br> v. <br><br> **CUYAHOGA COMMUNITY COLLEGE, ET AL.** <br><br> *Defendants.* | Case No. CV-22-971748 <br><br> Judge Nancy A. Fuerst |

## RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT AMY PARKS

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: 12/19/2022

_____
(Signature of the attorney or unrepresented party)

Areeya Whatley
_____
(Printed name)

_700 Carnegie Avenue_

_Cleveland, OH 44115_

(Address)

_arcola.whatley @tri-c.edu_

(E-mail address)

_216.987.4883_

(Telephone number)

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| DIANE GASTON, ET AL. | |
| *Plaintiffs,* | Case No. CV-22-971748 |
| v. | |
| CUYAHOGA COMMUNITY COLLEGE, ET AL. | Judge Nancy A. Fuerst |
| *Defendants.* | |

**RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT COURTNEY CLARKE**

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: __12/19/2022__

_____
(Signature of the attorney or unrepresented party)

_____
(Printed name)

700 Carnegie Avenue
Cleveland, OH 44115
(Address)

arcola.whatley@tri-c.edu
(E-mail address)

216·987·4883
(Telephone number)

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **DIANE GASTON, ET AL.** <br><br> *Plaintiffs,* <br><br> v. <br><br> **CUYAHOGA COMMUNITY COLLEGE, ET AL.** <br><br> *Defendants.* | Case No. CV-22-971748 <br><br> Judge Nancy A. Fuerst |

### RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT DAVID KUNTZ

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: _10/19/2022_

_(signature)_

(Signature of the attorney or unrepresented party)

_Arcola Whatley_

(Printed name)

700 Carnegie Avenue
Cleveland, OH 44115
(Address)

arcola.whatley @ tri-c.edu
(E-mail address)

216.987.4883
(Telephone number)

**IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO**

| | |
|---|---|
| **DIANE GASTON, ET AL.**<br><br>*Plaintiffs,*<br><br>v.<br><br>**CUYAHOGA COMMUNITY COLLEGE, ET AL.**<br><br>*Defendants.* | Case No. CV 22 971748<br><br>Judge Nancy A. Fuerst |

**RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT DENISE MCCORY**

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: __12/19/2022__

_____
(Signature of the attorney or unrepresented party)

_____
(Printed name)

_700 Carnegie Avenue_
_Cleveland, OH 44115_
(Address)

_arcola.whatley @tri-c.edu_
(E-mail address)

_216.987.4883_
(Telephone number)

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

|  |  |
|---|---|
| **DIANE GASTON, ET AL.** <br><br> *Plaintiffs,* <br><br> v. <br><br> **CUYAHOGA COMMUNITY COLLEGE, ET AL.** <br><br> *Defendants.* | Case No. CV 22-971748 <br><br> Judge Nancy A. Fuerst |

**RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT SHARI D. BRAZILE**

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: ___12/19/2022___

_____
(Signature of the attorney or unrepresented party)

*Areola Whatley,*
(Printed name)

700 Carnegie Avenue
Cleveland, OH 44115
(Address)

arcola.whatley@tri-c.edu
(E-mail address)

216.987.4883
(Telephone number)

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **DIANE GASTON, ET AL.**<br><br>*Plaintiffs,*<br><br>v.<br><br>**CUYAHOGA COMMUNITY COLLEGE, ET AL.,**<br><br>*Defendants.* | Case No. CV-22-971748<br><br>Judge Nancy A. Fuerst |

**RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT TERRY WEBB**

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: _12/19/2022_

_(signature)_

(Signature of the attorney or unrepresented party)

_Areola Whatley_

(Printed name)

*700 Carnegie Avenue*
*Cleveland, OH 44115*
(Address)

*areola.whatley@tri-c.edu*
(E-mail address)

*216.987.4883*
(Telephone number)

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| DIANE GASTON, ET AL.<br><br>*Plaintiffs*,<br><br>v.<br><br>CUYAHOGA COMMUNITY COLLEGE, ET AL.<br><br>*Defendants.* | Case No. CV-22-971748<br><br>Judge Nancy A. Fuerst |

### RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT CUYAHOGA COMMUNITY COLLEGE

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: _12/19/2022_

_(signature)_

(Signature of the attorney or unrepresented party)

_Arcola Whatley_

(Printed name)

700 Carnegie Avenue

Cleveland , OH 44115
(Address)

arcola.whatley@tri-c.edu
(E-mail address)

216.987.4883
(Telephone number)

**IN THE COURT OF COMMON PLEAS**
**CUYAHOGA COUNTY, OHIO**

| | |
|---|---|
| DIANE GASTON, *et al.,* | CASE NO.: CV-22-971748 |
| Plaintiffs, | JUDGE NANCY A. FUERST |
| vs. | **NOTICE TO STATE COURT OF FILING** |
| | **NOTICE OF REMOVAL UNDER 28** |
| CUYAHOGA COMMUNITY COLLEGE | **U.S.C. §§ 1441 AND 1446** |
| *et al.,* | |
| Defendants. | |

Defendants Cuyahoga Community College, Alex Johnson, Denise McCory, Terry Webb, Courtney Clarke, Amy Parks, David Kuntz, and Shari D. Brazile (collectively "Defendants"), hereby give notice that, on this 22nd day of December 2022, they have timely removed this civil action to the United States District Court for the Northern District of Ohio in accordance with 28 U.S.C. §§1441 and 1446. A true and accurate copy of Defendants' Notice of Removal filed on this day in the United States District Court for the Northern District of Ohio is attached hereto as Exhibit 1. Pursuant to 28 U.S.C. § 1446(d), the above-referenced state court shall proceed no further in this matter unless and until this case is remanded.

Respectfully submitted,

/s/ Barry Y. Freeman
Barry Y. Freeman (0062040)
bfreeman@ralaw.com
Roetzel & Andress, LPA
1375 East Ninth Street
One Cleveland Center, 10th Floor
Cleveland, OH 44114
Telephone: 216.623.0150
Facsimile: 216.623.0134

Stephanie Y. Olivera Mittica (0095651)
smittica@ralaw.com
Roetzel & Andress, LPA
222 South Main Street
Akron, OH 44308
Telephone: 330.376.2700
Facsimile: 330.376.4577

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of December, 2022, a true and correct copy of the

foregoing Notice of Removal was served via e-mail upon the following counsel of record for the

Plaintiff:

Subodh Chandra
Donald P. Screen
Melissa S. Obodzinski
The Chandra Law Firm LLC
The Chandra Law Building
1265 W. 6th St., Suite 400
Cleveland, OH 44113
Subodh.chandra@chandralaw.com
Don.screen@chandralaw.com
Melissa.obodzinski@chandralaw.com
*Attorneys for Plaintiffs*

/s/ *Stephanie Y. Olivera Mittica*
One of the Attorneys for Defendants



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**WAIVER SERVICE RETURN**
December 19, 2022 15:38

By: SUBODH CHANDRA 0069233

Confirmation Nbr. 2729919

DIANE GASTON, ET AL.                                      CV 22 971748

vs.

CUYAHOGA COMMUNITY COLLEGE, ET AL.          **Judge:** NANCY A. FUERST

**Pages Filed:** 2

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **DIANE GASTON, ET AL.** *Plaintiffs,* v. **CUYAHOGA COMMUNITY COLLEGE, ET AL.** *Defendants.* | Case No. CV-22-971748 Judge Nancy A. Fuerst |

**RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT AMY PARKS**

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: 12/19/2022

_____
(Signature of the attorney or unrepresented party)

Areola Whatley
_____
(Printed name)

Electronically Filed 12/19/2022 15:38 / SERVICE / CV 22 971748 / Confirmation Nbr. 2729919 / CLAHJ

700 Carnegie Avenue

Cleveland, OH 44115
(Address)

arcola.whatley@tri-C.edu
(E-mail address)

216.987.4883
(Telephone number)

Electronically Filed 12/19/2022 15:38 / SERVICE / CV 22 971748 / Confirmation Nbr. 2729919 / CLAHJ



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**WAIVER SERVICE RETURN**
December 19, 2022 15:36

By: SUBODH CHANDRA 0069233

Confirmation Nbr. 2729914

DIANE GASTON, ET AL.                                  CV 22 971748

      vs.

CUYAHOGA COMMUNITY COLLEGE, ET AL.          **Judge:** NANCY A. FUERST

Pages Filed: 2

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

|  |  |
|---|---|
| **DIANE GASTON, ET AL.**<br><br>*Plaintiffs,*<br><br>v.<br><br>**CUYAHOGA COMMUNITY COLLEGE, ET AL.**<br><br>*Defendants.* | Case No. CV-22-971748<br><br>Judge Nancy A. Fuerst |

**RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT COURTNEY CLARKE**

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: 12/19/2022

_____
(Signature of the attorney or unrepresented party)

_____
(Printed name)

_700 Carnegie Avenue_
_Cleveland, OH 44115_
(Address)

_arcola.whatley@tri-c.edu_
(E-mail address)

_216.987.4883_
(Telephone number)



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**WAIVER SERVICE RETURN**
December 19, 2022 15:33

By: SUBODH CHANDRA 0069233

Confirmation Nbr. 2729902

DIANE GASTON, ET AL.                                    CV 22 971748

vs.

CUYAHOGA COMMUNITY COLLEGE, ET AL.          **Judge:** NANCY A. FUERST

Pages Filed: 2

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **DIANE GASTON, ET AL.** | |
| *Plaintiffs,* | Case No. CV-22-971748 |
| v. | |
| **CUYAHOGA COMMUNITY COLLEGE, ET AL.** | Judge Nancy A. Fuerst |
| *Defendants.* | |

**RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT DAVID KUNTZ**

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: _12/19/2022_

_(signature)_

(Signature of the attorney or unrepresented party)

_Arcola Whatley_

(Printed name)

700 Carnegie Avenue
Cleveland, OH 44115
(Address)

arcola.whatley @ tri-c.edu
(E-mail address)

216·987·4883
(Telephone number)



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**WAIVER SERVICE RETURN**
December 19, 2022 15:31

By: SUBODH CHANDRA 0069233

Confirmation Nbr. 2729896

DIANE GASTON, ET AL.                    CV 22 971748

     vs.

CUYAHOGA COMMUNITY COLLEGE, ET AL.          **Judge:**  NANCY A. FUERST

Pages Filed:  2

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| DIANE GASTON, ET AL. | |
| *Plaintiffs,* | Case No. CV-22-971748 |
| v. | |
| CUYAHOGA COMMUNITY COLLEGE, ET AL. | Judge Nancy A. Fuerst |
| *Defendants.* | |

**RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT DENISE MCCORY**

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: ___12/19/2022___

_____
(Signature of the attorney or unrepresented party)

___Areeba Whatley___
(Printed name)

_700 Carnegie Avenue_
_Cleveland, OH 44115_
(Address)

_arcola.whatley@tri-c.edu_
(E-mail address)

_216.987.4883_
(Telephone number)



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**WAIVER SERVICE RETURN**
December 19, 2022 15:29

By: SUBODH CHANDRA 0069233

Confirmation Nbr. 2729893

DIANE GASTON, ET AL.                          CV 22 971748

    vs.

CUYAHOGA COMMUNITY COLLEGE, ET AL.            **Judge:** NANCY A. FUERST

Pages Filed:  2

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **DIANE GASTON, ET AL.** <br> *Plaintiffs,* <br> v. <br> **CUYAHOGA COMMUNITY COLLEGE, ET AL.** <br> *Defendants.* | Case No. CV-22-971748 <br><br> Judge Nancy A. Fuerst |

**RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT SHARI D. BRAZILE**

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: _12/19/2022_

_(signature)_
(Signature of the attorney or unrepresented party)

_Areola Whatley,_
(Printed name)

700 Carnegie Avenue

Cleveland, OH 44115
(Address)

arcola.whatley@tri-c.edu
(E-mail address)

216·987·4883
(Telephone number)



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**WAIVER SERVICE RETURN**
December 19, 2022 15:28

By: SUBODH CHANDRA 0069233

Confirmation Nbr. 2729889

DIANE GASTON, ET AL.                    CV 22 971748

vs.

CUYAHOGA COMMUNITY COLLEGE, ET AL.      **Judge:** NANCY A. FUERST

Pages Filed: 2

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **DIANE GASTON, ET AL.** <br><br> *Plaintiffs,* <br><br> v. <br><br> **CUYAHOGA COMMUNITY COLLEGE, ET AL.** <br><br> *Defendants.* | Case No. CV-22-971748 <br><br> Judge Nancy A. Fuerst |

**RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT TERRY WEBB**

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date:  ___12/19/2022___

_____
(Signature of the attorney or unrepresented party)

_____
(Printed name)

700 Carnegie Avenue
Cleveland, OH 44115
(Address)

arcola.whatley@tri-c.edu
(E-mail address)

216.987.4883
(Telephone number)



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**WAIVER SERVICE RETURN**
December 19, 2022 15:26

By: SUBODH CHANDRA 0069233

Confirmation Nbr. 2729886

DIANE GASTON, ET AL.                                      CV 22 971748

vs.

CUYAHOGA COMMUNITY COLLEGE, ET AL.          **Judge:** NANCY A. FUERST

Pages Filed: 2

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **DIANE GASTON, ET AL.**<br><br>*Plaintiffs,*<br><br>v.<br><br>**CUYAHOGA COMMUNITY COLLEGE, ET AL.**<br><br>*Defendants.* | Case No. CV-22-971748<br><br>Judge Nancy A. Fuerst |

### RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT ALEX JOHNSON

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: _12/19/2022_

_(signature)_

(Signature of the attorney or unrepresented party)

_Arcola Whatley_

(Printed name)

Electronically Filed 12/19/2022 15:26 / SERVICE / CV 22 971748 / Confirmation Nbr. 2729886 / CLAHJ

700 Carnegie Avenue

Cleveland, OH 44115

(Address)

arcola.whatley@tri-c.edu

(E mail address)

216·987·4883

(Telephone number)

Electronically Filed 12/19/2022 15:26 / SERVICE / CV 22 971748 / Confirmation Nbr. 2729886 / CLAHJ



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**WAIVER SERVICE RETURN**
December 19, 2022 15:24

By: SUBODH CHANDRA 0069233

Confirmation Nbr. 2729879

DIANE GASTON, ET AL.

CV 22 971748

vs.

Judge:  NANCY A. FUERST

CUYAHOGA COMMUNITY COLLEGE, ET AL.

Pages Filed:  2

**IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO**

| | |
|---|---|
| **DIANE GASTON, ET AL.** <br> *Plaintiffs,* <br> v. <br> **CUYAHOGA COMMUNITY COLLEGE, ET AL.** <br> *Defendants.* | Case No. CV-22-971748 <br><br> Judge Nancy A. Fuerst |

**RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT CUYAHOGA COMMUNITY COLLEGE**

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: _12/19/2022_

_____
(Signature of the attorney or unrepresented party)

_Arcola Whatley_
(Printed name)

700 Carnegie Avenue

Cleveland , OH 44115

(Address)

arcola.whatley@tri-c.edu

(E-mail address)

216.987.4883

(Telephone number)



CV22971748

134088666

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

FILED

| | |
|---|---|
| **Diane Gaston**<br>15 White St.<br>Berea, OH 44017<br><br>and<br><br>**Linda Lanier**<br>652 Castle Blvd.<br>Akron, OH 44313<br><br>Plaintiffs,<br><br>vs.<br><br>Cuyahoga Community College<br>700 Carnegie Ave.<br>Cleveland, OH 44115<br><br>Alex Johnson<br>27050 Cedar Road, Apt. 418<br>Beachwood, OH 44112<br><br>Denise McCory<br>3646 Winchell Road<br>Shaker Heights, OH 44122<br><br>Terry Webb<br>14616 Reddington Avenue<br>Cleveland, OH 44137<br><br>Courtney Clarke<br>9791 Forestview Drive<br>Cleveland, OH 44121<br><br>Amy Parks<br>31493 Bishops Gate Circle<br>Westlake, OH 44145<br><br>David Kuntz<br>11258 Coventry Court<br>North Royalton, OH 44133<br><br>and | 2022 NOV 28 P 1: 03<br>CLERK OF COURTS<br>CUYAHOGA COUNTY<br><br>Case No. CV-22-971748<br><br>Judge Nancy A. Fuerst |

Shari D. Brazile
3462 Edison Road
Cleveland Heights, OH 44121

        Defendants.

### EXHIBITS 1 AND 3 TO THE COMPLAINT
### (VIDEO RECORDINGS THAT ARE BEING FILED MANUALLY)

Plaintiffs Diane Gaston and Linda Lanier respectfully attach for manual filing those exhibits

to the Complaint that are video files, namely,

- Exhibit 1, which is a video recording titled "2021-05-21 Interview with Channel 19 News";

- Exhibit 3, which is a video recording titled "2021-05-24 Video Recording of Town Hall."

These exhibits will be promptly provided to Defendants via a web-based file-sharing service.

Date: November 28, 2022          Respectfully submitted,

        */s/ Subodh Chandra*
        Subodh Chandra (OH 0069233)
        Donald P. Screen (OH 0044070)
        Melissa S. Obodzinski (OH 0102556)
        THE CHANDRA LAW FIRM LLC
        The Chandra Law Building
        1265 W. 6th St., Suite 400
        Cleveland, OH 44113-1326
        216.578.1700 Phone
        216.578.1800 Fax
        Subodh.Chandra@ChandraLaw.com
        Don.Screen@ChandraLaw.com
        Melissa.Obodzinski@ChandraLaw.com

        *Attorneys for Plaintiffs Diane Gaston and Linda Lanier*

Case # CV-22-971748

Exhibits 1 and 3



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**WAIVER SERVICE RETURN**
December 19, 2022 15:36

By: SUBODH CHANDRA 0069233

Confirmation Nbr. 2729914

DIANE GASTON, ET AL.                     CV 22 971748

vs.

CUYAHOGA COMMUNITY COLLEGE, ET AL.     Judge: NANCY A. FUERST

Pages Filed: 2

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **DIANE GASTON, ET AL.** <br><br> *Plaintiffs,* <br><br> v. <br><br> **CUYAHOGA COMMUNITY COLLEGE, ET AL.** <br><br> *Defendants.* | Case No. CV-22-971748 <br><br> Judge Nancy A. Fuerst |

**RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT COURTNEY CLARKE**

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: ___12/19/2022___

_____
(Signature of the attorney or unrepresented party)

_____
(Printed name)

Electronically Filed 12/19/2022 15:36 / SERVICE / CV 22 971748 / Confirmation Nbr. 2729914 / CLAHJ

700 Carnegie Avenue

Cleveland, OH 44115

(Address)

arcola.whatley@tri-c.edu

(E-mail address)

216.987.4883

(Telephone number)

Electronically Filed 12/19/2022 15:36 / SERVICE / CV 22 971748 / Confirmation Nbr. 2729914 / CLAHJ



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**WAIVER SERVICE RETURN**
December 19, 2022 15:33

By: SUBODH CHANDRA 0069233

Confirmation Nbr. 2729902

DIANE GASTON, ET AL.                               CV 22 971748

vs.

CUYAHOGA COMMUNITY COLLEGE, ET AL.        **Judge:** NANCY A. FUERST

Pages Filed: 2

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **DIANE GASTON, ET AL.** <br> *Plaintiffs,* <br><br> v. <br><br> **CUYAHOGA COMMUNITY COLLEGE, ET AL.** <br> *Defendants.* | Case No. CV-22-971748 <br><br> Judge Nancy A. Fuerst |

### RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT DAVID KUNTZ

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: 12/19/2022

_____
(Signature of the attorney or unrepresented party)

_Areola Whatley_
(Printed name)

700 Carnegie Avenue
Cleveland, OH 44115
(Address)

arcola.whatley @ tri-c.edu
(E-mail address)

216.987.4883
(Telephone number)



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**WAIVER SERVICE RETURN**
December 19, 2022 15:31

By: SUBODH CHANDRA 0069233

Confirmation Nbr. 2729896

DIANE GASTON, ET AL.                              CV 22 971748

      vs.

CUYAHOGA COMMUNITY COLLEGE, ET AL.        **Judge:**  NANCY A. FUERST

Pages Filed:  2

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **DIANE GASTON, ET AL.** <br> *Plaintiffs,* <br><br> v. <br><br> **CUYAHOGA COMMUNITY COLLEGE, ET AL.** <br> *Defendants.* | Case No. CV-22-971748 <br><br> Judge Nancy A. Fuerst |

### RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT DENISE MCCORY

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: _12/19/2022_

_(signature)_
(Signature of the attorney or unrepresented party)

_Arcela Whatley_
(Printed name)

_700 Carnegie Avenue_
_Cleveland, OH 44115_
(Address)

_arcola.whatley@tri-c.edu_
(E-mail address)

_216.987.4883_
(Telephone number)



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**WAIVER SERVICE RETURN**
December 19, 2022 15:29

By: SUBODH CHANDRA 0069233

Confirmation Nbr. 2729893

DIANE GASTON, ET AL.                    CV 22 971748

vs.

CUYAHOGA COMMUNITY COLLEGE, ET AL.       **Judge:** NANCY A. FUERST

Pages Filed:  2

## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

<table>
<tr><td>

**DIANE GASTON, ET AL.**

*Plaintiffs,*

v.

**CUYAHOGA COMMUNITY COLLEGE, ET AL.**

*Defendants.*

</td><td>

Case No. CV 22 971748

Judge Nancy A. Fuerst

</td></tr>
</table>

**RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT SHARI D. BRAZILE**

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: _12/19/2022_

_____
(Signature of the attorney or unrepresented party)

_Areola Whatley,_
(Printed name)

Electronically Filed 12/19/2022 15:29 / SERVICE / CV 22 971748 / Confirmation Nbr. 2729893 / CLAHJ

700 Carnegie Avenue

Cleveland, OH 44115
(Address)

arcola.whatley@tri-c.edu
(E-mail address)

216·987·4883
(Telephone number)

Electronically Filed 12/19/2022 15:29 / SERVICE / CV 22 971748 / Confirmation Nbr. 2729893 / CLAHJ



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**WAIVER SERVICE RETURN**
December 19, 2022 15:28

By: SUBODH CHANDRA 0069233

Confirmation Nbr. 2729889

DIANE GASTON, ET AL.                                    CV 22 971748

vs.

CUYAHOGA COMMUNITY COLLEGE, ET AL.          **Judge:**  NANCY A. FUERST

**Pages Filed:  2**

**IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO**

<table>
<tr><td>

**DIANE GASTON, ET AL.**

*Plaintiffs,*

v.

**CUYAHOGA COMMUNITY COLLEGE, ET AL,**

*Defendants.*

</td><td>

Case No. CV-22-971748

Judge Nancy A. Fuerst

</td></tr>
<tr><td colspan="2">

**RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT TERRY WEBB**

</td></tr>
</table>

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: _12/19/2022_

_____
(Signature of the attorney or unrepresented party)

_Areola Whatley_
(Printed name)

Electronically Filed 12/19/2022 15:28 / SERVICE / CV 22 971748 / Confirmation Nbr. 2729889 / CLAHJ

700 Carnegie Avenue

Cleveland, OH 44115
(Address)

arcela.whatley@tri-c.edu
(E-mail address)

216.987.4883
(Telephone number)

Electronically Filed 12/19/2022 15:28 / SERVICE / CV 22 971748 / Confirmation Nbr. 2729889 / CLAHJ



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

### Court of Common Pleas

**WAIVER SERVICE RETURN**
December 19, 2022 15:24

By: SUBODH CHANDRA 0069233

Confirmation Nbr. 2729879

DIANE GASTON, ET AL.                                CV 22 971748

     vs.

CUYAHOGA COMMUNITY COLLEGE, ET AL.        **Judge:** NANCY A. FUERST

Pages Filed:  2

**IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO**

| | |
|---|---|
| **DIANE GASTON, ET AL.** <br> *Plaintiffs,* <br> v. <br> **CUYAHOGA COMMUNITY COLLEGE, ET AL.** <br> *Defendants.* | Case No. CV-22-971748 <br><br> Judge Nancy A. Fuerst |

**RULE 4.7 WAIVER OF THE SERVICE OF SUMMONS FOR DEFENDANT CUYAHOGA COMMUNITY COLLEGE**

To Subodh Chandra, attorney for Diane Gaston and Linda Lanier:

I have received your request to waive service of a summons in this action along with a copy of the complaint and two copies of this waiver form.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from November 29, 2022, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment could be entered against me or the entity I represent.

Date: _12/19/2022_

_____
(Signature of the attorney or unrepresented party)

_Arcola Whatley_
(Printed name)

Electronically Filed 12/19/2022 15:24 / SERVICE / CV 22 971748 / Confirmation Nbr. 2729879 / CLAHJ

700 Carnegie Avenue
_____
Cleveland , OH 44115
_____
(Address)

arcola.whatley@tri-c.edu
_____
(E-mail address)

216.987.4883
_____
(Telephone number)

Electronically Filed 12/19/2022 15:24 / SERVICE / CV 22 971748 / Confirmation Nbr. 2729679 / CLAHJ



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

### Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**November 23, 2022 21:08**

By: SUBODH CHANDRA 0069233

Confirmation Nbr. 2710660

DIANE GASTON, ET AL.                                    CV 22 971748

    vs.

CUYAHOGA COMMUNITY COLLEGE, ET AL.          **Judge:** NANCY A. FUERST

Pages Filed: 52

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **Diane Gaston**<br>15 White St.<br>Berea, OH 44017<br><br>and<br><br>**Linda Lanier**<br>652 Castle Blvd.<br>Akron, OH 44313<br><br>Plaintiffs,<br>vs.<br><br>Cuyahoga Community College<br>700 Carnegie Ave.<br>Cleveland, OH 44115<br><br>Alex Johnson<br>27050 Cedar Road, Apt. 418<br>Beachwood, OH 44112<br><br>Denise McCory<br>3646 Winchell Road<br>Shaker Heights, OH 44122<br><br>Terry Webb<br>14616 Reddington Avenue<br>Cleveland, OH 44137<br><br>Courtney Clarke<br>9791 Forestview Drive<br>Cleveland, OH 44121<br><br>Amy Parks<br>31493 Bishops Gate Circle<br>Westlake, OH 44145<br><br>David Kuntz<br>.11258 Coventry Court<br>North Royalton, OH 44133<br><br>and | Case No.<br><br>Judge |

Shari D. Brazile
3462 Edison Road
Cleveland Heights, OH 44121

                    Defendants.

## COMPLAINT WITH JURY DEMAND

### NATURE OF ACTION

1.     This is a civil-rights action brought under federal and state anti-discrimination-and-retaliation laws including 42 U.S.C. § 1983 (First and Fourteenth Amendments); Title VI and Title VII of the Civil Rights Act of 1964 (retaliation in higher education and employment respectively), Ohio Rev. Code § 4112, *et seq.*, (Ohio employment retaliation); and civil liability for criminal acts and civil intimidation under Ohio law.

2.     When Plaintiffs Diane Gaston and Linda Lanier, tenured faculty members of Cuyahoga Community College ("Tri-C"), opposed and spoke out against unethical and discriminatory practices they discovered at the College, Defendant Alex Johnson (aided by and working in concert with Defendants Denise McCory, Terry Webb, Courtney Clarke, Shari Brazile, Amy Parks, and David Kuntz) spearheaded a vindictive and retaliatory conspiracy to tarnish their professional reputations and degrade their working conditions. The practices Professors Gaston and Lanier opposed were matters of public concern that included the public College's racially discriminatory course-scheduling decisions.

### PARTIES

3.     Plaintiff Professor Diane Gaston is a faculty member of Defendant Cuyahoga Community College and resides in Cuyahoga County, Ohio.

4.     Plaintiff Professor Linda Lanier is a faculty member of Defendant Cuyahoga Community College and resides in Summit County, Ohio.

5.     Defendant Cuyahoga Community College ("Tri-C" or the "College") is a public, governmental higher-educational institution with four campuses throughout Cuyahoga County, Ohio. The College currently employs Professor Gaston, Professor Lanier, Defendant McCory, Defendant Webb, Defendant Clarke, Defendant Parks, Defendant Kuntz, and Defendant Brazile, formerly employed Defendant Johnson, and is vicariously liable for acts and omissions taken under its customs, policies, or practices. Tri-C is also responsible for training and supervising its employees in carrying out their duties in a lawful manner.

6.     Defendant Alex Johnson was at all relevant times Tri-C's president and acted under color of state law. He resides in Cuyahoga County. He is sued in his personal capacity.

7.     Defendant Denise McCory was at all relevant times the president of Tri-C's Metropolitan ("Metro") campus and acted under state law. She resides in Cuyahoga County. She is sued in her official and personal capacity.

8.     Defendant Terry Webb was at all relevant times Tri-C's assistant dean of counseling and psychological services. Her resides in Cuyahoga County. He is sued in his official and personal capacity.

9.     Defendant Courtney Clarke was at all relevant times Tri-C's the associate dean of social sciences. She resides in Cuyahoga County. She is sued in her official and personal capacity.

10.    Defendant Amy Parks was at all relevant times Tri-C's dean of academic affairs. She resides in Cuyahoga County. She is sued in her official and personal capacity.

11.    Defendant David Kuntz was at all relevant times Tri-C's executive vice president of administration and finance. He resides in Cuyahoga County. He is sued in his official and personal capacity.

12.     Defendant Shari Brazile was at all relevant times Tri-C's manager of employee relations. She resides in Cuyahoga County. She is sued in her official and personal capacity.

### JURISDICTION AND VENUE

13.     This Court has personal jurisdiction over Defendants, who all conduct business and reside in Cuyahoga County, Ohio.

14.     Venue is proper because all parties reside, work, or conduct business in Cuyahoga County, and the events giving rise to Plaintiffs' claims took place within this District.

### FACTUAL BACKGROUND

**Professors Gaston and Lanier are distinguished, tenured faculty members of Cuyahoga Community College with spotless records.**

15.     Professor Gaston has been employed by Tri-C since August 2001. She is tenured and currently serves as an associate professor of philosophy, humanities, and religious studies at Tri-C's Western campus.

16.     Professor Lanier has been employed by Tri-C since January 2011. She is tenured and currently serves as an assistant professor of counseling, psychological and access services at the College's Metro campus. In that role, she provides personal, academic, and career counseling to current and prospective students.

17.     Professors Gaston and Lanier have also served on many special committees for the College and have participated in extra-curricular programs that benefit students and the community. In 2016, Professor Lanier founded the Black Diamonds Women's Initiative ("Black Diamonds"), a program that promotes the success and well-being of African-American women by offering events and resources focused on educational opportunities, career development, health and wellness, and financial empowerment. Professors Gaston and Lanier served as co-chairs of Black Diamonds at all relevant times.

18.     Neither Professor Gaston's nor Professor Lanier's ordinary or *ad hoc* duties include reporting to the media, the College, or its administration on racial discrimination, or on retaliation for opposing racial discrimination.

19.     Neither Professor Gaston nor Lanier can recall ever having received a negative personnel evaluation.

20.     Throughout their tenure with Tri-C, Professor Gaston and Lanier have been formally recognized for the quality of their work and commitment to student success. For example, Professor Gaston has received the League for John & Suanne Rouche Innovation in Community College Excellence Award and the Ralph M. Besse Excellence in Teaching Award. She was also recognized by Tri-C's Division of Academic Affairs for her role in developing a specialized course for first-year students. In March 2020, Professor Lanier was featured in the "Tri-C Times" for her achievement in cultivating student success and supporting African-American women.

21.     Before May 2021 (when they were disciplined for engaged in legally protected activity) neither Professor Gaston nor Professor Lanier had been subject to disciplinary action.

22.     But things quickly changed course when they identified College course-scheduling policies that disproportionately affected minority students at Tri-C's Metro campus, and sounded the alarm with the administration and the media.

**Professors Gaston and Lanier send several emails reporting concerns about racially discriminatory course-scheduling practices to Tri-C administrators.**

23.     In February 2020, Tri-C, like other colleges, was forced to replace traditional in-person classes with remote instruction to limit the spread of COVID-19. It wasn't until 2021 that Tri-C resumed offering in-person classes on its campuses.

24.     In January 2021, Tri-C publicly posted its course schedule for the upcoming fall semester, with registration scheduled to open on March 22, 2021.

25.    In the fall 2021 schedule, there were significant disparities in the in-person classes offered at Tri-C's Metro campus compared with the College's suburban campuses. Specifically,

- There were fewer introductory-level classes offered in-person at the Metro campus than at suburban campuses (meaning that new Metro campus students had fewer opportunities to take in-person courses); and

- There were no philosophy or religious studies classes offered in-person at the Metro campus.

26.    Tri-C's Metro campus is located in downtown Cleveland and has a higher concentration of African-American students than the College's suburban campuses.

27.    Professors Gaston and Lanier were concerned about the impact the proposed schedule would have on Metro campus's African-American students, because they statistically don't perform well in online courses. They were especially concerned about the impact the lack of in-person course options would have inner city African-American students, many of whom may not have the resources needed to succeed in a virtual learning environment (e.g., a reliable computer and broadband internet) or travel to suburban campuses for in-person instruction.

28.    Cleveland Metropolitan School District ("CMSD") officials shared these concerns. In January 2021, Defendants Parks and Webb, and Professor Lanier, met with administrators from a CMSD school to discuss student enrollment. During this meeting, they discussed how poorly CMSD students had performed in online courses, and their belief that this had led to decreased enrollment numbers in the spring 2021 semester.

29.    Even after this meeting, Tri-C did not revise its proposed schedule.

30.    Beginning in February 2021, as explained below, Professors Gaston and Lanier repeatedly reported to every level of Tri-Cs administration their concern that the schedule was racially discriminatory.

31.     On February 25, 2021, Professor Gaston contacted Defendant McCory and Provost Karen Miller as well as other Tri-C faculty and administrators to alert them and "voice [her] strong opposition" to the decision to remove philosophy and religious studies courses on Metro's campus. She asked, "How is it in the best interest of Metro students to eliminate all [in-person] options and the popular and needed [introductory philosophy course]?"

32.     On March 1, 2021, Professor Lanier contacted Defendants McCory, Parks, and Webb, as well as other Tri-C faculty and administrators to highlight the disparity in the in-person course offerings between the Metro and suburban campuses and the impact that would have on African-American students. She explained that, according to research and best practices, the schedule was "counter-productive for a path to success for the typical Metro student" and pointed out that the East and West campus schedules (which included more in-person, night, and weekend offerings) were more tailored to student achievement.

33.     These reports were effectively dismissed:

- In her response to Professor Lanier's email, Provost Miller blamed the decision to remove Metro campus's in-person philosophy and religious-studies courses on low enrollment numbers and a lack of staffing, citing deference to the opinions of her "counterparts." Professor Lanier rebutted these explanations, noting that the courses had not been eliminated from other campuses and that she and other faculty in her department had offered to assist with staffing. The provost agreed that they "need[ed] to focus on course and modality diversity" but otherwise failed to address Professor Lanier's specific concerns about the impact of the lack of access to in-person instruction on Metro-campus students.

- Defendant Parks acknowledged Professor Lanier's "thoughts on this important topic" but failed to address her concerns about the disparity between the in-person courses

offered at the Metro campus compared with the suburban campuses, and the impact it would have on African-American students. Defendant Parks instead offered a vague series of the considerations that had gone into the course-scheduling decisions (e.g., the new development of remote courses, a decline in overall enrollment, and a need to balance the offerings across campuses) and assured Professor Lanier that Tri-C was including in-person offerings "for students who have that preference." Defendant Parks made it clear that Professor Lanier should not raise the issue again, stating "[Defendant Webb] and I are also in regular contact about the schedule, so he can keep me informed about areas of concern as they arise."

- Upon information and belief, Defendant McCory (as the Metro campus's vice president) participated in, and had influence over, these course-scheduling decisions. Despite having been copied on these emails, she responded to neither professor's reports.

34.     In a March 4, 2021 email to several administrators including Defendants McCory, Webb, Parks, and Johnson, Professor Lanier reiterated her concerns about the schedule, and the administration's lack of response to her reports. In this email, Professor Lanier even acknowledged the possibility that she would face retaliation for making this report. She wrote:

- "The equity concerns in my email are not new and have been voiced consistently by my colleagues, CMSD personnel, and other community members, yet ignored."

- "To dismiss my concerns, and systematically ignore the unfair and detrimental practices impacting students of color is gravely concerning to me. While others may not speak out regarding this issue for fear of retaliation via professional isolation, I will continue to voice my concerns to you and the community who are aware of how Metro scheduling policies are negatively impacting achievement for students of color."

- "The continued unequal and inequitable scheduling at Metro is structural and that is the concern I presented to you and my colleagues[;] our students deserve a fair chance."

35.     On March 9, 2021, Professor Lanier met with Defendant McCory, Defendant Parks, and the Metro-campus deans where she again voiced her concerns regarding the negative impact the lack of in-person course offerings on the Metro campus would have on students of color. During that meeting, everyone expressed agreement that Professor Lanier's concerns were valid. Defendant Parks blamed the lack of in-person course offerings on the faculty, alleging that nobody was willing to teach those courses. This explanation was illogical because the deans control the schedule and faculty can only elect to teach courses that Tri-C offers.

36.     Having received no assurance that their concerns would be addressed, Professors Gaston and Lanier elevated their expressions on these issues of public concern about discrimination well above their immediate supervisor by co-authoring an email to Tri-C's president Defendant Johnson on March 17, 2021. In that email, they offered a detailed basis for their belief that the schedule was discriminatory, explained that this was a matter of public concern, and urged him to take action. They wrote:

- "We are reaching out to you in a desperate attempt to address an emergent situation at the Metropolitan Campus. We have both individually contacted administrators before taking this extraordinary step. Our concern is the removal of essentially all on-ground courses at the Metropolitan campus for fall 2021."

- "Since[] data shows that face-to-face instruction is the most effective and preferred method of learning, it is inexplicable that Metro campus, which serves the greatest population of Black students, is removing the option to take on-ground classes. The fact that East, West, and Westshore campuses are offering considerable numbers of on-ground courses[] reflects their understanding of student-centered learning. What is

concerning is this exclusion of on-ground scheduling is detrimental to the most

underserved population. Metro[-]campus students are the most under[-]resourced, and

least desiring of online offerings."

- "Because of the obvious inequity and disparity related to Metro scheduling we are

    appealing to you to intervene. As the President of the college with tremendous influence

    in the community, we are hoping you will quiet the concerns voiced by local

    stakeholders, such as CMSD [Cleveland Municipal School District], the Urban League,

    and others."

**Professors Gaston and Lanier experience disparate treatment and report it to their
supervisors. Again, their concerns are effectively dismissed.**

37.    In addition to, and in conjunction with, her reports regarding Tri-C's racially disparate

schedule, Professor Lanier raised concerns that she was being treated differently than her

department colleagues on the basis of her race, gender, and advocacy for African-American

students.

38.    In a March 12, 2021, department meeting, Defendant Webb reported that Metro students

were "doing very well" in remote courses, supposedly evidenced by the fact that they had enrolled in

them (when they had no other choice). This broad and unsupported generalization was an obvious

attempt to discredit Professor Lanier and disparage her efforts to expose Tri-C's discriminatory

course-scheduling practices in front of her colleagues.

39.    After that meeting, Professor Lanier contacted Defendant Webb to express her concern that

the "tone and tenor" of Defendant Webb's comments at this meeting, along with other recent

decisions and actions, constituted a pattern of "disparate treatment" against her, dating back to Fall

2020. She reported that:

- On March 4, 2021, Defendant Webb sent her an email regarding faculty contracts for summer 2021. Normally, this type of information would have been sent either to both Professor Lanier and her department co-chair (who jointly serve as the administration's point of contact for the department) or to everyone in her department. The fact that Defendant Webb took the unprecedented step of sending this email to Professor Lanier individually suggested that she was being intentionally omitted from group communications to the department, and that her ability to accept a summer contract may be "in question."

- Defendant Webb had denied the opportunity to incorporate time to work on Black Diamonds into Professor Lanier's schedule, even though she had always been allowed to do so before.

- Her department's scheduling managers had assigned her to a less-favorable appointment schedule than the other counselors. Specifically, she was assigned to take more scheduled appointments than other counselors, and not given any time slots for walk-in appointments or e-advising, which are more flexible and less demanding than scheduled appointments. This burdensome schedule made it difficult for her to respond to emails from students and colleagues during the day.

- Defendant Webb denied her request to schedule, one day per week, her lunch break at the end of the day (even though a white-male colleague was allowed to take lunch at the end of the day on every day of the week).

- Defendant Webb denied her request to teach a class at MetroHealth Hospital, and instead handed the course to a less-qualified, non-tenured professor. Defendant Webb did this in violation of a provision in Tri-C's collective-bargaining agreement with the

American Association of University Professors that granted tenured faculty the right of first refusal to teach courses in their discipline.

- The managers in charge of scheduling were giving her an unfairly high workload compared to the other counselors, including significantly more in-person, scheduled appointments.

40. Later that month, Professor Lanier met with Defendant Webb and the supervisor above him to discuss in more detail this unfair treatment against her. During the meeting, Defendant Webb attempted to defend his actions by distancing himself from the decision-making. He said that Professor Lanier was assigned a less-flexible schedule because she was the "most requested" counselor, and that he "was told" that the Black Diamonds Initiative is not a college event (and therefore she was not afforded time to plan or organize the upcoming Black Diamonds conference). He offered no explanation for other concerns Professor Lanier raised; nor did he indicate that he would address them with the administration.

41. Professor Gaston also experienced and reported unfair treatment regarding her workload and compensation, which arose shortly after she had reported concerns about Tri-C's Fall 2021 schedule.

42. Upon information and belief, in March 2021, Defendant Clarke (Professor Gaston's immediate supervisor) directed or allowed one of Professor Gaston's white colleagues to take credit and receive compensation for work Professor Gaston had done by removing Professor Gaston's name and replacing it with her own.

43. Professor Gaston was thus denied just compensation for her labor in addition to the indignity of having her work unfairly attributed to a white colleague.

44. On March 25, 2021, Defendant Clarke asked Professor Gaston to complete additional work related to the project for which Professor Gaston had been denied credit and compensation in favor

of her white colleague. Professor Gaston expressed concern, because she had been denied credit and compensation for the work she had already done. In response to Professor Gaston's concerns, Defendant Clarke promised to ensure that Professor Gaston "receive[d] credit and compensation for completing the work" but did not otherwise address the disparate treatment Professor Gaston reported.

45.     Defendant Clarke's assurances proved hollow when, on May 4, 2021, she emailed Professor Gaston to inform her that she would only be offered unpaid "service credits" in exchange for her work on the project. Faculty members are contractually required to earn a certain number of service credits by doing extracurricular work for the school and/or community, independent of the required credits for their regular duties. Because Professor Gaston had already completed her requisite service credits for the year, this effectively meant she was being asked to do this work for no compensation or personal benefit.

46.     Despite the uptick in disparate treatment against them, and valid concerns that they would experience further acts of retaliation as a result of challenging the treatment, Professors Gaston and Lanier persisted in their efforts to advocate for the Metro campus's African-American students by speaking out about Tri-C's discriminatory Fall 2021 schedule.

**Professors Gaston and Lanier voice concerns to a local news station about the inequity of the fall course offerings at the College's Metro campus.**

47.     On May 21, 2021, Professors Gaston and Lanier were interviewed by Michelle Nix of WOIO Channel 19 News, a Cleveland-area news outlet. The investigation was part of the station's "Next 400" series, which examines structural racism, and the challenges faced by and achievements of African-Americans. This particular news segment, "Is a return to higher education after Covid putting up barriers for minority students?" focused on the challenges.

48.     During this interview, Professors Gaston and Lanier voiced their concern for the lack of access African-American students had to in-person courses on Tri-C's Metro campus. A video

recording of the report is attached and incorporated as **Exhibit 1**, and a full transcript is attached and incorporated as **Exhibit 2**. Professor Gaston's and Professor Lanier's statements included:

- Lanier: "The students at Metro, do not, by our own data, do well in a virtual, online environment. Online courses are the highest courses—the highest failure rate . . . We know who is going to be hurt the most. First of all, students of color, students who lack technology, it's poor students. Our eastern campus began in January offering more on-ground campus, which is up in [the Richmond/Highland Hills] area. And I thought that was a good step. I thought we would be following them."

- Gaston: "Our motto is 'Tri–C is where futures begin.' It doesn't line up with that motto if certain students do not have the same opportunities, the same access."

49.     Neither Professor Gaston nor Professor Lanier stated that they were speaking on behalf of Tri-C. They were not. They are not administrators. Nor did any administrator ask them to speak on the College's behalf. Nor had either ever spoken on the College's behalf to any media, ever. They were speaking as private citizens.

50.     The concerns they raised related to the impact of COVID-19 on educational issues that directly affect the African-American population in Cleveland, Ohio, and specifically how Tri-C's practice of offering fewer in-person courses at the Metro campus harmed minority students. These are matters of public concern.

51.     Their report in no way hindered Tri-C's operations or legitimate goals or mission. In fact, their speech was intended to improve those operations and that mission.

**Defendant Johnson uses a public townhall meeting to chastise Professors Gaston and Lanier for their participation in the Channel 19 report.**

52.     On or about May 21, 2021, Tri–C invited all students, faculty, staff, and administrators to attend a May 24, 2021 virtual "townhall" meeting. The College sent an unusually high volume of

emails announcing this townhall. This meeting was also open to the public and promoted on Tri-C's website.

53. During that special virtual townhall meeting, three days after the news report aired, Defendant Johnson, then Tri-C's president, publicly chastised Professors Gaston and Lanier for their speech in the Channel 19 interview. This was the first salvo in what would become a barrage of retaliation against them. A video recording Defendant Johnson's townhall is attached as **Exhibit 3**.

54. Just over four minutes into his remarks, Defendant Johnson excoriated Professors Gaston and Lanier for voicing on the Channel 19 "Next 400" interviews what he characterized as "disturbing and unsubstantiated … perspectives."

55. Upon information and belief, Defendant Johnson referred to Professors Gaston and Lanier by name. Regardless, whose interviews he was talking about quickly became apparent to those watching.

56. Despite some audio issues, enough of Defendant Johnson's tirade remained audible for listeners. His remarks included:

- Allegations that Professor Gaston's and Professor Lanier's statements were false (despite emails among members of the Integrated Communications Office and various administrators that same day indicating that they could not verify that the professors' statements were inaccurate).

- An apology for the fact Professors Gaston and Lanier had participated in the interview, and a solemn vow to "rectify" it.

- Statements seemingly intended to chill and impose a prior restraint on the speech of everyone attending the townhall (which included not only faculty and staff but also students, alumni, donors, and members of the press):

- o "[W]e just cannot allow these types of things to take place at an institution where we continue to regard ourselves ... as committed to students in the community in the way we have, and the progress that we've made over the last decade was, is phenomenal. And I would compare that ... progress across the board, in terms of students and other ... institutions as well."

- o "I must remind all of you that when you hear from the press, that that [*sic*] is to be reported to Integrated Communications, for a lot of reasons ... that will serve you well, so ... in the future it is our expectation ... for all of you."

- o "And then of course our admonishment to all of you that if you're contacted by media, um, first make sure that you are ... involved with [the Integrated Communications Office]."

57.     Professors Gaston and Lanier are unaware of any prior instance where Tri-C's president publicly admonished a faculty member for any reason, let alone for advocating for African-American students.

**Following Defendant Johnson's rebuke, Professors Gaston and Lanier immediately endure additional retaliation.**

58.     Upon information and belief, Defendant Johnson directed Defendants McCory and Brazile to initiate disciplinary action against Professors Gaston and Lanier, swiftly making good on his promise "rectify" the problem of Professors Gaston and Lanier's media interviews.

59.     On May 24, 2022, Professor Lanier received an email from Defendant McCory (who had copied Professor Lanier's direct supervisors and union representative) with an invitation to attend a virtual meeting two days later. There was no text in the body of the email, but the subject line read, "Re: Channel 19 Interview."

60.     Professor Lanier asked Defendant McCory to explain the meeting's purpose and content, but Defendant McCory did not respond.

61.     The union representative informed Professor Lanier that he didn't know the specific issues

would be discussed, but understood that "they" (meaning the administration) believed she had

"violated the Employee Code of Conduct." He also pointed out the unusual nature of this cryptic

meeting notice, stating that "[u]sually when there is an investigation, a letter is sent to the faculty

member outlining the issue."

62.     Professor Lanier immediately contacted an attorney, who agreed to represented her in the

matter. Her attorney contacted Defendant McCory the following day to request a written

explanation of the purpose and postponement of the meeting until Professor Lanier had a chance to

prepare a response. Defendant McCory electronically "cancelled" the meeting, but did not otherwise

respond to Professor Lanier or her attorney.

63.     Defendant Johnson's direct admonishment made it clear that Professors Gaston and Lanier

had been effectively blacklisted. This invited, if not directed, Tri–C faculty and administration to

participate in further acts of retaliation.

64.     In the days following the virtual townhall, Professors Gaston and Lanier were immediately

subject to adverse actions, as described below.

65.     Shortly after the townhall, Professor Lanier received a call from two colleagues encouraging

her to step down from her position in as the co-chair of the counseling department. They told her

that Defendant Johnson's public admonishment had compromised her ability to lead the efforts of

the department, and that by stepping down she could save herself the embarrassment of facing an

inevitable vote of non-confidence. Professor Lanier thus was forced to "resign" under compulsion

in a clear act of retaliation for her participation in the Channel 19 interview. In the dynamics of

employment at the College, this was a foreseeable consequence of Defendant Johnson's public

castigation.

66. The day after the townhall, Defendant Clarke directed Professor Gaston to update the curriculum for three courses—a burdensome task that no administrator had ever assigned to a faculty member, and that had traditionally been undertaken on a voluntary basis. Because Professor Gaston had never even taught the courses she was assigned to work on, and Tri-C had not established guidelines accounting for changes to the state's requirements, this process was especially time-consuming and difficult to complete. To assign three courses under those circumstances was cruel—and Defendant Clarke demanded it by a functionally impossible deadline.

67. Adding insult to injury, Defendant Clarke forced Professor Gaston to forfeit the courses she had planned to teach that summer so she could complete this task. Professor Gaston received the same rate of pay for the semester as she would have for teaching those courses, even though she had to work a significantly greater number of hours.

**Professors Gaston and Lanier are formally disciplined for their speech to Channel 19.**

68. On June 16, 2021, Defendant Brazile issued Professors Gaston and Lanier each a "Notice of Pre-Disciplinary Hearing" setting forth the policies they allegedly violated by participating in the Channel 19 interview and the date of a hearing at which they would be forced to defend themselves.

69. Professors Gaston and Lanier were each charged with supposedly violating:

- The employee code of conduct, which states, "Employees must exhibit a high degree of personal integrity at all time [*sic*]. This requires sincere respect for the rights of others, and refraining from any behavior that might be harmful to oneself, other members of the College community, or the college. Employees must also refrain from behavior that would cast the College in an unfavorable light in view of the communities served by the College."

- The College's public-affairs-and-information policy, which states, "The Office of Public Affairs and information shall be responsible for communicating to the public through all

available media to ensure that the community has a positive image of the College, and

that positions and statements of the College are presented accurately and consistently."

- The collective-bargaining agreement between Tri-C and the American Association of

University Professors, which states, "Because the public may judge the profession and

the College by his utterances, a faulty member should at all times strive to be accurate,

exercise appropriate restraint and show respect of the opinions of others. It is of special

importance that in making such utterances, a faculty member indicates that he is not a

spokesman for the college."

70.     These charges were baseless, violated Professors Gaston and Lanier's well-established First

Amendment free-speech rights as public employees, and were retaliatory.

71.     Upon information and belief, Tri-C had never disciplined anyone other than Professors

Gaston and Lanier for violating the policies referenced in these notices.

72.     During their decades of service for the College, Professors Gaston and Lanier had

previously participated as private citizens in media interviews, none of which had resulted in

disciplinary action being taken against them. Neither professor had been asked to speak on behalf of

the College to the media.

73.     Upon information and belief, two other Tri-C professors also spoke with Channel 19 in

connection with this story, but their interviews did not appear in the final four-minute video. None

of them were disciplined for their participation.

74.     The allegation regarding Professor Gaston's and Professor Lanier's failure to speak with the

"Office of Public Affairs" before their private-citizen interview was based on a non-existent policy.

- Neither Professor Gaston nor Professor Lanier had ever been told that they needed

permission before speaking with the media, nor made aware of this "policy." Nor would

such an overbroad policy be constitutional, because each had and has a well-established

right to speak as private citizens on matters of public concern, even concerning matters they learned about through their Tri-C employment.[1]

- During an arbitration hearing on April 26, 2022, Tri-C's vice president of the Integrated Communications Department conceded that the policy cited in the notice doesn't say that employees are required to come to her department before speaking with the media, and that doing so is more of a general "practice."

- Upon information and belief, at no point during the disciplinary process and subsequent appeals was the College able to produce a copy of any policy that actually requires employees to receive permission from any department before speaking with the media. Nor, as stated above, would such an overbroad policy be constitutional.

75.     Professors Gaston and Lanier were charged with representing Tri-C during the interview in violation of the collective-bargaining agreement, despite neither having told the reporter they were speaking on the College's behalf. Nor did the Channel 19 report claim or suggest so. No reasonable viewer would have thought that these *critics* of the government were *speaking for* the government.

- Professor Gaston was invited to speak as a Tri-C alumna, and specifically told the interviewer to contact the vice president of Tri-C's Integrated Communications Department for the College's position on the issues.

- Professor Lanier similarly directed the reporter to speak to Defendant McCory regarding the College's policies and plans for course scheduling. The interviewer emailed Defendant McCory on May 14, 2021 requesting the *administration's position* on the issue of the fall and spring 2021 schedules.

---

[1] *See Lane v. Franks*, 537 U.S. 228, 235–36 (2014).

76.     The College used these baseless allegations as part of its scheme to punish Professors Gaston and Lanier (and send a chilling message to other faculty) by tarnishing their previously spotless employment records and forcing them to expend significant time and money defending themselves.

77.     Tri-C brought these charges in violation of its progressive-discipline policy, which requires verbal counseling and a written reprimand before bringing an action for suspension or probation.

78.     Professor Gaston's and Professor Lanier's pre-disciplinary hearings were held on or about June 23, 2021.

79.     Defendant McCory took the lead in these meetings. She explained the bogus charges, placing Professors Gaston and Lanier in the position of having to "defend" themselves.

80.     During these hearings, Defendant McCory contested neither the truth nor accuracy of Professor Gaston's and Professor Lanier's statements to Channel 19. Instead, Defendant McCory argued that discipline was warranted because of the context in which the professors' speech was made. The College took the position that the professors' statements, in the context of an investigative report that focuses on systemic racism, implied that the fall 2021 course schedule was intentionally designed to disadvantage African-American students and therefore "placed the college in an unfavorable light." In short, Professors Gaston and Lanier were being subjected to discipline for having dared criticized the government.

81.     On August 6, 2021, Professors Gaston and Lanier were officially found to have violated Tri-C's policies, and were ordered to serve an unpaid three-day suspension.

82.     This discipline was imposed, even though:

- There was no evidence that the professors' comments were unsubstantiated, inaccurate, or misleading (although they would have had a right to their opinions and to be mistaken).

- Neither was advised that faculty members must speak with the Integrated Communications Department (nor any Tri-C department) before speaking with the media.

- There is no policy or union contract provision that requires faculty to waive their free-speech rights. If anything, principles of academic freedom protect free speech.

83.     Tri-C has issued countless statements in support of diversion, equity, and inclusion, and claims to be a champion of equity. Professors Gaston and Lanier believed in that mission and appealed to the administration repeatedly to stand behind the reputation it had cultivated. When their pleas were ignored, they spoke publicly to the media as concerned citizens on this matter of public concern. They were punished for their speech—not because it was false, but because it was not in line with the image Tri-C as a government institution (and Defendant Johnson, in particular, as a government official) sought to portray to the public.

84.     Upon information and belief, no faculty or staff member had ever been charged with any violations of these policies for having made a public media appearance (including past appearances where faculty members were extremely critical of the administration).

85.     On August 9, 2021, Professors Gaston and Lanier filed an administrative grievance, challenging the decision.

**As Professors Gaston and Lanier continue to defend themselves against the disciplinary order, the retaliation crusade against them continues unabated.**

86.    Following the townhall, Defendant Johnson continued spread vitriol as part of his personal vendetta against Professors Gaston and Lanier, effectively ensuring that they remained ostracized and subject to direct hostility and retaliation.

87.    Upon information and belief, Defendant Johnson held a meeting in or about June 2021 with several male African-American faculty and staff members, including Defendant Webb during which he made disparaging remarks about African-American women, and Professor Lanier in particular. One of the attendees, was concerned about these inappropriate comments and thus reported it to Defendant Webb and alerted Professor Lanier.

88.    When Professors Gaston and Lanier returned for the fall 2021 semester Defendant Johnson's expressed animus against them had turned them into *persona non grata*. They received fewer emails from colleagues than they had in the past, and the emails they sent went unanswered. On campus, colleagues would pretend not to see them or quickly change direction to avoid passing them in the hall. All had apparently gotten the message: "Do not engage with Professor Gaston or Professor Lanier."

89.    Professor Gaston's and Lanier's were also removed from email listservs, cutting off access to necessary communications, and intentionally "blind copied" on the emails so they would not be included on group responses.

90.     As a direct result of this widespread ostracization, Professors Gaston and Lanier were denied professional opportunities and special assignments, and constructively removed from assignments that professors had previously led or been involved in. For example:

- Professor Gaston had been part of a committee that produced a textbook for first-year students, and had been heavily involved in developing all four editions (including solely developing the accompanying course webpage that is still used by many Tri-C instructors). She had even been recognized by the College for her achievements in connection with this work, as noted above. In or around 2021 the committee began working on revisions to the textbook, but Professor Gaston was excluded from this process because nobody informed her they were doing so.

- In April 2021, Professor Lanier began working with Shaw High School to establish an educational program for parents and children. But after Defendant Johnson's townhall Professor Lanier suddenly no longer received emails from the members of the committee that had formed to implement the program, and thus was excluded from working on a project that she had initially proposed.

- Professor Lanier was similarly excluded from working on other committees of which she had previously been a part, including the Success Council, the Transfer Counsel, and the High Tech Academy committee.

91.     Professors Gaston and Lanier were also persistently subject to unfair treatment and forced to accept unfavorable working conditions because of Defendant Johnson's public admonishment.

92.     Further retaliatory actions against Professor Gaston included, but were not limited to:

a.   Defendant Clarke's failure to process or acknowledge her requests for time off.

b.   Defendant Clarke's failure to acknowledge extracurricular service credits Professor Gaston had earned. Because these credits are required as part of Professor Gaston's

contract, an apparent failure to complete them within the required time could result in disciplinary action.

c. Delayed processing of reimbursements. Upon information and belief, this was a coordinated effort between Defendants Clarke, McCory, and Kuntz.

d. Increased oversight and scrutiny over her work (such as Defendant Clarke repeatedly forcing Professor Gaston to defend her implementation of Tri-C's attendance policy).

e. Interference with her work. Throughout 2021–22 various administrators had granted themselves access to the website Professor Gaston uses to communicate with students and share course materials, which allowed them to view, make changes to, and even delete critical information Professor Gaston needed to do her job. This was done without Professor Gaston's permission, and without giving her any notice or explanation for this unusual practice.

f. Advancing bogus grade disputes brought by students. When students complain about their grades, which is not uncommon, it is up to the professor's supervisor to investigate the complaint and assess its merit. When the supervisor "advances" the dispute, the professor must defend their decision in a formal hearing before a panel of their colleagues. In Professor Gaston's first 20 years of service at Tri-C, she had only had one grade dispute advanced in this way. In 2021, Defendant Clarke advanced three meritless grade disputes brought against Professor Gaston. Among these baseless disputes was a student's argument that he should have received an A in the course (despite having skipped an exam!) because he supposedly misunderstood the grading scale provided in the course syllabus. Although each of these disputes were ultimately resolved in Professor Gaston's favor (finding that her decision was justified), this required Professor

Gaston to expend significant time and energy defending herself and subjected her to the humiliation of being questioned by colleagues who had shunned her.

g.  Failing to acknowledge her earned sabbatical.  Traditionally, whenever a professor is awarded a sabbatical, it is acknowledged during a Board of Trustees meeting, and included in a list of awardees that is sent by email to the faculty senate. Upon information and belief, Defendant Johnson directed administrators not to acknowledge any earned sabbaticals during the Board of Trustees meeting and remove Professor Gaston's name from the email to the faculty senate. Professor Gaston thus was denied the public celebration, including a party and congratulatory emails from colleagues, that normally accompanies this traditional academic honor.

h.  Denying her the opportunity transfer her to the Metro campus (despite several administrators' earlier assurances that she would be placed there once the position was vacant). It was well-known that Professor Gaston, as a graduate of Tri-C's Metro campus, desired to someday return to the campus in her faculty position. In late spring 2021, the sole full-time faculty member in the philosophy, humanities, and religious-studies department on Tri-C's Metro campus announced her retirement. Professor Gaston, one of five full-time faculty in that department on West's campus and the most senior faculty member in the department overall, had been assured that she would be allowed to transfer once the Metro-campus position was open. Among those who had given oral approval for her transfer were Defendants Clark and McCory. In fact, Professor Lanier didn't even need approval to transfer, and would have been able to do so once the position was "posted" in their system. But the position was never posted, and instead has been left unfilled to prevent Professor Gaston from moving to the position everyone knew she wanted.

93. Retaliatory actions against Professor Lanier included, but were not limited to:

- Denying her the opportunity to take on special assignments. After Defendant Johnson's townhall, Professor Lanier was no longer included on emails inviting faculty to join committees or participate in special projects. Upon information and belief, this was an intentional, coordinated effort by Defendants McCory and Webb to isolate Professor Lanier. This type of committee work is important because, even when the positions are independently not paid (such as grant-funded stipends), they improve the professor's status within the campus community.

- Isolating her from new employees. Defendant Webb denied her the opportunity to train new part-time counselors when, based on her seniority and experience, she should have been the one training them. Instead, a part-time counselor was assigned to train the new employees. Defendant Webb also declined to so much as introduce the new employees to Professor Lanier.

- Removing from her position as the Tri-C basketball team's counseling liaison. Upon information and belief Defendant Webb removed Professor Lanier from this position, and later ensured that none of the female basketball players were scheduled with different counselors for their appointments. This was particularly damaging because of her success and relationships with them.

- Defendant Webb continuing to allow the department managers to assign her a less-favorable schedule compared to her colleagues.

- Defendant Webb forcing her to work and meet with students in isolated rooms (including male students, and students who were "mentally unstable");

- Defendant Webb failing to respond to work-related questions, such as the need for her to have access to necessary software and a working laptop, making it difficult to do her job;

- Defendants McCory and Webb failing to respond to her requests for clarification about the requirements of a summer contract, forcing her to turn down the opportunity to work during the summer 2021 semester;

- Defendants Brazile and McCory failing to timely respond to her FMLA request when her husband needed triple-bypass surgery, forcing her to contact the union directly.

- Defendant Kuntz authorizing the three-day suspension to be deducted from her pay twice and interfering with her attempts to resolve the issue with the finance department.

94.     In a series of acts designed to retaliate against both Professor Gaston and Professor Lanier, Tri-C administrators (at Defendant Johnson's direction) interfered with the Black Diamonds Conference they co-chaired. The event that was scheduled to take place on October 15, 2021. Just weeks before the event was scheduled, the College rescinded approval to hold the event on-campus, citing challenges with COVID-19 and staffing, even though similarly sized events were held without issue around that time. Upon information and belief, Defendant Johnson and Defendant McCory directed the relevant administrators to do so.

95.     The College also failed to timely pay conference vendors and the keynote speaker (including blaming this failure on Professor Lanier by falsely accusing her of improperly signing a contract without consulting the College's legal department). Upon information and belief, Defendant Kuntz directed staff to delay processing these payments.

**The disciplinary decisions against Professors Gaston and Lanier are ultimately reversed, after Defendants subjected the professors to a grueling year of appeals processes.**

96.     Professors Gaston and Lanier spent more than a year defending themselves against Tri-C's baseless disciplinary actions through a series of administrative grievance hearings, which required them to expend significant time and resources (including legal fees and costs).

97.     Despite the overwhelming evidence that Professors Gaston and Lanier violated no policies, Tri-C refused to reverse the order. Professors Gaston and Lanier were thus to forced undergo every step of the grievance proceeding because Tri-C refused to skip to the final arbitration process, despite its clear intention to uphold the decision regardless of what evidence was presented.

98.     In one of the many denials of Professor Gaston's and Professor Lanier's grievances, Defendant Kuntz stated his belief the corrective action taken against Professors Gaston and Lanier *was not severe enough*. Defendant Kuntz, as the vice president for the finance department, should not have even been involved in the grievance process, which traditionally was left to the campus deans and the provost. Upon information and belief, provost Defendant Miller refused to participate in this retaliatory action and Defendants Johnson and McCory directed Defendant Kuntz to step into this role.

99.     During arbitration, Tri-C took the position that the discipline issued against Professors Gaston and Lanier was "a measured response" to their misconduct and that it was "really part of a corrective action principles so that it is clear to Professor Gaston and Professor Lanier that they handled this inappropriately and shouldn't have done that."

100.    On June 2, 2022—the day Defendant Johnson was scheduled to testify and be cross-examined in an arbitration hearing—Tri-C suddenly granted the professors' grievances. The College agreed to remove the discipline from their personnel files and award them back pay for their three-day suspensions.

101. The arbitrator nevertheless opined that Tri-C had admitted it made a mistake by disciplining Professors Gaston and Lanier, noting that the evidence presented in the arbitration process demonstrated that Tri-C "did not have just cause" to issue discipline against them.

102. Although their employment records were ultimately cleared, the year spent defending themselves through the prolonged appeals process caused Professors Gaston and Lanier significant financial and personal hardship.

103. Professor Gaston was scheduled to complete her doctorate degree from Ashland University in 2021. But she was effectively forced to withdraw as a direct result of the extreme emotional distress, time commitments, and legal costs associated with the drawn-out grievance and arbitration process. Because she is not able to rejoin the cohort to complete her degree, she has effectively lost two years of tuition expenses she had paid. Additionally, because she did not obtain her doctorate degree as expected, she is not able to reach the maximum compensation in her final years of employment, which drastically diminishes her retirement package.

104. Defendant Johnson retired from Tri-C effective June 30, 2022, but Professors Gaston and Lanier still experience the effects of his hostility and retaliation, which irrevocably damaged their professional reputations and working conditions at Tri-C.

105. In academia, reputation is critical. Professors Gaston and Lanier are respected and decorated professors, but Defendant Johnson's campaign of retaliation stripped them of earned recognition and special assignments, and led to a significant deterioration in their working relationships and status at the College.

106. Both Professor Gaston and Professor Lanier have also experienced significant damage to their mental and physical health because of the retaliation against them.

107. Professor Lanier has experienced severe anxiety and fatigue. She also began to experience gastrointestinal issues and was prescribed medication for acid reflux and ulcers.

108.    Professor Gaston lost weight so rapidly from the stress that her physician recommended she

begin mental-health counseling.

109.    Professors Gaston and Lanier received their respective right-to-sue letters from the EEOC

on August 26, 2022.

### CLAIM 1
### FIRST AMENDMENT RETALIATION UNDER 42 U.S.C. § 1983 BY PLAINTIFFS DIANE GASTON AND LINDA LANIER AGAINST DEFENDANT CUYAHOGA COMMUNITY COLLEGE, JOHNSON, MCCORY, WEBB, CLARKE, PARKS, KUNTZ, AND BRAZILE

110.    Plaintiffs incorporate all previous allegations.

111.    Professors Gaston and Lanier were public employees who engaged in First Amendment–

protected free-speech activity by out as private citizens on matters of public concern. They did so by

raising concerns with the College's senior administration and communicating to the public through

the media about what they believed to be the College's racially discriminatory course-scheduling

practices. Their speech was not part of their ordinary or *ad hoc* job duties as Tri-C faculty members.

112.    Allegations about racial discrimination involve a classic matter of public concern,[2] as do

allegations of violations of law,[3] such as retaliation for opposing such discrimination.

113.    Reporting to the media on racial discrimination and on unlawful retaliation for opposing

such discrimination was not part of Professor Gaston's or Professor Lanier's ordinary or *ad hoc* job

duties. They were speaking as private citizens in bringing this activity to light.

114.    In speaking out, Professors Gaston and Lanier engaged in constitutionally protected conduct

or activity under the First and Fourteenth Amendments.

---

[2] *See, e.g., Whitney v. City of Milan*, 677 F.3d 292, 298 (6th Cir. 2012) ("Allegations of racial discrimination by a public entity 'inherently' involve a matter of public concern.") (quoting *Miller v. City of Canton*, 319 F. App'x 411, 416 (6th Cir. 2009)).

[3] *See, e.g., Banks*, 330 F.3d at 896 ("Defendants' failure to follow state law is a 'concern to the community.'"); *Mahronic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986) ("Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law.").

115.    Defendants Johnson, McCory, Webb, Clarke, Parks, Kuntz, and Brazile knew Professors Gaston and Lanier had engaged in protected conduct or activity.

116.    These Defendants took adverse actions against Professors Gaston and Lanier—including all the retaliatory acts described above—that would deter a person of ordinary firmness from continuing to engage in that conduct. These included, but were not limited to:

    a.  Cutting off workplace communication with them (making it more difficult for them to perform their duties);

    b.  Disparaging them to co-workers and making it clear that they were *persona non grata* with Defendant Johnson (resulting in co-workers ignoring them and making it more difficult to perform their duties);

    c.  Ignoring their emails reporting retaliation;

    d.  Ignoring their requests for family and medical leave;

    e.  Subjecting them to unfavorable working conditions and denying them opportunities for professional development;

    f.  Lodging false and baseless accusations against them;

    g.  Forcing them to repeatedly defend themselves against the false and baseless allegations in pre-deprivation hearings, grievances, and arbitration; and

    h.  Using the false and baseless allegations as a basis for unwarranted disciplinary action including an unpaid suspension.

117.    Professor Gaston's and Professor Lanier's First Amendment–protected speech was a substantial or motivating factor[4] in the adverse actions they suffered at the hands of Defendants Johnson, McCory, Webb, Clarke, Parks, Kuntz, and Brazile.

---

[4] *See, e.g., Laster v. City of Kalamazoo*, 746 F.3d 714, 733 (6th Cir. 2014).

118.    Defendants lack any countervailing interest that outweighs Professor Gaston's and Professor Lanier's interest in speaking out on the above-mentioned matters.

119.    The contours of Professor Gaston's and Professor Lanier's right to speak on matters of public concern as private citizens was sufficiently clearly established at the time they exercised it to apprise a reasonable public employee that retaliating against them for exercising those rights was unlawful.

120.    These Defendants were at all relevant times sufficiently empowered College officials that their acts constitute the customs, policies, and practices of the College.

121.    As a direct and proximate result of this unlawful campaign of retaliation that the College endorsed and adopted as its own unwritten policy, Professor Gaston and Professor Lanier have suffered and will continue to suffer economic and non-economic damages for which Defendants College, Johnson, McCory, Webb, Clarke, Parks, Kuntz, and Brazile are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

122.    These Defendants' acts were malicious, in bad faith, willful, egregious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 2
### RETALIATION UNDER CIVIL RIGHTS ACT, TITLE VI, 42 U.S.C. § 2000D BY PLAINTIFFS DIANE GASTON AND LINDA LANIER AGAINST DEFENDANT CUYAHOGA COMMUNITY COLLEGE

123.    Plaintiffs incorporate all previous allegations.

124.    Under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), it is unlawful for any program or activity receiving federal financial assistance to intentionally discriminate against a

person on the basis of race, color, or national origin.[5]

125.    42 U.S.C. § 2000d-4a(2)(A) defines "program and activity" to include all of the operations of "a college, university, or other postsecondary institution, or a public system of higher education."

126.    It is also unlawful for a program or activity to retaliate against an individual because she opposed a discriminatory practice she reasonably believed was prohibited under Title VI.[6]

127.    Whoever violates the above-described legal obligation is subject to a civil action for damages, injunctive relief, or any other appropriate relief.[7]

128.    As detailed in Claim 2, Professors Gaston and Lanier made both oral and written complaints to Tri-C administrators and the media regarding the College's racially discriminatory course-scheduling practices.

129.    Professors Gaston and Lanier had a reasonable, good faith belief that Tri-C intentionally discriminated against students on the basis of their race (by removing many in-person course offerings from the campus with the most concentrated population of African-American students) and complained about this unlawful practice.

130.    Professors Gaston and Lanier engaged in protected activity under Title VI by opposing discrimination (racially discriminatory course-scheduling practices) both internally and publicly.

---

[5] 42 U.S.C. § 2000e-3(a); *Alexander v. Choate*, 459 U.S. 287, 293 (1985) (holding that Title VI prohibits intentional discrimination).

[6] 42 U.S.C. § 2000d-1; 34 C.F.R. § 100.7(e)("No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by [Title VI of the Civil Rights] Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this part.");

[7] 29 U.S.C. § 794(a)(2) ("The remedies procedures, and rights set forth in [T]itle VI of the Civil Rights Act of 1964 ... shall be available to any person aggrieved by an act or failure to act by any recipient of Federal assistance ..."); *Alexander v. Sandoval*, 532 U.S. 275, 275, 279 (2001) (holding that private individuals may sue to enforce Sec. 601 of Title VI to obtain injunctive relief and damages). *See also Peters v. Jenney*, 327 F.3d 307, 319 (4th Cir. 2003) (holding that the retaliation provisions of 34 C.F.R. § 100.7(e) are enforceable via an implied private right of action).

131. The College was aware that Professors Gaston and Lanier had engaged in protected activities.

132. The College intentionally and maliciously discriminated (retaliated) against Professors Gaston and Lanier after they opposed an unlawful discriminatory practice, i.e., Tri-C's racially discriminatory course-scheduling practices.

133. The College took adverse actions against Professors Gaston and Lanier—including all the retaliatory acts in detailed above and below—that would deter a person of ordinary firmness from continuing to engage in that conduct. These included, for example, suspending them without pay and subjecting them to a grueling, year-long disciplinary process based on false allegations.

134. As a direct and proximate result of this unlawful conduct, Professors Gaston and Lanier have suffered and will continue to suffer economic and non-economic damages for which the College, is liable including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

135. Defendants Johnson, McCory, Webb, Clarke, Parks, Kuntz, and Brazile's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

## CLAIM 3
### RETALIATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000E-3(A), BY PLAINTIFFS DIANE GASTON AND LINDA LANIER AGAINST DEFENDANT CUYAHOGA COMMUNITY COLLEGE

136. Plaintiffs incorporate all previous allegations.

137. Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), it is an unlawful employment practice for an employer to discriminate (i.e., retaliate) against its employees because they opposed an unlawful discriminatory practice or because they made a charge or participated in any manner in an EEOC proceeding.

138. Under 42 U.S.C. § 1981a and 42 U.S.C. § 2000e *et seq.*, whoever violates the above-described legal obligation is subject to a civil action for damages, injunctive relief, or any other appropriate relief.

139. Professor Gaston had a reasonable, good-faith belief that the College had discriminated against her because of her race and complained about this unlawful practice.

140. Professor Lanier had a reasonable, good-faith belief that the College had discriminated against her because of her race and/or sex and complained about this unlawful practice.

141. Professors Gaston and Lanier had a reasonable, good-faith belief that they were being retaliated against for their opposition to this unlawful discrimination against them.

142. Professor Gaston engaged in protected activity under Title VII by opposing race discrimination internally and by filing a charge of discrimination with the EEOC reporting that she had been subject to different terms and conditions of employment because of her race.

143. Professor Lanier engaged in protected activity under Title VII by opposing race and sex discrimination internally and by filing a charge of discrimination with the EEOC reporting she they had been subject to different terms and conditions of employment because of her race and sex.

144. Professors Gaston and Lanier engaged in protected activity under Title VII by opposing discrimination (retaliation for opposing race and sex discrimination) internally and by filing a charge of discrimination with the EEOC regarding the retaliation they faced for opposing discrimination.

145. The College was aware that Professors Gaston and Lanier had engaged in protected activities.

146. The College intentionally and maliciously discriminated against Professors Gaston and Lanier after they opposed an unlawful discriminatory practice, i.e., race and sex discrimination, by subjecting them to different terms and conditions of employment than similarly situated white and/or male colleagues.

147.    Defendants College, Johnson, McCory, Webb, Clarke, Parks, Kuntz, and Brazile took many retaliatory actions against Professors Gaston and Lanier, as detailed in the factual narrative and the preceding claim. These included, but were not limited to:

a.    Cutting off communication with them (making it more difficult for them to perform their duties);

b.    Disparaging them to co-workers and making it clear that they were *persona non grata* with Defendant Johnson (resulting in co-workers ignoring them and making it more difficult to perform their duties);

c.    Ignoring their emails reporting retaliation;

d.    Ignoring their requests for family and medical leave;

e.    Subjecting them to unfavorable working conditions and denying them opportunities for professional development;

f.    Lodging false and baseless accusations against them;

g.    Forcing them to repeatedly defend themselves against the false and baseless allegations in pre-deprivation hearings, grievances, and arbitration; and

h.    Using the false and baseless allegations as a basis for unwarranted disciplinary action including an unpaid suspension.

148.    The retaliation changed the terms and conditions of Professor Gaston's and Professor Lanier's employment and subjected them to adverse employment actions.

149.    The retaliation Professors Gaston and Lanier suffered would dissuade a reasonable worker from opposing discrimination.

150.    Tri-C is vicariously liable for its agents' acts toward Professors Gaston and Lanier.

151.    As a direct and proximate result of this unlawful conduct, Professors Gaston and Lanier have suffered and will continue to suffer economic and non-economic damages for which the

College is liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

### CLAIM 4
### RETALIATION BY PLAINTIFFS DIANE GASTON AND LINDA LANIER OHIO REV. CODE § 4112.02(I) AGAINST CUYAHOGA COMMUNITY COLLEGE, JOHNSON, MCCORY, WEBB, CLARKE, PARKS, KUNTZ, AND BRAZILE

152. Plaintiffs incorporate all previous allegations.

153. Under Ohio law, including Ohio Rev. Code § 4112.02(I), it is an unlawful employment practice for any person to discriminate in any manner (i.e., retaliate) against any other person because that person has opposed an unlawful discriminatory practice.

154. Ohio Rev. Code § 4112.01(A) defines "person" to include "individuals," "legal representatives," "agent[s]," "the state and all political subdivisions," "authorities," "agencies," "boards."

155. As detailed in the factual narrative and preceding claims, Professors Gaston and Lanier engaged in protected activity and suffered retaliation as a result.

156. Tri-C is vicariously liable for its agents' acts.

157. Defendant Johnson (who had supervisory authority, including the ultimate determination on their suspension, demotion, reduction in pay) is jointly and severally liable for damages Professors Gaston and Lanier suffered because of his campaign of retaliation.

158. As a direct and proximate result of Defendants' unlawful retaliatory conduct, Professors Gaston and Lanier have suffered and will continue to suffer economic and non-economic damages for which Defendants College, Johnson, McCory, Webb, Clarke, Parks, Kuntz, and Brazile are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

159. The individual Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

## CLAIM 5
### AIDING AND ABETTING DISCRIMINATION UNDER OHIO REV. CODE §§ 4112.02(J) AND 4112.99 BY DIANE GASTON AND LINDA LANIER AGAINST THE COLLEGE, JOHNSON, MCCORY, WEBB, CLARKE, PARKS, KUNTZ, AND BRAZILE

160.    Plaintiffs incorporate all previous allegations.

161.    Under Ohio law, including Ohio Rev. Code § 4112.02(J), it is an unlawful employment practice for any person to aid, abet, incite, compel, or coerce the doing of any act declared an unlawful discriminatory practice under Ohio Rev. Code § 4112.02.

162.    Under Ohio law, including Ohio Rev. Code § 4112.99, whoever violates the above-described legal obligation is subject to civil action for damages, injunctive relief, or any other appropriate relief.

163.    Under Ohio law including Ohio Rev. Code § 4112.02(I), it is an unlawful employment practice to discriminate in any manner (i.e., retaliate) against any person because he opposed an unlawful discriminatory practice.

164.    To aid or abet in discrimination, a person need only knowingly do something he ought not to do, or omit to do something he ought to do, that "assists or tends in some way to affect the doing of the thing which the law forbids."[8]

165.    Defendants College, McCory, Webb, Clarke, Parks, Kuntz, and Brazile aided Defendant Johnson in an unlawful discriminatory practice, i.e., retaliating against Professors Gaston and Lanier, as described in the factual narrative and claims above.

166.    Defendant Johnson similarly aided the others in retaliating against Professors Gaston and Lanier.

---

[8] *State v. Stepp*, 117 Ohio App.3d, 569, 690 N.E.2d 1342 (4th Dist.1997) (quoting *Smith v. State*, 41 Ohio App. 64, 67-68, 179 N.E. 696 (9th Dist. Dec. 9, 1931)), cited in *Luke v. City of Cleveland*, No. 1:02CV1225, 2005 U.S. Dist. LEXIS 49630 (N.D. Ohio Aug. 22, 2005); *see also Woodworth v. Time Warner Cable, Inc.*, N.D. Ohio No. 1:15-CV-1685, 2015 U.S. Dist. LEXIS 148832 (N.D. Ohio Nov. 2, 2015) (citations omitted).

167.   As a direct and proximate result of this unlawful conduct, Professors Gaston and Lanier

have suffered and will continue to suffer economic and non-economic damages for which

Defendants College, Johnson, McCory, Webb, Clarke, Parks, Kuntz, and Brazile are liable, including,

but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms,

privileges, and conditions of employment.

168.   Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to

punish and deter them and others from engaging in this type of unlawful conduct.

169.

### CLAIM 6
### (ALTERNATIVE CLAIM)
#### CIVIL LIABILTY FOR CRIMINAL ACTS (RETALIATION BECAUSE PUBLIC SERVANTS DISCHARGED THEIR DUTIES) UNDER OHIO REV. CODE §§ 2307.60 AND 2921.05 BY PLAINTIFFS DIANE GASTON AND LINDA LANIER AGAINST JOHNSON, McCORY, WEBB, CLARKE, PARKS, KUNTZ, AND BRAZILE

170.   Plaintiffs incorporate all previous allegations.

171.   Under Ohio Rev. Code § 2921.05, no person, purposely and by unlawful threat of harm to

any person or property, shall retaliate against a public servant because the public servant discharged

her duties. The provision carries a criminal penalty.

172.   Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act

may recover full damages in a civil action.

173.   To the extent that the Court determines that, in reporting to Tri-C administrators on the

racially discriminatory course-scheduling practices, that Professor Gaston and/or Professor Lanier

were in fact discharging their duties and not speaking in their capacity as citizens, then Defendants

Johnson, McCory, Webb, Clarke, Parks, Kuntz, and Brazile retaliated against Professors Gaston and

Lanier for discharging their duties.

174.   This retaliation involved both threatening and eventually imposing economic harm on

Professors Gaston and Lanier for complaining about discriminatory policies they discovered in the

course and scope of their duties. The retaliatory acts are set forth in the factual narrative above and in Claim 2.

175.     As a direct and proximate result of this unlawful conduct, Professors Gaston and Lanier have suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

**CLAIM 7**
**CIVIL LIABILITY FOR CRIMINAL ACTS (TAMPERING WITH EVIDENCE) UNDER OHIO REV. CODE §§ 2307.60 AND 2913.42(A)(1) AND (A)(2) BY PLAINTIFFS DIANE GASTON AND LINDA LANIER AGAINST DEFENDANTS JOHNSON AND BRAZILE**

176.     Plaintiffs incorporate all previous allegations.

177.     Under Ohio Rev. Code § 2913.42(A)(1), "No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall… [f]alsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record;. Under § 2913.42(A)(2), no such person may "Utter any writing or record, knowing it to have been tampered with as provided in division (A)(1) of this section."

178.     Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action. Violations of Ohio Rev. Code § 2913.42 are criminal acts.

179.     Defendant Johnson's statements during the May 24, 2021 virtual townhall falsified writings, computer software, data, and records. Such false statements included, but are not limited to:

- "I must remind all of you that when you hear from the press, that that [*sic*] is to be reported to Integrated Communications…"

180.     Defendant Johnson also uttered this record.

181.     Defendant Johnson knew that there was no such policy. And he had no privilege to do so, and he acted with purpose to defraud or knowing that he was facilitating a fraud.

182.    The June 16, 2021 Pre-Disciplinary Due Process Meeting Notifications issued to Professors Gaston and Lanier also falsified writings and records. The false statements contained in these writings include, but are not limited to:

- Allegations that Professors Gaston and Lanier violated the "public affairs and information policy."

- Allegations that Professors Gaston and Lanier violated the collective-bargaining agreement between Tri-C and the American Association of University Professors.

183.    The August 6, 2021 Suspension Letters issued to Professors Gaston and Lanier were falsified. The false statements contained in these writings include, but are not limited to:

- "[Professor Gaston's] actions, behavior[] and conduct violated College Policy and the labor agreement."

- "[Professor Lanier's] actions, behavior[] and conduct violated College Policy and the labor agreement."

184.    Defendant Brazile also falsified these writings and records.

185.    As a direct and proximate result of this unlawful conduct, Professors Gaston and Lanier have suffered and will continue to suffer economic and non-economic damages for which Defendant Johnson and Defendant Brazile are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

186.    Defendant Johnson and Brazile's, acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

## CLAIM 8
### CIVIL LIABILITY FOR CRIMINAL ACTS (TELECOMMUNICATIONS FRAUD) UNDER OHIO REV. CODE §§ 2307.60 AND 2913.05(A) BY PLAINTIFFS DIANE GASTON AND LINDA LANIER AGAINST DEFENDANT JOHNSON

187.    Plaintiffs incorporate all previous allegations.

188.    Under Ohio Rev. Code § 2913.05(A), "No person, having devised a scheme to defraud, shall knowingly disseminate, transmit, or cause to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, telecommunications service, or voice over internet protocol service any writing, data, sign, signal, picture, sound, or image with purpose to execute or otherwise further the scheme to defraud."

189.    Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action. Violations of Ohio Rev. Code § 2913.05 are criminal acts.

190.    Defendant Johnson, having devised a scheme to defraud, knowingly disseminated, transmitted, and caused to be disseminated by means of a wire, radio, satellite, telecommunication, telecommunications device, telecommunications service, and voice over internet protocol service data, sign, signal, picture, sound, and image with purpose to execute and otherwise further the scheme to defraud false statements including, but are not limited to:

- "I must remind all of you that when you hear from the press, that that [*sic*] is to be reported to Integrated Communications..."

191.    Defendant Johnson knew that there was no such policy.

192.    As a direct and proximate result of this unlawful conduct, Professors Gaston and Lanier have suffered and will continue to suffer economic and non-economic damages for which Defendants Johnson and Brazile are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

193.    Defendants Johnson and Brazile's, acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 9
### INTIMIDATION USING A FALSE OR FRAUDULENT WRITING UNDER OHIO REV. CODE §§ 2921.03(A) AND (C) AND CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE § 2307.60 BY PLAINTIFFS DIANE GASTON AND LINDA LANIER AGAINST DEFENDANTS JOHNSON AND BRAZILE

194.    Plaintiffs incorporate all previous allegations.

195.    Under Ohio Rev. Code § 2921.03(A), no person, knowingly and by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a public servant in the discharge of the person's duty. The provision carries a criminal penalty.

196.    Ohio Rev. Code § 2921.03(C) provides for a civil cause of action for damages, including attorney fees and costs, for violations of Ohio Rev. Code § 2921.03(A).

197.    Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action. Violations of Ohio Rev. Code § 2921.03(A) are criminal acts, indeed felonious, under § 2921.03(B).

198.    Defendant Johnson's statements during the May 24, 2021 virtual townhall were materially false and fraudulent writings. Such statements included, but are not limited to:

- "I must remind all of you that when you hear from the press, that that [sic] is to be reported to Integrated Communications…"

199.    Defendant Johnson recorded and used these materially false and fraudulent writings with malicious purpose, in bad faith, and in a wanton and reckless manner, to attempt to hinder public servants, including but not limited to all Tri-C faculty and staff members who watched the townhall, in carrying out their job duties, by subjecting them to unwarranted discipline as public employees.

200.    The June 16, 2021 Pre-Disciplinary Due Process Meeting Notifications issued to Professors Gaston and Lanier were also materially false and fraudulent writings. The false statements contained in these writings include, but are not limited to:

- Allegations that Professors Gaston and Lanier violated the "public affairs and information policy."

- Allegations that Professors Gaston and Lanier violated the collective-bargaining agreement between Tri-C and the American Association of University Professors.

201.    Defendant Brazile drafted and/or used these materially false and fraudulent writings with malicious purpose, in bad faith, and in a wanton and reckless manner, to attempt to hinder Professors Gaston and Lanier in carrying out their job duties, by subjecting them to unwarranted discipline as public employees.

202.    Defendant Brazile also used the Pre-Disciplinary Due Process Meeting Notifications to influence Tri-C administrators to approve and uphold unwarranted and retaliatory discipline against Professors Gaston and Lanier.

203.    The August 6, 2021 Suspension Letters issued to Professors Gaston and Lanier were materially false and fraudulent writings. The false statements contained in these writings include, but are not limited to:

- "[Professor Gaston's] actions, behavior[] and conduct violated College Policy and the labor agreement."

- "[Professor Lanier's] actions, behavior[] and conduct violated College Policy and the labor agreement."

204.    Defendant Brazile drafted and/or used these materially false and fraudulent writings with malicious purpose in bad faith, or in a wanton and reckless manner, to attempt to hinder Professors

Gaston and Lanier in carrying out their job duties, by subjecting them to unwarranted discipline as public employees.

205.    As a direct and proximate result of this unlawful conduct, Professors Gaston and Lanier have suffered and will continue to suffer economic and non-economic damages for which Defendants Johnson and Brazile are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

206.    Defendant Johnson and Brazile's, acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

### CLAIM 10
### CIVIL LIABILTY FOR CRIMINAL ACTS (INTERFERING WITH CIVIL AND STATUTORY RIGHTS) UNDER OHIO REV. CODE §§ 2307.60 AND 2921.45 BY PLAINTIFFS DIANE GASTON AND LINDA LANIER AGAINST DEFENDANTS JOHNSON, MCCORY, WEBB, CLARKE, PARKS, KUNTZ, AND BRAZILE

207.    Plaintiff incorporates all previous allegations.

208.    Under Ohio Rev. Code § 2921.45, no public servant, under color of his office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right. This provision carries a criminal penalty.

209.    Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action.

210.    Defendants Johnson, McCory, Webb, Clarke, Parks, Kuntz, and Brazile are public servants. Under color of their office, employment, or authority, each knowingly deprived Professors Gaston and Lanier of their constitutional and statutory rights as detailed above, including their right to be free from retaliation for opposing discrimination and their constitutional right to freedom of speech.

211.    As a direct and proximate result of this unlawful conduct, Professors Gaston and Lanier have suffered and will continue to suffer economic and non-economic damages for which

Defendants Johnson, McCory, Webb, Clarke, Parks, Kuntz, and Brazile are liable, including, but not limited to, pain and suffering, the loss of salary, wages, and benefits, and other terms, privileges, and conditions of employment.

212.    These Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter them and others from engaging in this type of unlawful conduct.

**PRAYER FOR RELIEF**

For the reasons stated above, Plaintiffs respectfully requests the following relief from the Court:

1.  Declare that Defendants' acts and conduct constitute violations of federal and state law and the United States Constitution;

2.  Enjoin Defendants from further retaliating against Plaintiffs Gaston and Lanier and from further implementing any previous acts of retaliation;

3.  Enter judgment in Plaintiffs' favor on all claims for relief;

4.  Award Plaintiffs full compensatory damages, economic and non-economic, including, but not limited to, damages for pain and suffering, mental anguish, emotional distress, humiliation, and inconvenience that they have suffered and are reasonably certain to suffer in the future;

5.  Award Plaintiffs punitive damages as appropriate for all intentional and malicious violations of federal and state law and constitutional rights;

6.  Award pre-judgment and post-judgment interest at the highest lawful rate;

7.  Award Plaintiffs their reasonable attorney fees (including expert fees) and all other costs of this suit;

8.  Award all other relief in law or equity to which Plaintiffs are entitled and that the Court deems equitable just, or proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues within this complaint.

Dated November 23, 2022          Respectfully submitted,

*/s/ Subodh Chandra*
Subodh Chandra (OH 0069233)
Donald P. Screen (OH 0044070)
Melissa S. Obodzinski (OH 0102556)
THE CHANDRA LAW FIRM LLC
The Chandra Law Building
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
216.578.1700 Phone
216.578.1800 Fax
Subodh.Chandra@ChandraLaw.com
Don.Screen@ChandraLaw.com
Melissa.Obodzinski@ChandraLaw.com

*Attorneys for Plaintiffs Diane Gaston and Linda Lanier*

Exhibit 1 is a video recording of the May 21, 2021 WOIO Channel 19 News "Next 400"

report and is being filed manually.

Channel 19 News Transcript

May 21st, 2021

Interviewer: The Covid-19 pandemic closed the book on in-person classes for nearly a year, changing the way students learn from a seat in the classroom to remote learning online. Deandre Wilson is a Tri-C graduate who moved on to a four-year college, but felt stalled by virtual courses put in place due to the coronavirus.

Student: It just didn't feel the same. It wasn't something I was used to so that's when I just made the decision, like, maybe I should take a break.

Lanier: The students at Metro, do not, by our own data, do well in a virtual, online environment. Online classes are the highest courses—the highest failure rate.

Interviewer: So, could online courses, combined with access to fewer course offerings for Tri-C's Metro students, make the comeback to the classroom a challenge? Dr. Denise McCorey, President of the Metro Campus, tells me all campuses have been treated the same, with limited on-campus services and limited classes. But, it's how to return to campus after a global health crisis that is still being worked out. The administration charged with figuring out how to enforce guidelines without knowing who is vaccinated and who is not.

McCorey: Because we don't know people's status, as far as vaccination is concerned, we are going to have to assume that everybody is not vaccinated,everyone is un-vaccinated, and we're gonna have to make sure that we stay conservative in our approach to keep everybody safe.

Interviewer: The other issue, in-person classes offered at this time are still not at full capacity. But the President of the Metro campus says they do plan to offer more courses once they top out.

McCorey: I was just looking at the data for our fall semester. None of our fully on-ground classes in the general studies area, none of those are full yet. So, we haven't seen the demand yet. But it's still relatively early.

Interviewer: While some suburban campuses have transitioned back to the classroom, in part, Metro students are still getting their education, in large part, remotely. Linda Lanier is an associate professor of counseling at Tri-C and feels that's a clear disadvantage.

Lanier: We know who is going to be hurt the most. First of all, students of color, students who lack technology, it's poor students. Our eastern campus

EXHIBIT
2

began in the January session of offering more on-ground campus, which is up in Highland—um, Richmond, Highland Hills area. And I thought that was a good step. I thought we would be following them.

Interviewer: But she says that didn't happen. The largely minority Metro campus with about 4,000 students had approximately 70% of them taking classes in-person before the pandemic. Now concerns they may be forced to travel to another campus to get access to courses. Diane Gaston is an associate professor who says programs like social work or human services are no longer offered at Metro, a popular field for minority students.

Gaston: Our motto is "Tri-C is where futures begin." It doesn't line up with that motto if certain students don't have the same opportunities, the same access.

McCorey: My priority is to—to get students back.

Interviewer: But could fewer course offerings, coupled with continued online learning, force minority students, already historically disadvantaged, to put college on hold and detour their path to progress? Former student Deandre says he's a proud graduate of Tri-C, but wants the playing field to be level, whether you are at Metro or in the suburbs.

Student: School is a challenge in itself.

Interviewer: For The Next 400, Michelle Nicks, 19News.

**Exhibit 3 is a video recording of Tri-C's May 24, 2021 virtual townhall and is being filed manually.**