**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DIANE GASTON, *et al.*, | ) | CASE NO. 1:22-cv-02303 |
| Plaintiffs, | ) | |
| v. | ) | JUDGE DAVID A. RUIZ |
| CUYAHOGA COMMUNITY COLLEGE, *et al.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

I. **Background**

Plaintiffs Diane Gaston and Linda Lanier have filed an Amended Complaint raising the following causes of action: (1) First Amendment Retaliation against all Defendants; (2) Retaliation under Title VI against Defendant Cuyahoga Community College ("Tri-C"); (3) Retaliation under Title VII against Defendant Tri-C; (4) Retaliation under Ohio Revised Code ("O.R.C.") § 4112.02(I) against all Defendants; (5) Aiding and Abetting Discrimination under O.R.C. § 4112.02(I) against all Defendants; (6) Retaliation Against a Public Servant for Discharging their Duties against the individual Defendants; (7) Tampering with Evidence against Defendants Johnson and Brazile; (8) Telecommunications Fraud against Defendant Johnson; (9) Intimidation using a False or Fraudulent Writing against Defendants Johnson and Brazile; and (10) Interfering with Civil and Statutory Rights against the individual Defendants. (R. 7). Now pending is the Motion for Partial Judgment on the Pleadings filed by Defendants Tri-C, Alex Johnson, Denise McCory, Terry Webb, Courtney Clarke, Amy Parks, and David Kuntz that moves for dismissal of all claims save for the First Amendment retaliation claim contained in

Count One.[1] (R. 13). Plaintiffs filed a brief in opposition (R. 24), and Defendant filed a reply in further support of the motion. For the reasons stated below, the Court GRANTS in part and DENIES in part Defendants' Motion for Partial Judgment on the Pleadings

## II. Applicable Standard

**A. Fed. R. Civ. P. 12(c)**

In the Sixth Circuit, a judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is reviewed under the "same standard as applies to a review of a motion to dismiss under Rule 12(b)(6)." *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 465-66 (6th Cir. 2017); *accord K&L Trailer Leasing, Inc. v. Fellhoelter*, 630 B.R. 81, 83 (Bankr. E.D. Tenn. 2021) ("Courts apply the same standard for Fed. R. Civ. P. 12(c) motions as for Rule 12(b)(6) motions"). As explained by the Court of Appeals:

> A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6). See *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). A court evaluating that type of motion thus must follow the Supreme Court's changes to the pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). See *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017). Courts must accept as true all well-pleaded factual allegations, **but they need not accept legal conclusions**. *Iqbal*, 556 U.S. at 678. And the well-pleaded factual allegations must "plausibly give rise to an entitlement to relief." *Id.* at 679. Pleaded facts will do so if they "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Pleaded facts will not do so if they "are 'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557).

*Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (emphasis added). Federal

---

[1] In a subsequent filing, the individually named Defendants withdrew the argument—without waiving their right to raise the argument later—that Plaintiffs' failure to file administrative charges against them personally entitles the individual Defendants to judgment on Plaintiffs' R.C. § 4112 retaliation and aiding/abetting claims. (R. 17). In their reply brief, Defendants concede that Count Two states a viable claim for Title VI retaliation. (R. 26, PageID# 436).

courts must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and draw all reasonable inferences in [the plaintiff's] favor." *Watkins v. Healy*, 986 F.3d 648, 660 (6th Cir. 2021) (citations omitted).

### III. Summary of Factual Allegations in the Amended Complaint

The amended complaint raises a civil-rights action brought against Defendant Tri-C and seven faculty/staff members—Johnson, McCory, Webb, Clarke, Parks, Kuntz and Brazile—who have been sued in both their official and individual capacities. (R. 7, PageID# 95-97). In January 2021, Tri-C professors Gaston and Lanier ("Plaintiffs") reported concerns that Tri-C's proposed course schedule for the Fall of 2021 would have a disparate impact on African-American students. (R. 7, PageID# 99, ¶¶27-30). Plaintiffs continued to raise concerns about scheduling with Tri-C administration through March 2021, including concerns about Lanier's own disparate treatment from coworkers based on "race, gender, and advocacy for African American students." (R. 7, PageID#: 102-103 ¶ 36-37).

Relevant to the amended complaint, Plaintiff Gaston is an associate professor of philosophy, humanities, and religious studies at Tri-C's Western campus. (R. 7, PageID# 97, ¶15). Plaintiff Lanier is an assistant professor of counseling, psychological, and access services at Tri-C's Metro campus. *Id*. at ¶16. In February of 2020, Tri-C "was forced to replace traditional in-person classes with remote instruction to limit the spread of COVID-19. It wasn't until 2021 that Tri-C resumed offering in-person classes on its campuses." (R. 7, PageID# 98, ¶23). In January of 2021, the course schedule for the fall semester of 2021 was posted with registration scheduled to open on March 22, 2021. *Id*. at ¶24. Plaintiffs maintain that the schedule offered fewer *in-person* introductory-level classes at the Metro campus than at Tri-C's other campuses. *Id*. at ¶25. Also, Plaintiffs assert there were no in-person classes offered in Plaintiff Gaston's

field of philosophy or religious studies at the Metro campus. *Id*. Plaintiffs assert that Tri-C's Metro campus, which is located in downtown Cleveland, has a higher concentration of African-American students than Tri-C's other campuses. *Id*. at ¶26.

Plaintiffs aver that they "were concerned about the impact the proposed schedule would have on Metro campus's African-American students, because [African-American students] statistically don't perform well in online courses." (R. 7, PageID# 99, ¶27). Beginning in February of 2021, Plaintiffs Gaston and Lanier repeatedly reported to every level of Tri-C's administration their belief that the fall schedule was "racially discriminatory." *Id*. at ¶30. After not feeling satisfied with the responses of their immediate supervisor, Plaintiffs raised their concerns over student schedules with Tri-C's president, Defendant Johnson, in a March 17, 2021 email. (R. 7, PageID# 102-103, ¶36).

On May 21, 2021, Plaintiffs Gaston and Lanier appeared on a local television news feature, suggesting that Tri-C's scheduling decisions would lead to "students of color" being "hurt the most" and lacking "the same opportunities, the same access." (R. 7-2, PageID# 142-143, Exh. 2). The Amended Complaint states that "[i]n addition to, and in conjunction with, her reports regarding Tri-C's racially discriminatory schedule, Professor Lanier raised concerns that she was being treated differently than her department colleagues on the basis of her race, gender, and advocacy for African-American students." (R. 7, PageID# 103, ¶37). She identifies forms of retaliation as being cut off from group communications, less-favorable scheduling, and a denied request to teach a course at MetroHealth despite her right of first refusal. (R. 7, PageID#: 103-104 ¶ 39). The Amended Complaint states that "Professor Gaston also experienced and reported unfair treatment regarding her workload and compensation, arising shortly after she had reported concerns about Tri-C's Fall 2021 schedule." (R.7, PageID# 105, ¶41). Plaintiff Gaston alleged

4

that, after reporting scheduling concerns, Defendants allowed a Caucasian colleague to take credit for her work, which resulted in denial of compensation. (R. 7, PageID# 105 ¶¶42-45).

Three days after Plaintiffs' interview with local news aired, a virtual townhall meeting was held wherein Plaintiffs allege they were publicly admonished. (R. 7, PageID# 107-109, ¶¶52-57).

On June 23, 2021, Defendants held pre-disciplinary hearings related to Plaintiffs' local news interview. (R. 7, PageID# 114, ¶78). On August 6, 2021, Plaintiffs were officially found to have violated Tri-C's policies, and were ordered to serve an unpaid three-day suspension. *Id*. at ¶81. The Amended Complaint states that "[t]hey were punished for their speech" made during a public media appearance. (R. 7, PageID# 115, ¶¶83-84).

Plaintiffs filed an administrative grievance challenging Tri-C's finding. (R. 7, PageID# 115, ¶85). Nearly a year later, on June 16, 2022, after Plaintiffs appealed Tri-C's findings, Tri-C reversed its original finding, agreed to remove the discipline, and awarded Plaintiffs backpay for their three-day suspensions. (R. 7, PageID# 121, ¶100).

On February 2, 2022 and April 6, 2022, Plaintiffs Gaston and Lanier, respectively, filed charges with the Ohio Civil Rights Commission. (R. 13-2, PageID#: 391; R. 14, PageID# 392-393).

Plaintiff Gaston's charge contained the following explanation of the charges, in their entirety:

> I. I have been employed by Respondent as a member of the faculty for about 20 years. I am currently an Associate Professor. On May 21, 2021, I participated in an on camera interview for the Next 400 series, which highlights equity in education and racial and social justice concerns on the news. During the interview, I highlighted the disparity of access for the highest concentration of African American students with merely one sentence. However, on May 24, 2021, Respondent's President, Dr. Alex Johnson, publicly excoriated me and another

faculty member during a virtual town hall.

II. As a result, I was subjected to a series of retaliatory measures. Specifically, I have been disciplined, unable to properly perform my job, and isolated by other faculty. I was told that I must completed [sic] the Religious Studies outlines to prevent the loss of the classes because I am the only full time Religious Studies faculty. However, Respondent allowed a White counterpart, who actually taught those classes, not to complete the outlines for over two years and to simply retire. In an effort to make an example of me for speaking up for African American students, I had my selected class deleted, and force [sic] to complete curriculum outlines for classes taught by my White former counterpart ***. Another White faculty counterpart *** commandeered preliminary wok [sic] I completed on other outlines as she had been allowed by Respondent to remove my name and replace it with hers. Respondent also refused to transfer me from the West Campus to the Metro Campus, where I originally had worked, even though there were two vacant positions at the Metro Campus. Instead, Respondent filled those positions with "emergency hires" who are two White adjunct lecturers.

III. Therefore, I allege Respondent has subjected me to disparate terms and conditions of employment, unequal assignments, and discipline because of my race (Black/African American), my color, my national origin (American), and protected activity. Particularly, I am the only tenured faculty member in the history of the college forced to complete outlines, while there is a history of the college allowing my White counterparts to take credit for my completed work. Also, a White female faculty member *** made racist and inappropriate statements about Black males in a public college meeting and was supported for her right to free speech. Likewise, there has never been an instance where Respondent's President called out a faculty member in a town hall.

(R. 14, PageID# 392-393).

Plaintiff Lanier's charge contained the following explanation of the charges, in their entirety:

I began my employment with the Respondent on or about January 24, 2011. My current position is Assistant Professor of Counseling. In or around March 2021, I complained about scheduling problems that impacted students of color. In or around May 2021, I participated in a television interview about the impact of remote learning on students of color. Subsequently, I was subjected to different terms and conditions of employment, including, but not limited to, being removed as the Counterpart's Chair of the Counseling Department, harm to my professional reputation, and placement in isolated rooms. I was also suspended.

I believe that I was discriminated against because of my race, Black, my sex, female, my color, dark complexion, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

6

(R. 13-2, PageID# 391).

Each received right-to-sue letters on August 26, 2022. (R. 7, PageID# 123, ¶109).

## IV. Analysis

**A. Counts Three and Four: Title VII Retaliation and O.R.C. § 4112.02 Retaliation**

Defendants' motion alleges that Plaintiffs' Title VII retaliation claim, as set forth in Count 3, should be dismissed because Plaintiffs did not engage in protected activity and did not exhaust administrative remedies. (R. 13, PageID# 381-382). Defendants also argue that "[f]or the same reasons Plaintiffs did not plead viable Title VII retaliation claims [in Count Three], they have not pled viable R.C. §4112.02(I) retaliation claims [in Count Four]." (R. 13, PageID# 382-383).[2]

In Count Three, Plaintiffs assert a Title VII retaliation claim alleging that they were

---

[2] Defendants attach Plaintiffs' EEOC charges to their motion. (R. 13-1 & 13-2). The Court agrees that these documents may be properly considered by the Court without converting the motion into one for summary judgment. Defendants argue that this Court can look to the substance of the EEOC charges to determine if administrative remedies were exhausted before Plaintiffs brought a Title VII claim. (R. 13, PageID#: 381). Although Plaintiffs concede that "[w]ith respect to claims involving discrimination, a court deciding a motion under Rule 12(b)(6) or 12(c) may consider an EEOC charge or proceedings to evaluate whether procedural requirements were satisfied, such as the exhaustion of administrative remedies," Plaintiffs, nevertheless, maintain that the Court may not consider EEOC proceedings to evaluate the substance or truth of Plaintiffs' claims. (R. 24, PageID# 415-16, 419). In the Amended Complaint, Plaintiffs list the filing of EEOC charges as protected activity for which they claim retaliation under Title VII. (R. 7, PageID#: 128 ¶ 141-43). These charges are central to Plaintiffs' claims. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (holding that EEOC charges are a prerequisite to filing a Title VII case and charges are central to the claim); *Jones v. Truck Drivers Loc. Union No. 299*, 748 F.2d 1083, 1086 (6th Cir. 1984) ("Filing an EEOC charge against a party is a necessary prerequisite to suit."); *OverDrive, Inc. v. Open eBook F.*, No. 1:17 CV 165, 2017 WL 11367906, at *3 (N.D. Ohio Dec. 5, 2017) (Oliver, J.) ("[d]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim"). Because Plaintiffs referenced the EEOC charges in the Amended Complaint and the charges are central to Plaintiffs' claims, this Court can consider the EEOC charges in a Rule 12(c) motion.

7

retaliated against for "oppos[ing] an unlawful discriminatory practice or because they made a charge or participated in any manner in an EEOC proceeding." (R. 7, PageID# 127). In Count Four, Plaintiffs assert a violation of O.R.C § 4112.02(I) stemming from alleged retaliation for opposing an unlawful discriminatory practice. (R. 7, PageID# 130). Count Four, however, does not identify the alleged "unlawful discriminatory practice." *Id*.[3]

Defendants argue that Plaintiffs' retaliation claim fails, because Plaintiffs fail to allege retaliation for *opposing an unlawful discriminatory practice*. (R. 13, PageID#: 381). Pursuant to U.S.C § 2000e-3(a), "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

Defendants maintain that Plaintiffs' activity was rooted in dissatisfaction with Tri-C's scheduling decisions that ostensibly had a disparate impact on African-American students—and not any opposition to an employment practice made unlawful by Title VII. (R. 13, PageID# 381). Plaintiffs argue that an employee engages in protected activity under Title VII by alleging

---

[3] Defendants assert that Count Four fails for the same reasons as Count Three. (R. 13, PageID# 382). Plaintiffs concede that "[b]ecause of the similarities between RC §4112.02(1) and Title VII, Ohio courts look to federal case law for assistance in interpreting RC §4112.02(1) retaliation claims." (R. 24, PageID# 422). "Ohio courts have held that '[f]ederal law provides the applicable analysis for reviewing retaliation claims' brought under Ohio Rev. Code § 4112.02(I)." *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 510 (6th Cir. 2016) (*citing Baker v. Buschman Co.*, 127 Ohio App.3d 561, 713 N.E.2d 487, 491 (Ohio Ct. App.1998); *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St.2d 192, 421 N.E.2d 128, 131 (Ohio 1981)); *see also Threat v. City of Cleveland*, 6 F.4th 672, 681 (6th Cir. 2021) (affirming the district court's dismissal of the retaliation claims under Ohio law, noting that such claims "mirror the federal counterpart, and Ohio courts use federal law to interpret the Ohio provision"). Therefore, Counts Three and Four rise or fall together, as the same analysis applies to each.

8

conduct that falls within one of the statute's two clauses: the opposition clause or the participation clause. (R. 24, PageID# 419) (*citing Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008) ("Title VII forbids an employer from "discriminat[ing] against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII] [the so-called 'opposition clause'], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII] [the so-called 'participation clause']." Unlawful employment practices under Title VII include any actions taken on the basis of race, color, religion, sex, or national origin that "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment.") (citations omitted)). Plaintiffs contend they satisfied the participation clause by filing EEOC charges. (R. 24, PageID# 419-420). Alternatively, Plaintiffs contend they did more than complain about discriminatory treatment of students, but also voiced complaints about discriminatory treatment of themselves and of Black female employees. (R. 24, PageID# 420, *citing* R. 7 at ¶¶37-46).

**1. Exhaustion**

Defendants argue that Plaintiff's claims are unexhausted, arguing that "[b]ecause Plaintiffs never filed a charge alleging retaliation for speaking-up about employment discrimination, they did not exhaust their administrative remedies." (R. 13, PageID# 382).

Before filing suit in federal court, Title VII plaintiffs must first exhaust their administrative remedies by filing a charge of discrimination with the EEOC and receiving a right-to-sue letter. *Alexander v. Univ. of Memphis*, No. 20-5426, 2021 WL 2579973, at *3 (6th Cir. June 7, 2021) (*citing Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018)). However, the EEOC exhaustion requirement is not jurisdictional, but instead "it is a claim-

processing rule." *Id*. (*citing George v. Youngstown State Univ.*, 966 F.3d 446, 469 (6th Cir. 2020); *Adamov v. U.S. Bank Nat'l Ass'n*, 726 F.3d 851, 855–56 (6th Cir. 2013)). Nevertheless, "a claim-processing rule must be enforced if properly raised by the employer, as the University did in this case." *Id*. (*citing Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). Furthermore, the Sixth Circuit Court of Appeals has explained as follows:

> "As a general rule, a Title VII **plaintiff cannot bring claims in a lawsuit that were not included in [her] EEOC charge**." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). A plaintiff's EEOC charge "must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.' " *Id*. (quoting 29 C.F.R. § 1601.12(b)). But because employees typically file EEOC charges without the benefit of legal assistance, "their *pro se* complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Id*. at 362. The district court correctly recognized that the box that the plaintiff checked on the EEOC complaint form is not dispositive as to the scope of her charge. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 379–80 (6th Cir. 2002). But here, Alexander not only failed to indicate that she was asserting a race-discrimination charge against the University, but neither of her EEOC charges contained factual allegations that supported a claim of racial discrimination.

*Alexander v. Univ. of Memphis*, No. 20-5426, 2021 WL 2579973, at *4 (6th Cir. June 7, 2021) (emphasis added).

The EEOC charges, reproduced verbatim above, did not identify any *unlawful employment practice*, but rather only the alleged retaliation for complaining of a scheduling practice that impacted students—not employees or faculty. Plaintiff Gaston's assertion that part of the alleged retaliation included completing outlines in place of a retiring White professor does not identify an unlawful discriminatory practice made illegal by Title VII. (R. 14, PageID# 392-393). Plaintiff Lanier also only identifies retaliation for speaking out about student schedules, though she includes a conclusory assertion that she was discriminated against because of race and sex. (R. 13-2, PageID# 391). Thus, the Court finds that the claims contained in the EEOC

charges are not sufficient to prompt the EEOC to investigate retaliation charges related to an unlawful employment practice.

It is true that retaliation claims "are generally excepted from this [exhaustion] requirement because they usually arise after the filing of the EEOC charge, or in the case of a federal employee under the Rehabilitation Act, after the filing of a discrimination complaint with the agency." *Coats v. McDonough*, 2021 WL 5846550, at *9 (M.D. Tenn. Dec. 9, 2021) (*quoting Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246 (6th Cir. 1998)). The Sixth Circuit explained that "[f]ederal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge…." *Abeita*, 159 F.3d 246 at 254. Although retaliation claims are generally excepted from this filing requirement because they usually arise after the filing of the EEOC charge, "**this exception to the filing requirement does not apply to retaliation claims based on conduct that occurred before the EEOC charge was filed**." *Id.* at 254 (emphasis added). Therefore, to the extent Plaintiffs believe there was some form of Title VII retaliation unrelated to their complaints related to student scheduling but prior to the filing of their EEOC charges, such alleged retaliation had to be reasonably referenced in their EEOC charges in order to grow from those claims. *See, e.g., Oliver v. Titlemax*, 149 F. Supp. 3d 857, 864 (E.D. Tenn. 2016) ("if an EEOC charge does not properly allege a claim for retaliation, the court will only have jurisdiction over a claim for retaliation arising from filing the EEOC charge itself.").

Indeed, Defendants argue that, to the extent Plaintiffs allege post-EEOC charge retaliation, such a claim can only be considered exhausted if they are "reasonably related" or "grow out" of the factual allegations actually contained in the EEOC charge. (R. 26, PageID#

11

437, *citing Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010)). Defendants' assertion is supported by their cited authority. In order for an uncharged claim to be considered exhausted, the facts of the charged claim must be closely related enough to "prompt the EEOC to investigate a different, uncharged claim." *Younis*, 610 F.3d at 362 (*citing Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)). Where the actually charged claim fails to allege any Title VII discrimination, the aforementioned standard is not satisfied. *See, e.g., Russ v. Memphis Light Gas & Water Div.*, 720 Fed. App'x 229, 236-37 (6th Cir. 2017) (rejecting argument that Title VII claim was exhausted where plaintiff checked "race" on her EEOC intake questionnaire, but where her actual EEOC charges only mentioned discrimination on basis of disability).

The Court agrees that any alleged retaliation related to any conduct that pre-dates the Plaintiffs' opposition to student scheduling practices is unexhausted. Furthermore, with respect to any other unnamed retaliation claims post-dating the EEOC charge that are contained in the Amended Complaint, such charges do not reasonably grow out of or relate to the complained of conduct related to student scheduling. As Plaintiffs did not actually assert any unlawful *employment* practice in their EEOC charges, any claim that Plaintiffs were retaliated against for filing the EEOC charges fail. Therefore Counts Three and Four must be dismissed as unexhausted.

### 2. Participation Clause

Defendants also argue that the Amended Complaint, as well as the EEOC charges, only allege that Plaintiffs complained about a potential discriminatory impact on students and *not* any unlawful *employment* practice that was utilized against employees. Indeed, while Gaston's charge highlights a number of alleged retaliatory measures that resulted in her being assigned tasks that had previously been assigned to a white faculty member, she does not identify any

12

*employment practice* that she opposed. Further, the retaliation Plaintiff allegedly experienced was for speaking out on behalf of students, based on both the Amended Complaint and her EEOC charge. (R. 7 & 14). Lanier's EEOC charge also does not allege that she complained of or challenged any unlawful employment practice, only discussing the retaliation she allegedly endured for "complain[ing] about scheduling problems that impacted students of color." (R. 13-2).

Plaintiffs' counter that the participation clause only requires that an employee file a formal charge or otherwise assist with such proceedings under Title VII. (R. 24, PageID# 419-420). Plaintiffs' reliance on *Prida v. Option Care Enterprises, Inc.*, is unhelpful, as that decision merely states that "[p]articipation requires, *at a minimum*, that the employee has filed a formal EEOC charge or otherwise instigated proceedings under Title VII." 2023 WL 7003402 *6 (N.D. Ohio Oct. 24, 2023) (emphasis added). While Title VII affords broader protections under the participation clause than the opposition clause, *see e.g. Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989) ("The 'exceptionally broad protection' of the participation clause extends to persons who have 'participated in any manner' in Title VII proceedings" and "[p]rotection is not lost if the employee is wrong on the merits of the charge"), *Prida* does not stand for the proposition that the filing of an EEOC charge automatically satisfies the participation requirement. As discussed above in the exhaustion analysis, Plaintiffs' EEOC charges only alleged retaliation for complaints concerning student scheduling and other potential charges do not arise from those same set of facts.

Plaintiffs have not identified any authority suggesting that complaints related to an employer's actions affecting students—or analogously customers, clients, or patrons—satisfies the participation clause. Conversely, in *Johnson v. Farmington Pub. Sch.*, 2024 WL 1395140

(E.D. Mich. Mar. 31, 2024), another district court in this circuit found that the following criticisms leveled by plaintiff, who served as a school district's assistant superintendent of DEI,[4] did *not* constitute protected activity under Title VII or related Michigan law: (1) criticism that the superintendent failed to recommend a school teacher, who used a racial epithet against a student, be fired; (2) generalized complaints that "the district was racist, that people weren't changing;" and (3) generally advocating for African-American students. As in the case at bar, the *Johnson* plaintiff complained about policies that allegedly had a negative impact on students—not unlawful employment practices. As such, Plaintiffs have not sufficiently alleged that they engaged in protected activity under the participation clause.

### 2. Opposition Clause

As stated above, the opposition clause of Title VII prohibits an employer from discriminating against an employee who "opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. §2000e-3(a). Because Plaintiffs did not oppose an unlawful *employment* practice, Defendants allege there was no protected activity—an essential component of Title VII and state law retaliation claims. (R. 13, PageID# 381-382). Plaintiffs argue that opposing the alleged discriminatory scheduling policy and filing EEOC charges were protected activity under both the opposition and participation clauses of Title VII. (R. 24, PageID#: 419-420) (citing without explanation *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008)).

Because neither Gaston nor Lanier's Charges alleged retaliation for speaking-up about or opposing an unlawful employment practice, Plaintiffs' Title VII claims are untenable. *See, e.g.,*

---

[4] "DEI" stands for diversity, equity, and inclusion.

14

*Balding-Margolis v. Cleveland Arcade*, 352 Fed. App'x 35, 45 (6th Cir. 2009) (finding complaints related to general work-related issues are not indicative of complaints of discriminatory conduct against plaintiff based on her membership in a protected class). The Sixth Circuit has emphasized that "a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice. An employee may not invoke the protections of the Act by making a vague charge of discrimination. Otherwise, every adverse employment decision by an employer would be subject to challenge under either state or federal civil rights legislation simply by an employee inserting a charge of discrimination." *Id*. (*quoting Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591-92 (6th Cir. 2007)).

Herein, Plaintiffs allegation—that scheduling policies disadvantaged African-American students—even if coupled with conclusory allegations of racism against Plaintiffs themselves, simply do not sufficiently allege any opposition to an unlawful employment practice. As such, Plaintiffs have not sufficiently alleged that they engaged in protected activity under the opposition clause. Therefore, the Court grants Defendants' motion for judgment on the pleadings with respect to Counts Three and Four.

Finding that Plaintiffs have failed to allege actionable claims under Counts Three and Four does not, however, impact their claims in Counts One and Two, which revolve around the same nucleus of alleged facts but are not challenged by Defendants' motion.

**B. Count Five: Aiding and Abetting**

In Count Five, Plaintiffs allege that individual Defendants unlawfully aided and abetted discrimination in violation of O.R.C. §§ 4112.02(J) and 4112.99. However, the underlying premise of this claim is that these Defendants aided and abetted retaliation for opposing an unlawful employment practice as stated in Count Four, O.R.C. § 4112.02(I). (R. 7, PageID# 131,

¶162). Because Plaintiff's Count Four claim is dismissed, Plaintiffs cannot maintain an aiding and abetting claim related to this same dismissed claim premised on a violation of O.R.C. § 4112.02(I). This Court has similarly held as such in the past. *See, e.g., Rogers v. Horwitz*, 2023 WL 6383796 at *11 (N.D. Ohio Sep. 29, 2023) ("claim for aiding and abetting disparate treatment under Ohio law must also fail, since the underlying claim fails") (*citing Weinrauch v. Sherwin-Williams Co.*, 2019 WL 3007031, at *14 (N.D. Ohio July 10, 2019) ("Where a court finds that a defendant is entitled to summary judgment on the underlying claims of discrimination and retaliation, the court must also necessarily grant summary judgment on the claim of aiding and abetting those claims.") Therefore, Plaintiff's derivative claim in Count Five is also dismissed.

**C. Counts Six Through Ten: Statute of Limitations**

The remaining Counts of the Amended Complaint—Counts Six through Ten—are all premised on civil liability for alleged criminal acts pursuant to O.R.C. § 2307.60. Defendants assert that claims brought pursuant to O.R.C. §2307.60 are subject to a one-year statute of limitations. (R. 13, PageID# 384-385). Because the most recent factual allegations underlying these claims allegedly occurred on August 6, 2021, Defendants maintain that the statute of limitations began running the next day and expired before this action's commencement on December 22, 2022. *Id*.

Plaintiffs' opposition brief does not challenge the date the statute of limitations began to run on Counts Six through Ten. (R. 24, PageID# 425-427). Instead, Plaintiffs assert that a six year statute of limitations should apply. *Id*.

Numerous federal courts in this district have addressed how Ohio's statute of limitations laws interact with O.R.C. § 2307.60(A)(1), and they have nearly uniformly concluded that a one-

16

year statute of limitations applies:

> When interpreting a State statute, the Court must follow State interpretations of the statute and predict how the State's highest court would rule where, as here, it has not done so. *Bevan & Assocs., LPA, Inc. v. Yost*, 929 F.3d 366, 374 (6th Cir. 2019). Every court that has considered the issue, State or federal, applies a one-year limitations period to claims under Section 2307.60. Plaintiff cites no case casting doubt on this conclusion, and the Court's research has not located any. Based on these longstanding, uniform rulings, the Court is hard pressed to reach any other conclusion.

*Brack v. Budish*, 539 F.Supp.3d 794, 800 (N.D. Ohio 2021); *see also Marquardt v. Carlton*, 2019 WL 1491966, at *2 (N.D. Ohio Apr. 2, 2019) (finding that claims brought under O.R.C. § 2307.60(A)(1) are subject to a one-year statute of limitations, because the statute contemplates a penalty); *McPherson v. Cuyahoga Cnty.*, No. 1:20-CV-00639, 2021 WL 2841582, at *6 (N.D. Ohio July 8, 2021) (same); *Kiekisz v. Cuyahoga Cnty. Bd. of Commissioners*, 2021 WL 5193985, at *5 (N.D. Ohio Nov. 9, 2021) (same); *Roarty-Nugent v. Cuyahoga Cnty.*, 2020 WL 5530354, at *6 (N.D. Ohio Sept. 15, 2020) (same); *see also Duffey v. Pope*, 2012 WL 4442753, at *7 (S.D. Ohio 2012) (noting that Ohio courts "clearly hold that Ohio Revised Code § 2307.60 is a penalty statute and is subject to the one year statute of limitations found in § 2305.11(A)[ ]").

Specifically, O.R.C. § 2305.11(A) states that "[a]n action for libel, slander, malicious prosecution, or false imprisonment, an action for malpractice other than an action upon a medical, dental, optometric, or chiropractic claim, an action for legal malpractice against an attorney or a law firm or legal professional association, or *an action upon a statute for a penalty or forfeiture shall be commenced within one year after the cause of action accrued* …." (emphasis added). Conversely, O.R.C. § 2305.07(B) states that "[a]n action upon a liability created by statute *other than a forfeiture or penalty* shall be brought within six years after the cause of action accrued." (emphasis added).

17

Plaintiffs rely on an outlying state appellate court holding, *Harris v. Cunix*, 2022-Ohio-839, ¶ 14, 187 N.E.3d 582, 586 (Ohio Ct. App. 2022) to argue that the six-year limitations should apply because the statute is remedial rather than penal. This Court is not convinced a lone state appellate court's holding should upend the nearly unanimous case law on this issue. The Court does acknowledge that in *Brack v. Budish*, another judge from this Court noted that the arguments in favor of the six-year statute of limitations "on a blank slate might well carry the day" but conceded that—because he had to predict how the State's highest court would rule—the one-year statute of limitations applies "[b]ased on the uniform authority in the State and federal courts that have considered the issue." 539 F. Supp. 3d at 800-801; *but see Garner v. Cleveland Clinic Foundation*, 735 F. Supp.3d 867 (N.D. Ohio May 29, 2024) (while acknowledging that "the overwhelming majority of courts that have considered this issue have held it was penal" finding the arguments in favor of construing the statute as remedial "more persuasive"). This Court, consistent with the overwhelming majority of decisions finds that the one-year statute of limitations applies.

Because there is no dispute that Counts Six through Ten were filed over a year after the factual predicate of the claims in these counts, Counts Six through Ten are hereby dismissed as untimely.

## V. Conclusion

For the foregoing reasons, Defendant's Rule 12(c) motion for partial judgment on the pleadings (R. 13) is GRANTED in part and DENIED in part. The motion is DENIED with respect to Count Two, as Defendants have conceded that Count Two sufficiently pleads a viable cause of action. (R. 26, PageID# 436). The motion is GRANTED with respect to Counts Three through Ten and those causes of action are hereby DISMISSED.

  IT IS SO ORDERED.

              s/ *David A. Ruiz*
              David A. Ruiz
              United States District Judge

Date: March 17, 2025